**EDELSBERG LAW, P.A.**
Scott Edelsberg
(California Bar No. 330990)
scott@edelsberglaw.com
20900 NE 30th Ave., Suite 417
Aventura, Florida 33180
Telephone: (305) 975-3320
*Attorney for Plaintiff*

## IN THE UNITED STATES DISTRICT COURT
## FOR THE CENTRAL DISTRICT OF CALIFORNIA

CASE NO.: 5:19-CV-02456

| | |
|---|---|
| JAMAL JOHNSON, individually and on behalf of all others similarly situated, *Plaintiff,* v. MOSS BROS. AUTO GROUP, INC. and SUSAN ANDERSON, *Defendant.* _____/ | **CLASS ACTION** <br><br> **PLAINTIFF'S AMENDED MOTION FOR PRELIMINARY APPROVAL** <br><br> **Date: April 8, 2021** <br> **Time: 10:00 AM** <br> **Ctrm: 6d** <br> **Judge: Hon. Fernando M. Olguin** |

## NOTICE OF MOTION AND MOTION

**TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:**

**PLEASE TAKE NOTICE,** on April 8, 2021 at 10:00 a.m., in Courtroom 6D of the above caption Court, located at 350 W. 1st Street, 6th Floor, Los Angeles, California 90012, Plaintiff will and hereby does move for an order to grant preliminary approval of the class action settlement. This motion is based on this Notice of Motion and Motion and the Memorandum of Points and Authorities, and upon such other written or oral argument as may be presented to the Court at the hearing.

This Motion is made following the conference of counsel pursuant to L.R. 7-3, and subject to a settlement agreement.

i

DATED: February 19, 2021

*/s/ Scott Edelsberg*
Scott Edelsberg, Esq.
California Bar No. 330990
scott@edelsberglaw.com
**EDELSBERG LAW, PA**
20900 NE 30th Ave., Suite 417
Aventura, FL 33180
Office: (305) 975-3320

ii

# **TABLE OF CONTENTS**

I.   **INTRODUCTION** ................................................................................1

   1.   Preliminary Approval of the Settlement; ...................................1

   2.   Conditional certification of a Settlement Class and appointment of the Plaintiff as Class Representatives and Plaintiff's counsel as Class Counsel; ...................................1

   3.   Approval of the Settlement Administrator; ...............................1

   4.   Approval of the Notice program describing: .............................1

      **a.** The Settlement and the Settlement Class members' rights with respect to the Settlement; ...................................................................9

      **b.** The proposed Release of claims; ................................................9

      **c.** Class Counsel's request for attorneys' fees and expenses, as well the Service Award for the Class Representative; and; ...................................9

      **d.** The procedure for opting-out of or objecting to the Settlement and ...........9

   5. The scheduling of a Final Approval Hearing to consider Final Approval of the Settlement ...................................................................10

II.   **BACKGROUND** ................................................................................2

I.   **SUMMARY OF THE SETTLEMENT TERMS** ...............................................3

      **a.**  The Settlement Class ...................................................................11

      **b.** Settlement Consideration ...............................................................11

      **c.** The Notice Program .....................................................................12

         i. Mail Notice .......................................................................12

         ii. Long-Form Notice ...............................................................13

         iii. Settlement Website & Toll-Free Telephone Number ...................13

      **d.** No Claims Process .......................................................................13

      **e.** Allocation of the Settlement Fund Payments ...................................13

iii

**f.** Settlement Administrator……………………………………………..14

    **a.** arranging for distribution of the Class Notice to Settlement Class Members;……………………………………………………14

    **b.** making any mailings to Settlement Class Members required under the Agreement;…………………………………………………..14

    **c.** forwarding written inquiries from Settlement Class Members to Class Counsel or their designee;………………………………………14

    **d.** establishing the Settlement Website,…………………………14

    **e.** distributing payments to Settlement Class Members; and ………….14

    **f.** otherwise assisting with implementing and administering this Agreement, subject in all cases to approval by Class Counsel and Counsel for the Defendants…………………………………………..14

**g.** Opt-Out and Objection Procedures…………………………………….14

    **a.** the name of the Action;………………………………………...15

    **b.** the objector's full name, address, current telephone number, and telephone number to which any Messages may have been sent;……15

    **c.** an explanation of the basis upon which the objector claims to be a Settlement Class Member;…………………………………………..15

    **d.** all grounds for the objection, accompanied by any legal support for the objection known to the objector or his counsel;………………...15

    **e.** the number of times in which the objector has objected to a class action settlement within the five years preceding the date that the objector files the objection, and the name, court, and case number of each case in which the objector has made such an objection;………15

    **f.** the identity of all counsel who represent the objector or may appear at the Final Approval Hearing on the objector's behalf;………………16

iv

**g.** any and all agreements that relate to the objection or the process of objecting- whether written or oral- between objector or objector's counsel and any other person or entity;…………………………..16

**h.** a statement confirming whether the objector intends to personally appear and/or testify at the Final Approval Hearing; and…………..16

**i.** the objector's signature (an attorney's signature is not sufficient)…..16

**h.** Release of Claims…………………………………………………………16

**i.** Class Counsel Fees and Expenses and Plaintiff's Service Award…………17

**IV.** **THE PROPOSED SETTLEMENT WARRANTS PRELIMINARY APPROVAL** ...................................................................................................9

**a.** The Settlement was Reached as the Result of Arm's Length Negotiations with Two Experienced Mediators…………………………………18

**b.** The Relief Provided by the Settlement is Fair and Reasonable Considering that Arbitrability and Liability are Highly Contested…….19

**c.** The $2,500,000 Fund Provides a Fair and Substantial Class Benefit…..21

**d.** Experienced Counsel Determined that the Settlement is Appropriate and Fair to the Class…………………………………………………...22

**e.** The Settlement will be Fairly Distributed……………………….…..23

**f.** The Court should Conditionally Certify the Class for Purposes of Settlement………………………………………………………24

i. The Proposed Settlement Class is Numerous……………………..25

ii. Common Questions Predominate in the Context of the Class-wide Settlement…………………………………………………...25

iii. In the Context of this Class-wide Settlement, Plaintiff's Claims are Typical……………………………………………………26

iv. Adequacy Requirement is Satisfied………………………………27

v

v.  Common Questions Predominate in the Context of this Class-wide Settlement………………………………………………………27

vi.  Superiority Element is Satisfied……………………………………..28

g.  The Notice Plan Complies with Rule 23(e)……………………………29

V.  **PROPOSED SCHEDULE OF EVENTS**………………………………………..**30**

VI.  **CONCLUSION** ...............................................................**24**

## TABLE OF AUTHORITIES

**Cases**

*Abdeljalil v. GE Capital Corp.*, 306 F.R.D. 303, 308 (S.D. Cal. Mar. 26, 2015)..25, 26, 27

*Abdeljalil v. GE Capital Retail Bank*, 3:12-cv 02078-JAH-MDD (S.D. Cal. Dec. 22, 2016) ...............................................................................................23

*Adams v. AllianceOne Receivables Mgmt., Inc.*, No. 3:08-cv-00248-JAH-WVG, Dkt. No. 137 (S.D. Cal. Sept. 28, 2012) ............................................................21

*Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 620 (1997)........................................24, 29

*Arthur v. Sallie Mae, Inc.*, 10-cv-0198-JLR (W.D. Wash.) ...............................................21

*Berkey Photo, Inc. v. Eastman Kodak Co.*, 603 F.2d 263 (2d Cir. 1979) .......................20

*Boyd v. Bechtel Corp.*, 485 F. Supp. 610, 622 (N.D. Cal. 1979).................................22

*Caldera v. Am. Med. Collection Agency*, 320 F.R.D. 513 (C.D. Cal. June 27, 2017)....20, 24, 25

*Compare Felix v. N. Am. Asset Servs., LLC*, No. CV 12-3718-JFW (ANx), 2012 U.S. Dist. LEXIS 191548, at *7 (C.D. Cal. Sep. 5, 2012) ................................................19

*Connelly v. Hilton Grand Vacations Co., LLC*, 294 F.R.D. 574, 579 (S.D. Cal. Oct. 29, 2013) ........................................................................................19

*Estrada v. iYogi, Inc.,* No. 2:13–01989 WBS CKD, 2015 WL 5895942, at *7 (E.D. Cal. Oct. 6, 2015) ................................................................................................21

*Fields v. Mobile Messengers Am., Inc.*, No. 12-cv-05160-WHA, 2013 U.S. Dist. LEXIS 163950 (N.D. Cal. Nov. 18, 2013) ...............................................................19

*Fox v. Asset Acceptance, LLC*, No. 2:14-cv-00734-GW-FFM (C.D. Cal. June 20, 2016) ................................................................................................................21

*Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1026 (9th Cir. 1998). ...........17, 25, 26

*Harris v. Palm Springs Alpine Estates, Inc.*, 329 F.2d 909, 913-14 (9th Cir. 1964) ........25

*In re Bluetooth Headset Products Liab. Litig.*, 654 F.3d 935, 947 (9th Cir. 2011)..........18

*In re Capital One Tel. Consumer Prot. Act Litig. (In re Capital One)*, 80 F. Supp. 3d 781, 787 (N.D. Ill. 2015)...........................................................................21

*In re Cathode Ray Tube (Crt) Antitrust Litig.*, No. C-07-05944 JST, 2015 WL 6871439, at *1-2 (N.D. Cal. Nov. 9, 2015) .............................................30

*In re Hyundai & Kia Fuel Econ. Litig.*, 926 F.3d 539, 558 (9th Cir. 2019)....................24

*In re Nat'l Collegiate Athletic Ass'n*, No. 4:14- md-2541-CW, 2017 WL 6040065, at *11 (N.D. Cal. Dec. 6, 2017)..................................................................23

*In re Omnivision Tech., Inc.*, 559 F. Supp. 2d 1036 (N.D. Cal. Jan. 9, 2008).................21

*In re Online DVD-Rental Antitrust Litig.*, 779 F.3d 934, 943 (9th Cir. 2015)....................23

*In re Wireless Facilities*, 253 F.R.D. 607, 610 (S.D. Cal. 2008)..............................23, 26

*Jabbari v. Farmer*, 965 F.3d 1001, 1005–06 (9th Cir. 2020).............................24

*Kirkorian v. Borelli*, 695 F. Supp. 446 (N.D. Cal.1988) ......................................22

*Kramer v. Autobytel, Inc., et al.*, No. 10-cv-2722, Dkt. 148 (N.D. Cal. 2012) ...................21

*Lemieux v. Schwan's Home Serv.*, 2013 U.S. Dist. LEXIS 98735, *22 (S.D. Cal. July 15, 2013)........................................................................................................26

*Linney v. Cellular Alaska P'ship*, 151 F.3d 1234, 1238 (9th Cir. 1998) .......................17

*Local Joint Exec. Bd. of Culinary/Bartender Trust Fund v. Las Vegas Sands, Inc.*, 244 F.3d 1152, 1162 (9th Cir. 2001)..............................................................27, 28

*Makaron v. Enagic USA, Inc.,* 324 F.R.D. 228 (C.D. Cal. Mar. 13, 2018)...........20, 24, 27

vii

*Malta v. Fed. Home Loan Mortg. Corp.*, 2013 U.S. Dist. LEXIS 15731, *7 (S.D. Cal. Feb. 5, 2013) ................................................................................................26, 27, 29

*National Rural Telecommunications Cooperative v. DIRECTV, Inc.,* 221 F.R.D. 523, 527 (C.D. Cal. 2004)............................................................................................18, 21

*Rodriguez v. W. Publishing*, 563 F.3d 948, 965 (9th Cir. 2009) ...................................18

*Rose v. Bank of Am. Corp.*, 2014 WL 4273358, at *10 (N.D. Cal., 2014)...............21

*Sherman v. Kaiser Foundation Health Plan, Inc.*, 13-cv-00981-JAH-JMS (S.D. Cal.).....21

*Spann v. J.C. Penney Corp.*, 314 F.R.D. 312, 330 (C.D. Cal. 2016) ...........................30

*Staton v. Boeing Co.,* 327 F.3d 938, 977 (9th Cir. 2003).........................................23, 26

*Steinfeld v. Discover Fin. Servs.*, No. C 12-01118, Dkt. No. 96 at ¶ 6 (N.D. Cal. Mar. 10, 2014) ...................................................................................................................21

*Stemple v. QC Holdings, Inc.*, No. 12-cv-01997-BAS(WVG), 2016 U.S. Dist. LEXIS 157244, *10-11 (S.D. Cal. Nov. 7, 2016 ..............................................................23, 24

*Stern v. DoCircle, Inc.*, No. SACV 12-2005 AG (JPRx), 2014 U.S. Dist. LEXIS 17949 (C.D. Cal. Jan. 29, 2014) ..................................................................................20, 26

*Torrisi v. Tucson Elec. Power Co.*, 8 F.3d 1370, 1374-75 (9th Cir. Ariz. 1993)..............29

*Tyson Foods, Inc. v. Bouaphakeo*, 136 S. Ct. 1036, 1045 (2016) ................................28

*Vandervort, et al. v. Balboa Capital Corp.*, 8 F.Supp.3d 1200, 1207 (C.D. Cal. 2014) .23

*Wehne v. Syntex Corp.*, 117 F.R.D. 641, 644 (N.D. Cal. 1987)......................................26

*West Virginia v. Chas. Pfizer & Co.*, 314 F. Supp. 710, 743-44 (S.D.N.Y. 1970).........20

*Wolin v. Jaguar Land Rover N. Am., LLC*, 617 F.3d 1168, 1175 (9th Cir. 2010)............28

*Zincser v. Accufix Research Institute, Inc.*, 253 F.3d 1188, 1189 (9th Cir. 2001) (citation omitted), *as amended*, 273 F. 3d 1266 (9th Cir. 2001)................................................27

**Statutes**

Newberg on Class Actions § 8:29 (5th ed. June 2018)......................................................30

### PLAINTIFF'S UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT AND INCORPORATED MEMORANDUM OF LAW

Plaintiff, on behalf of himself and a class of similarly situated persons, and with the consent of Defendants, respectfully request the entry of an order granting preliminary approval of the class action settlement set forth in the Parties' Settlement Agreement ("Settlement Agreement," "Agreement," or "Agr."), conditionally certifying a class for settlement purposes only, and providing for issuance of Notice to the Settlement Class.[1]

## I.   INTRODUCTION

The Settlement Agreement will provide each member of the settlement class with an automatic Settlement Fund Payment, without requiring any claims process. Agr. § III. If approved, the Settlement will bring an end to what has otherwise been, and likely would continue to be, contentious litigation centered on unsettled legal questions.

This motion seeks the entry of an order providing for, among other things:

1. Preliminary Approval of the Settlement;

2. Conditional certification of a Settlement Class and appointment of the Plaintiff as Class Representatives and Plaintiff's counsel as Class Counsel;

3. Approval of the Settlement Administrator;

4. Approval of the Notice program describing:

   a. The Settlement and the Settlement Class members' rights with respect to the Settlement;

   b. The proposed Release of claims;

   c. Class Counsel's request for attorneys' fees and expenses, as well the Service Award for the Class Representative; and,

---

[1] The Agreement is attached as **Exhibit A**. All capitalized terms used herein have the same definitions as those defined in the Agreement. Attached as **Exhibit E** is a Compare Report outlining the edits the Parties made to the Agreement in response to the Court's feedback at the preliminary approval hearing on January 20, 2021. [DE #119].

d. The procedure for opting-out of or objecting to the Settlement, and

5. The scheduling of a Final Approval Hearing to consider Final Approval of the Settlement.

The Parties' proposed Settlement is exceedingly fair and well within the range of Preliminary Approval for several reasons. *See* Declaration of Scott Edelsberg at ¶ 2, attached hereto as **Exhibit B**. First, it provides relief for Settlement Class Members where their recovery, if any, would otherwise be uncertain, especially given Defendants' ability and willingness to continue its vigorous defense of the case. Second, the Settlement was reached only after first engaging in discovery, extensive arm's-length negotiations, two private mediation sessions, and confirmatory discovery. Third, the Settlement was not conditioned on any amount of attorneys' fees for Class Counsel or Service Awards for Plaintiff, which speaks to the fundamental fairness of the process. Edelsberg Decl. at ¶ 3.

For all of these reasons, and as further described below, Plaintiff respectfully request that the Court preliminarily approve the Settlement.

## II.  BACKGROUND

The Telephone Consumer Protection Act, 47 U.S.C. § 227 ("TCPA"), and its implementing regulations were enacted by Congress and the Federal Communications Commission to "offer consumers greater protection from intrusive telemarketing calls…."[2] Defendants coordinated prerecorded telephone call campaigns on behalf of the various car dealerships they manage in which prerecorded messages were sent to Plaintiff and approximately 53,134 unique cell phone numbers. Plaintiff alleged that these campaigns violated the TCPA because the prerecorded messages were sent without Defendants first obtaining express written consent. Defendants deny any wrongdoing and have articulated various challenges to class certification and the merits of Plaintiff's claim. Defendants also

---

[2] Federal Communications Commission, Small Entity Compliance Guide for the TCPA (dated May 13, 2013), https://apps.fcc.gov/edocs_public/attachmatch/DA-13-1086A1.pdf.

have sought to enforce a class-action waiver and arbitration agreement. Plaintiff has opposed those efforts, and the arbitration matters remain submitted to the Court.

## I.    SUMMARY OF THE SETTLEMENT TERMS

The following is a summary of the material terms of the Settlement.

### a.    The Settlement Class

The proposed Settlement establishes a Settlement Class as follows:

> **All persons within the United States who, within the four years prior to the filing of this action (i.e., since December 20, 2015), were sent a prerecorded message from Defendants, auto dealerships managed by Defendants (the "Dealerships"), or anyone acting on behalf of any Defendant or Dealership (including employees, agents, third-party contractors, and sub-contractors), to said person's telephone number, for the purpose of advertising and/or promoting any dealership that is held, operated, owned, managed, serviced and/or controlled by, and/or is a subsidiary of, Defendant Moss Bros Auto Group, Inc.**

The following are excluded from the Settlement Class: (a) any trial or magistrate judge presiding over the Action; (b) Defendants, as well as any parent, subsidiary, affiliate or control person of Defendants, and the officers, directors, agents, servants or employees of Defendants; (c) any of the Released Parties; (d) the immediate family of any such person(s); (e) any Settlement Class Member who has timely and properly opted out of this Settlement; and (f) Plaintiff's Counsel and their employees. Defendants conditionally agree and consent to certification of the Settlement Class for purposes of this Settlement only. The proposed class here is slightly different than the proposed class in the Second Amended Complaint, [DE #84], but the differences are intended to describe the relationship more accurately between Defendants and the car dealerships that were the beneficiaries of the subject marketing campaigns. The proposed class here clarifies that the prerecorded messages were sent by or on behalf of Defendants to promote car dealerships they manage, a fact confirmed through formal and settlement discovery. There are no

3

material differences between the proposed Class in the Second Amended Complaint and the proposed Settlement Class here.

### b. **Settlement Consideration**

Pursuant to the Settlement, Defendants have agreed to create a common fund of $2,500,000, available for the benefit of Settlement Class Members ("Settlement Fund"). Agr. §III.

### c. **The Notice Program**

Pending this Court's approval, Epiq, will serve as the Notice Administrator, and will be responsible for administrating the Notice Program. The Notice Program consists of five different components: (1) Mailed Notice; (2) Long-Form Notice; (3) a Settlement Website; and (4) a toll-free number. Agr. § VI. The forms of the proposed notices agreed upon by Class Counsel and Defendants, subject to this Court's approval and/or modification, are attached to the Settlement Agreement as exhibits.

The Notice program is designed to provide the Settlement Class with important information regarding the Settlement and their rights thereunder, including a description of the material terms of the Settlement; a date by which Settlement Class members may exclude themselves from or "opt-out" of the Settlement Class; a date by which Settlement Class Members may object to the Settlement, Class Counsel's fee application and/or the request for a Service Awards; the date of the Final Approval Hearing; information regarding the Settlement Website where Settlement Class members may access the Agreement; and other important documents.

### i. **Mail Notice**

The Administrator shall review the Class Settlement Data, utilize methods commonly used in the class administration industry to verify and/or update mailing addresses (e.g., reverse telephone number look ups, verification through the National Change of Address Database or other reliable sources like LexisNexis and TransUnion), and shall, to the extent reasonably possible, mail the Mailed Notice to all Settlement Class Members. The Mailed Notice program shall be completed no later than 90 days before the Final Approval

Hearing.   The Administrator shall provide Class Counsel and Defendants a sworn declaration that confirms that the Mailed Notice program was completed in a timely manner and in accordance with this Agreement and the Preliminary Approval Order.  Agr. ¶45.

### ii.  Long-Form Notice

The Mail Notice will contain the address for the Settlement Website, www.MOSSTCPAsettlement.com. Agr. ¶46. On the website, Settlement Class members will find important documents and court filings, including the Long-Form Notice, which will contain more detail than the Mail Notice. A copy of the Long Form Notice is attached to the Settlement Agreement as Exhibit 2. Further, the Long Form Notice will be sent to all Settlement Class members who contact the Settlement Administrator by telephone or email and request a copy. Agr. ¶46.

### iii.  Settlement Website & Toll-Free Telephone Number

The Settlement Administrator will establish a Settlement Website as a means for Settlement Class members to obtain notice of, and information about, the Settlement. Agr. ¶46. The Settlement Website will include hyperlinks to the Settlement, the Long-Form Notice, the Preliminary Approval Order, and other such documents as Class Counsel and counsel for Defendants agree to post or that the Court orders be posted on the Settlement Website.   These documents will remain on the Settlement Website at least until Final Approval.

The Settlement Administrator will also establish and maintain an automated toll-free telephone line for Settlement Class members to call with Settlement-related inquiries. Agr. ¶48.

### d.   <u>**No Claims Process**</u>

Any Settlement Class member who does not timely and validly request to opt-out shall be bound by the terms of this Agreement and shall automatically be mailed a Settlement Fund Payment.  If any Settlement Class Members fail to timely opt-out, they will remain in the Settlement Class and their claims will be released.

### e.   <u>Allocation of the Settlement Fund Payments</u>

Each Settlement Class member who does not opt out of the Settlement shall automatically be mailed a Settlement Fund Payment payable by check.  The amount of each Settlement Fund Payments shall be determined by the following formula: Net Settlement Fund divided by total number of unique telephone numbers that received a Message = Settlement Fund Payment. Agr. ¶62.  Settlement Class Members will receive payment for each unique telephone number that may have received a prerecorded message.

Any checks that remain uncashed after 180 days or are returned as undeliverable shall be cancelled and remitted to Defendants. Agr. ¶65. Here, the parties anticipate very few if any uncashed or undelivered checks because not only are the checks monetarily meaningful (approximately $46) and automatically being send to Settlement Class Members but all Settlement Class Members are customers of Defendants and provided their contact information to Defendants in conjunction with purchasing a vehicle or having their vehicle serviced with Defendants. In short, the contact information collected by Defendants (name, telephone numbers and addresses) is inherently reliable as it was used to conduct high value transactions where back and forth communication is often necessary (buying or servicing a vehicle). Additionally, the Settlement Administrator, in an abundance of caution, will, prior to mailing the checks, utilize methods commonly used in the class administration industry to verify and/or update the mailing addresses (e.g., reverse telephone number look ups, verification through the National Change of Address Database or other reliable sources like LexisNexis and TransUnion). *Id.* at ¶45. Thus, because Settlement Class Members will recognize Defendants' trade names, provided reliable contact information to Defendants, and the Settlement Administrator will take steps to verify the mailing addresses, Class Counsel anticipate that there will be very few if any uncashed or undeliverable checks.

### f.   <u>Settlement Administrator</u>

Pending this Court's approval, Epiq shall serve as the Settlement Administrator.  The Settlement Administrator's responsibilities may include (but are not necessarily limited to):

(a) arranging for distribution of the Class Notice to Settlement Class Members;

(b) making any mailings to Settlement Class Members required under the Agreement;

(c) forwarding written inquiries from Settlement Class Members to Class Counsel or their designee;

(d) establishing the Settlement Website,

(e) distributing payments to Settlement Class Members; and

(f) otherwise assisting with implementing and administering this Agreement, subject in all cases to approval by Class Counsel and Counsel for the Defendants.

Class Counsel and Defendants may, by agreement, substitute a different organization as Settlement Administrator, subject to approval by the Court if the Court has previously approved the Settlement preliminarily or finally. In the absence of agreement, either Class Counsel or Defendants may move the Court to substitute a different organization as the Administrator upon a showing that the responsibilities of the Administrator have not been adequately executed by the incumbent. Agr. ¶2.

g. **Opt-Out and Objection Procedures**

Settlement Class members who do not wish to participate in the Settlement may opt-out of the Settlement by sending a written request to the Settlement Administrator at the address designated in the Notice. Agr. ¶51. Settlement Class members who timely opt-out of the Settlement will preserve their rights to individually pursue any claims they may have against Defendant, subject to any defenses that Defendant may have against those claims. The Settlement Agreement details the requirements to properly opt-out of the Settlement Class, and the Settlement Website will include an optional, pre-approved form they may use. The pre-approved opt-out form is attached to the Settlement Agreement as Exhibit 3. A Settlement Class member must opt-out of the Settlement Class by the Opt-Out Period, which is 60 days from mailing of the Notice (and no later than 30 before the Final Approval Hearing). *Id*. at ¶19. The Settlement Administrator will communicate any opt-out requests to Class Counsel and Defendant's Counsel, who will in turn report them to the Court as

7

part of the Final Approval Hearing and those names will be referenced in an exhibit to the Final Approval Order.

Settlement Class Members who wish to file an objection to the Settlement must do so no later than 60 days from the mailing of the Notice (which shall be at least 30 days before the Final Approval Hearing). *Id.* at ¶¶ 19, 53. Pending Court approval, for an objection to be considered by the Court, it must include the following:

a. the name of the Action;

b. the objector's full name, address, current telephone number, and telephone number to which any Messages may have been sent;

c. an explanation of the basis upon which the objector claims to be a Settlement Class Member;

d. all grounds for the objection, accompanied by any legal support for the objection known to the objector or his counsel;

e. the number of times in which the objector has objected to a class action settlement within the five years preceding the date that the objector files the objection, and the name, court, and case number of each case in which the objector has made such an objection,;

f. the identity of all counsel who represent the objector or may appear at the Final Approval Hearing on the objector's behalf;

g. any and all agreements that relate to the objection or the process of objecting— whether written or oral—between objector or objector's counsel and any other person or entity;

h. a statement confirming whether the objector intends to personally appear and/or testify at the Final Approval Hearing; and

i. the objector's signature (an attorney's signature is not sufficient).

*Id.* at ¶54.

**h.  Release of Claims**

In exchange for the Settlement consideration, Plaintiff and all Settlement Class Members, have agreed to the release as defined in the Agreement. Agr. § XII.  The Release is expressly limited to claims concerning the allegations and contentions made in this lawsuit, i.e. claims under the TCPA and similar statutes, laws, or regulations concerning any marketing, advertising, promotional activities, text messages, phone calls, voicemails, auto-dialed communications, and voice messages that were directed to Settlement Class Members by or on behalf of either Defendant, the Moss Bros. Dealerships, or their outside

vendors. *Id.* Additionally, the California Civil Code Section 1542 waiver was expressly limited to claims that relate to the factual allegations and/or legal assertions made in the operative Second Amended Complaint. *Id*. at ⁋67.

### i. Class Counsel Fees and Expenses and Plaintiff's Service Award

Defendants have agreed not to oppose Class Counsel's request for attorneys' fees and expenses of up to 25% of the Settlement Fund and up to $75,000 for reimbursement of costs and expenses. Defendants have also agreed not to oppose an application for a Service Award up to $5,000.00 The Court should consider whether to grant or deny these awards separate and apart from its consideration of the fairness and reasonableness of the Settlement.

### IV. THE PROPOSED SETTLEMENT WARRANTS PRELIMINARY APPROVAL

A class action may not be dismissed, compromised, or settled without the approval of the Court. Fed. R. Civ. Proc. 23(e). The decision to approve or reject a proposed settlement "is committed to the sound discretion of the trial judge[.]" *See Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1026 (9th Cir. 1998). This discretion is to be exercised "in light of the strong judicial policy that favors settlements, particularly where complex class action litigation is concerned," which minimizes substantial litigation expenses for both sides and conserves judicial resources. *See Linney v. Cellular Alaska P'ship*, 151 F.3d 1234, 1238 (9th Cir. 1998) (quotations omitted). To make the preliminary fairness determination, courts may consider several relevant factors, including "the strength of the plaintiffs' case; the risk, expense, complexity, and likely duration of further litigation; the risk of maintaining class action status through trial; the amount offered in settlement; the extent of discovery completed and the stage of the proceedings; [and] the experience and views of counsel ..." *Hanlon*, 150 F.3d at 1026. In addition, Rule 23(e)(2) was recently amended, requiring parties to provide courts with sufficient information to determine that it will likely be able to approve the settlement as fair, reasonable, and adequate. The considerations are whether (a) the class representatives and class counsel have adequately

represented the class; (b) the proposal was negotiated at arm's length; (c) the relief provided by the settlement is adequate, taking into account: (i) the costs, risks, and delay of trial and appeal; (ii) the effectiveness of any proposed method of distributing relief including the method of processing class-member claims, if required; (iii) the terms of any proposed award of attorneys' fees, including timing of payment; and (iv) any agreement required to be identified under Rule 23(e)(3) made in connection with the proposed settlement; and (d) the proposal treats class members equitably relative to each other. Under both standards, which include overlapping factors, the proposed Settlement is fair, reasonable, and adequate, and should be preliminarily approved.

a. **The Settlement was Reached as the Result of Arm's Length Negotiations with Two Experienced Mediators**

The Parties have actively litigated the action and there are currently pending motions and the Court has issued orders regarding contested discovery disputes. At all times, the Parties' interactions were adversarial. The proposed Settlement is the result of two arm's-length negotiations with two experienced mediators. The time and effort spent on settlement negotiations, as well as the time spent in mediation with Ted Bandstra and Jill Sperber, militate in favor of preliminary approval of the proposed Settlement and strongly indicate there was no collusion. Edelsberg Decl., ¶ 4. *See National Rural Telecommunications Cooperative v. DIRECTV, Inc.,* 221 F.R.D. 523, 527 (C.D. Cal. 2004) (settlements that follow sufficient discovery and genuine arms-length negotiation are presumed fair); *Rodriguez v. W. Publishing*, 563 F.3d 948, 965 (9th Cir. 2009) ("We put a good deal of stock in the product of an arms length, non-collusive, negotiated resolution.").

The Ninth Circuit has identified "red flags" that may suggest that plaintiffs' counsel allowed pursuit of their own self-interest to infect settlement negotiations, including when counsel receive a disproportionate portion of the settlement, the parties agree to a "clear sailing" arrangement providing for the payment of attorneys' fees separate and apart from class funds, or the parties agree that any fees not awarded will revert to defendants

rather than be added to the class fund. *In re Bluetooth Headset Products Liab. Litig.*, 654 F.3d 935, 947 (9th Cir. 2011).

Here, none of the typical red flags point towards collusion. First, there is no "clear sailing" provision because the Settlement Agreement allows Class Counsel "to request 25% of the settlement Fund for attorneys' fees" but Defendant does not make an affirmative promise not to oppose that request. Agr. ¶71. Further, even if this provision was considered a "clear sailing" provision, any attorney's fees not awarded to Class Counsel will remain part of the Settlement Fund, which demonstrates a lack of collusion. *See Anderson v. Sherwin-Williams Co.*, No. ED CV 17-2459 FMO (SHKx), 2020 U.S. Dist. LEXIS 197713, at *15 (C.D. Cal. Oct. 23, 2020) (this Court reviewing a clear sailing provision and finding no collusion because any fees not awarded to class counsel will stay with the settlement fund). Another sign that the settlement is fair and not the result of collusion is the fact that Class Counsel will be paid from the same Settlement Fund as Settlement Class Members. As such, Class Counsel was incentivized to negotiate the largest fund possible. Finally, it cannot be said that Class Counsel is seeking a disproportionate portion of the settlement as Settlement Class Members will receive approximately $46, which is in line with recent TCPA settlements, while Class Counsel is seeking the benchmark of 25%[3] of the Settlement Fund. *Aboudi v. T-Mobile USA, Inc.*, No. 12cv2169 BTM(NLS), 2015 U.S. Dist. LEXIS 109054, at *14 (S.D. Cal. Aug. 18, 2015) (Noting that class counsel's request for 25% of the settlement fund is "typical and does not represent a disproportionate distribution of the settlement to counsel."); *Larson v. Harman-Mgmt. Corp.*, No. 1:16-cv-00219-DAD-SKO, 2019 U.S. Dist. LEXIS 219294, at *20 (E.D. Cal. Dec. 18, 2019) (noting that a $50 recover per class member would be in line with other TCPA settlements). *Charvat v. Valente*, No. 12-cv-05746, 2019 U.S. Dist. LEXIS 187225, at *5 (N.D. Ill. Oct. 28, 2019) (approving TCPA settlement of approximately $22 per class member); *Couser*

---

[3] The Court will, of course, have ultimate discretion over the amount of the attorneys' fee award after reviewing Class Counsel's motion.

*v. Comenity Bank*, 125 F. Supp. 3d 1034, 1044 (S.D. Cal. 2015) (approving a TCPA class settlement where each of the 308,026 approved claim members (or a 7.7% claims rate) received $13.75).

**b.  The Relief Provided by the Settlement is Fair and Reasonable Considering that Arbitrability and Liability are Highly Contested**

Defendants have vigorously contested the claims asserted by Plaintiff. While both sides strongly believe in the merits of their respective cases there are risks to both in continuing the Action. The first is whether Defendants would prevail on their pending motions to compel Plaintiff's claims to arbitration and enforce a class-action waiver contained in the sales agreement he signed when he purchased a vehicle from the Moss Bros. Moreno Valley dealership, which has sought to intervene in this action. *See* Defendant's Motions at DE's #56, #57, #58, #97-99. Plaintiff opposed all of those motions and continues to believe they should be denied, but class counsel acknowledge that the risks posed by those motions justify the settlement.

The second risk is whether Plaintiff would have prevailed on a motion for class certification. Defendants contend that Plaintiff and members of the putative class provided consent to be called, and that they obtained consent from customers in a variety of ways. If the action were to continue without a settlement and Plaintiff were to move for class certification, Defendants would argue that consent is an individualized issue that precludes class certification.  Defendants also contend that each putative class member would have signed a car purchase agreement with one of the eight Moss Bros. dealerships, and that this poses additional obstacles to class certification, e.g. individualized issues concerning the enforceability of the arbitration provisions and class-action waivers, and whether Plaintiff may serve as class representative for customers who purchased a vehicle from different dealerships.

Courts within this Circuit have reached different conclusions on whether to certify TCPA class actions. *Compare Felix v. N. Am. Asset Servs., LLC*, No. CV 12-3718-JFW (ANx), 2012 U.S. Dist. LEXIS 191548, at *7 (C.D. Cal. Sep. 5, 2012) (denying class certification), *Connelly v. Hilton Grand Vacations Co., LLC*, 294 F.R.D. 574, 579 (S.D.

Cal. Oct. 29, 2013) (same), and *Fields v. Mobile Messengers Am., Inc.*, No. 12-cv-05160-WHA, 2013 U.S. Dist. LEXIS 163950 (N.D. Cal. Nov. 18, 2013) (same), *with Stern v. DoCircle, Inc.*, No. SACV 12-2005 AG (JPRx), 2014 U.S. Dist. LEXIS 17949 (C.D. Cal. Jan. 29, 2014) (certifying TCPA class), *Caldera v. Am. Med. Collection Agency*, 320 F.R.D. 513 (C.D. Cal. June 27, 2017) (same), and *Makaron v. Enagic USA, Inc.,* 324 F.R.D. 228 (C.D. Cal. Mar. 13, 2018) (same).

Moreover, even if Plaintiff were to prevail at class certification, risks to the class remain. *See West Virginia v. Chas. Pfizer & Co.*, 314 F. Supp. 710, 743-44 (S.D.N.Y. 1970) ("[i]t is known from past experience that no matter how confident one may be of the outcome of litigation, such confidence is often misplaced"), aff'd, 440 F.2d 1079 (2d Cir. 1971); *Berkey Photo, Inc. v. Eastman Kodak Co*., 603 F.2d 263 (2d Cir. 1979) (reversing $87 million judgment after trial). In fact, even if Plaintiff prevailed at trial and on any appeal, the damages available under the TCPA in a class action are so significant that they make it hard for any company to bond an appeal and satisfy the judgment. A judgment on behalf of the approximately 53,134 Settlement Class Members would total nearly $27 million, which could then be subject to trebling up to $81 million. Thus, in addition to the risk of a loss at trial, even a verdict for Plaintiff posed a substantial risk that the judgment would never be paid. Securing a $2.5 million settlement now with certainty of payment will provide relief to Settlement Class Members. Plaintiff and his counsel carefully balanced the risks of continuing to engage in protracted and contentious litigation against the benefits to the Settlement Class, including the amount of the Settlement Fund and the deterrent effects it would have. *See* Edelsberg Decl., ¶ 5. Thus, the Settlement presents a fair and reasonable alternative to continued litigation.

### c.   The $2,500,000 Fund Provides a Fair and Substantial Class Benefit

As set forth above, Defendants have agreed to provide a $2,500,000 Settlement Fund, which will be used to pay all claiming Settlement Class Members and all settlement costs. Class Counsel estimate that the individual Settlement Class Members award will be approximately $46, less attorneys' fees and costs and notice and administration costs. *See*

13

Edelsberg Decl., ¶ 6. Although this amount is less than the TCPA's statutory damages of $500 for each negligent violation, it is well-settled that a proposed settlement need not provide class members with the type of recovery they could obtain following a total win at trial. *See National Rural Tele. Coop. v. DIRECTV, Inc*., 221 F.R.D. 523, 527 (C.D. Cal. 2004) ("well settled law that a proposed settlement may be acceptable even though it amounts to only a fraction of the potential recovery"); *In re Omnivision Tech., Inc*., 559 F. Supp. 2d 1036 (N.D. Cal. Jan. 9, 2008) (court-approved settlement amount that was just over 9% of the maximum potential recovery).

Here, the settlement award that each Settlement Class Member will likely receive is fair, appropriate, and reasonable in light of the risk, expense, and uncertainty of continued litigation within the TCPA's changing landscape. This is clearly explained to Settlement Class Members in the notice so they understand what they are giving up by participating in the settlement. Indeed, the estimated award of $47 is equal to or exceeds payments in other TCPA settlements approved in California and across the country. *Steinfeld v. Discover Fin. Servs.*, No. C 12-01118, Dkt. No. 96 at ¶ 6 (N.D. Cal. Mar. 10, 2014) (claimants received $46.98); *Adams v. AllianceOne Receivables Mgmt., Inc.*, No. 3:08-cv-00248-JAH-WVG, Dkt. No. 137 (S.D. Cal. Sept. 28, 2012) (claimants received $40); *Kramer v. Autobytel, Inc., et al.*, No. 10-cv-2722, Dkt. 148 (N.D. Cal. 2012) (cash payment of $100 to each class member); *Estrada v. iYogi, Inc.,* No. 2:13–01989 WBS CKD, 2015 WL 5895942, at *7 (E.D. Cal. Oct. 6, 2015) (granting preliminary approval to TCPA settlement where class members estimated to receive $40); *Rose v. Bank of Am. Corp.*, 2014 WL 4273358, at *10 (N.D. Cal., 2014) (claimants estimated to receive $20 to $40); *In re Capital One Tel. Consumer Prot. Act Litig. (In re Capital One)*, 80 F. Supp. 3d 781, 787 (N.D. Ill. 2015) (each claimant received $34.60); *Arthur v. Sallie Mae, Inc*., 10-cv-0198-JLR (W.D. Wash.) (Class members were to receive between $20 and $40 dollars per claim); *Fox v. Asset Acceptance, LLC*, No. 2:14-cv-00734-GW-FFM (C.D. Cal. June 20, 2016) (estimating recovery between $11.79 and $28.22 per person at time of fairness hearing, from the cash component of the settlement); *Sherman v. Kaiser*

14

*Foundation Health Plan, Inc.*, 13-cv-00981-JAH-JMS (S.D. Cal.) (individual recovery of $39.68 per claimant).

### d. **Experienced Counsel Determined that the Settlement is Appropriate and Fair to the Class**

The opinion of experienced counsel supporting the settlement is entitled to considerable weight. *See e.g.*, *Kirkorian v. Borelli*, 695 F. Supp. 446 (N.D. Cal.1988) (opinion of experienced counsel carries significant weight in terms of the reasonableness of the settlement); *Boyd v. Bechtel Corp.*, 485 F. Supp. 610, 622 (N.D. Cal. 1979). Based on these standards, Plaintiff's counsel respectfully submit that, for the reasons detailed herein, the Court should preliminarily approve the proposed Settlement as fair, reasonable and adequate. Edelsberg Decl., ¶ 7. The Parties are represented by counsel experienced in complex class action litigation. Class Counsel have extensive experience in class actions, as well as particular expertise in class actions relating to consumer protection and specifically the TCPA. Edelsberg Decl., ¶ 8 and Composite Exhibit 1. Similarly, Counsel for Defendants have extensive experience based upon a long track record in complex class actions. Defense counsel has vigorously defended their clients throughout this case including through motion practice. Class Counsel believe that the proposed Settlement is fair, reasonable and adequate and in the best interests of the Class Members. *See* Edelsberg Decl., ¶ 9.

### e. **The Settlement will be Fairly Distributed**

Any Settlement Class member who does not timely and validly request to opt-out shall be bound by the terms of this Agreement and shall automatically be mailed a Settlement Fund Payment.  If any Settlement Class Members fail to timely opt-out, they will remain in the Settlement Class and their claims will be released. Each Settlement Class member who does not opt out of the Settlement shall automatically be mailed a Settlement Fund Payment payable by check.  The amount of each Settlement Fund Payments shall be determined by the following formula: Net Settlement Fund divided by total number of unique telephone numbers that received a Message = Settlement Fund Payment.

Settlement Class Members will receive payment for each unique telephone number that may have received a prerecorded message.

Plaintiff will seek Court approval of a $5,000 Incentive Award. The Ninth Circuit has explained that service awards that are "intended to compensate class representatives for work undertaken on behalf of a class 'are fairly typical in class action cases.'" *In re Online DVD-Rental Antitrust Litig.*, 779 F.3d 934, 943 (9th Cir. 2015) (quoting *Rodriguez*, 563 F.3d at 958-59). The factors  courts consider include the class representative's actions to protect the interests of the class, the degree to which the class has benefitted from those actions, the time and effort the class  representative expended in pursuing the litigation, and any risk  the class representative assumed. *Staton v. Boeing Co.,* 327 F.3d 938, 977 (9th Cir. 2003). Plaintiff devoted significant time assisting Class Counsel in this case, including assisting with development of the case, and  making himself available  for two mediations. See **Exhibit C**, Declaration of Plaintiff Jamal Johnson.

Service Awards of $5,000 are reasonable and in line with awards approved by federal courts in California. *See, e.g., In re Nat'l Collegiate Athletic Ass'n*, No. 4:14- md-2541-CW, 2017 WL 6040065, at *11 (N.D. Cal. Dec. 6, 2017) (awarding $20,000 incentive awards to each of four class representatives and collecting cases approving similar awards); *see Vandervort, et al. v. Balboa Capital Corp.*, 8 F.Supp.3d 1200, 1207 (C.D. Cal. 2014) (awarding combined $10,000 incentive award to the two plaintiffs in TCPA case); *Stemple v. QC Holdings, Inc.*, No. 12-cv-01997-BAS(WVG), 2016 U.S. Dist. LEXIS 157244, *10-11 (S.D. Cal. Nov. 7, 2016 (approving service award of $5,000); *Abdeljalil v. GE Capital Retail Bank*, 3:12-cv 02078-JAH-MDD (S.D. Cal. Dec. 22, 2016) (approving service award of $5,000). No agreements have been made in connection with the proposed Settlement other than the Settlement Agreement. See Fed. R. Civ. P. 23(e)(3).

### f. **The Court Should Conditionally Certify the Class for Purposes of Settlement**

Courts acknowledge the propriety of class certification for purposes of class action settlements. *See In re Wireless Facilities*, 253 F.R.D. 607, 610 (S.D. Cal. 2008) ("Parties

16

may settle a class action before class certification and stipulate that a defined class be conditionally certified for settlement purposes"). It is well established that trial courts should use a lower standard for determining the propriety of certifying a settlement class, as opposed to a litigation class. The reason for this is that no trial is anticipated in a settlement class, so the case management issues inherent in determining if the class should be certified need not be confronted. *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 620 (1997); *Jabbari v. Farmer*, 965 F.3d 1001, 1005–06 (9th Cir. 2020) ("Settlement may obviate the need to litigate individualized issues that would make a trial unmanageable, making common questions more important in the relative analysis.") (citations and quotations omitted); *In re Hyundai & Kia Fuel Econ. Litig.*, 926 F.3d 539, 558 (9th Cir. 2019) (Rule 23 "factors must be considered in light of the reason for which certification is sought—litigation or settlement—which 'is relevant to a class certification.' . . . [I]n deciding whether to certify a settlement-only class, 'a district court need not inquire whether the case, if tried, would present intractable management problems.'"). However, like any other class certification decision, certification of a class for settlement purposes requires a determination that the requirements of Rule 23 are met. *Id*. Certification of a settlement class is appropriate here because the action meets the requirements of Rule 23(a) and Rule 23(b)(3). *See Caldera,* 320 F.R.D. at 517-520; *Makaron,* 324 F.R.D. at 232-235; *Stemple v. QC Holdings, Inc*., 2014 U.S.  Dist. LEXIS 125313, *26 (S.D. Cal. Sept. 5, 2014).

Of course, Defendants have vigorously denied that that certification would be appropriate for litigation in light of their defense concerning arbitration, class-action waivers, compliance with the law, and individualized issues concerning each customer and dealership.   But the class-wide settlement here resolves the significant obstacles to certifying a class on the merits.   Thus, in agreeing to conditionally certify the class for settlement purposes, Defendants have expressly preserved all defenses and arguments against class certification on the merits, in the event the settlement is not approved. Agr. 34-36.

### i. The Proposed Settlement Class is Numerous

Class certification under Rule 23(a)(1) is appropriate where a class contains so many members that joinder of all would be impracticable. "Impracticability does not mean 'impossibility,' but only the difficulty or inconvenience of joining all members of the class.'" *Harris v. Palm Springs Alpine Estates, Inc.*, 329 F.2d 909, 913-14 (9th Cir. 1964) (citation omitted). The Settlement Class here consists of approximately 54,134 unique individuals, which more than satisfies the numerosity prerequisite under Fed. R. Civ. P. 23(a)(1). *See also*, *Abdeljalil v. GE Capital Corp.*, 306 F.R.D. 303, 308 (S.D. Cal. Mar. 26, 2015).

### ii. The Class-wide Settlement Resolves Common Questions

The commonality requirement is met if there are questions of law and fact common to the class. *Hanlon*, 150 F.3d at 1019 ("The existence of shared legal issues with divergent legal factual predicates is sufficient, as is a common core of salient facts coupled with disparate legal remedies within the class."). The claims being released under the class-wide settlement all stem from the same basic factual circumstances—marketing calls sent on behalf of dealerships managed by Defendants with a prerecorded voice message. *See Abdeljalil*, 306 F.R.D. at 309 (finding commonality where plaintiff alleged "defendant called third parties on their cellular telephone number via an ATDS and/or prerecorded voice without prior express consent after defendant was on notice that it was calling a third party"); *see also*, *Caldera*, 320 F.R.D. at 517 (listing common issues in TCPA action).

The settlement also resolves in one fell swoop a number of questions of law that Plaintiff contends are common to all members of the Class, including whether: (1) Defendants were agents of the various dealerships; (2) called "cellular" telephone numbers; (3) using a prerecorded voice; (4) without the called party's "prior express consent". *See Lemieux v. Schwan's Home Serv.*, 2013 U.S. Dist. LEXIS 98735, *22 (S.D. Cal. July 15, 2013). The named Plaintiff here seeks the same remedies, including statutory damages. Thus, the commonality requirement is satisfied.

18

### iii. **In the Context of this Class-wide Settlement, Plaintiff's Claims are Typical**

The typicality requirement is met if the claims of the named representatives are typical of those of the class, though "they need not be substantially identical." *Hanlon*, 150 F.3d at 1020. Under the settlement here, Plaintiff's claims are typical of the potential claims of the whole Settlement Class because the releases arise from the same factual basis – the allegation that Defendants caused prerecorded marketing calls to be sent to members of the class without first obtaining proper consent– and are based on the same legal theory as applies to the Class as a whole – that the calls violated the TCPA. *See Wehne v. Syntex Corp.*, 117 F.R.D. 641, 644 (N.D. Cal. 1987). Thus, the typicality requirement for certifying a settlement class is satisfied. *See Malta v. Fed. Home Loan Mortg. Corp.*, 2013 U.S. Dist. LEXIS 15731, *7 (S.D. Cal. Feb. 5, 2013) ("Plaintiffs' claims arise from the same factual basis as that of the class: calls made to Plaintiffs using auto-dialing equipment. … In addition, plaintiffs' claims are based on the same legal theory as that applicable to the class."); *Stern,* 2014 U.S. Dist. LEXIS 17949 at *12; *Abdeljalil*, 306 F.R.D. at 309.

### iv. **Adequacy Requirement is Satisfied**

Rule 23(a)(4) is satisfied if "the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). The Court must measure the adequacy of representation by two standards: "(1) Do the representative plaintiffs and their counsel have any conflicts of interest with other class members, and (2) will the representative plaintiffs and their counsel prosecute the action vigorously on behalf of the class?" *In re Wireless Facilities*, 253 F.R.D. at 611 (quoting *Staton v. Boeing Co.*, 327 F.3d 938, 958 (9th Cir. 2003)). Plaintiff should be appointed Settlement Class Representative. Plaintiff has been diligent in prosecuting his claims and the putative class claims and Plaintiff's counsel participated in private mediation before two well respected mediators. Plaintiff assisted his counsel in the initial factual investigation and provided details concerning the calls from Defendants and served and responded to written discovery. Plaintiff additionally reviewed and agreed with the terms of the Settlement

19

Agreement. Also, Plaintiff's attorneys have extensive experience prosecuting class actions seeking to protect privacy and consumer rights, including TCPA actions. Plaintiffs' counsel are qualified and able to conduct this litigation as Class Counsel, and there are no known conflicts of interest. Edelsberg Decl., ¶ 10.

**v.  Common Questions Predominate in the Context of this Class-wide Settlement**

Class certification under Rule 23(b)(3) is appropriate where "questions of law or fact common to class members predominate over any questions affecting only individual members." Fed. R. Civ. P. 23(b)(3). The inquiry focuses on whether the class is "sufficiently cohesive to warrant adjudication by representation." *Local Joint Exec. Bd. of Culinary/Bartender Trust Fund v. Las Vegas Sands, Inc*., 244 F.3d 1152, 1162 (9th Cir. 2001). Central to this question is "the notion that the adjudication of common issues will help achieve judicial economy." *Zincser v. Accufix Research Institute, Inc*., 253 F.3d 1188, 1189 (9th Cir. 2001) (citation omitted), *as amended*, 273 F. 3d 1266 (9th Cir. 2001).

In the settlement context, a court's evaluation of Rule 23's predominance and manageability standards are relaxed.  That is because class-wide settlement may "obviate[ ] the need to litigate individualized issues that would make a trial unmanageable, making common questions more important in the relative analysis." *Jabbari v. Farmer*, 965 F.3d 1001, 1005–06 (9th Cir. 2020); *see also In re Hyundai & Kia Fuel Econ. Litig.*, 926 F.3d at 558 ("[W]hether a proposed class is sufficiently cohesive to satisfy Rule 23(b)(3) is informed by whether certification is for litigation or settlement. A class that is certifiable for settlement may not be certifiable for litigation if the settlement obviates the need to litigate individualized issues that would make a trial unmanageable."); *McConville v. Renzenberger, Inc*., No. CV 17-2972 FMO (JCX), 2019 WL 9408103, at *3 (C.D. Cal. Dec. 2, 2019) (The "courts need not consider the Rule 23(b)(3) issues regarding manageability of the class action, as settlement obviates the need for a manageable trial."). "The main concern in the predominance inquiry … [is] the balance between individual and common issues." *In re Wells Fargo Home Mortg. Overtime Pay Litig.*, 571 F.3d 953, 959

20

(9th Cir. 2009). In the context of a settlement-only class, "a district court need not inquire whether the case, if tried, would present intractable management problems . . . for the proposal is that there be no trial." *Amchem Prods.*, 521 U.S. at 620.

Here, the class-wide Settlement provides the required "cohesion" by resolving common questions that Plaintiff would need to substantiate if forced to seek class certification on the merits of his claims, such as: (1) whether Defendants violated the TCPA by making artificial or prerecorded calls, and (2) whether Defendants obtained proper express written consent. *See Makaron,* 324 F.R.D at 234 (finding predominance in light of plaintiffs' claims they received autodialed or prerecorded calls, and that defendant was vicariously liable for actions of its distributors); *Abdeljalil*, 306 F.R.D. 303, 310-12; *Malta*, 2013 U.S. Dist. LEXIS 15731 at *10 ("The central inquiry is whether Wells Fargo violated the TCPA by making calls to the class members."). The Settlement's common treatment of Settlement Class Members using a fair and neutral formula avoids any individualized issues concerning highly contested issues like arbitrability and consent. For purposes of this settlement, the predominance requirement is satisfied.

### vi. **Superiority Element is Satisfied**

Class certification is also "superior to other available methods for fair and efficient adjudication of the controversy." Fed. R. Civ. P. 23(b)(3). Here, there are thousands of class members with modest individual claims, most of whom likely lack the resources necessary to seek individual legal redress. *See Local Joint Exec. Bd. of Culinary/ Bartender Trust Fund v. Las Vegas Sands, Inc.*, 244 F.3d 1152, 1163 (9th Cir. 2001) (cases involving "multiple claims for relatively small individual sums" are particularly well suited to class treatment); *see also Wolin v. Jaguar Land Rover N. Am., LLC*, 617 F.3d 1168, 1175 (9th Cir. 2010) ("Where recovery on an individual basis would be dwarfed by the cost of litigating on an individual basis, this factor weighs in favor of class certification."). A class-wide settlement that provides an automatic payment to those who do not opt-out is far superior to taking the risk that class certification on the merits may not be granted or pursuing individual claims.

### g. **The Notice Plan Complies with Rule 23(e) and Due Process**

Rule 23(e)(1) states that "[t]he court must direct notice in a reasonable manner to all class members who would be bound by" a proposed settlement, voluntary dismissal, or compromise. Class members are entitled to the "best notice that is practicable under the circumstances" of any proposed settlement before it is finally approved by the Court. Fed. R. Civ. P. 23(c)(2)(B). The amendments to Rule 23(c)(2)(B) provide that "notice may be by one or more of the following: United States mail, electronic means, or other appropriate means." To comply with due process, notice must be "the best notice practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." *Amchem Prods. v. Windsor*, 521 U.S. 591, 617 (1997). Notice must state in plain, easily understood language: (i) the nature of the action; (ii) the definition of the class certified; (iii) the class claims, issues, or defenses; (iv) that a class member may enter an appearance through an attorney if the member so desires; (v) that the court will exclude from the class any member who requests exclusion; (vi) the time and manner for requesting exclusion; and (vii) the binding effect of a class judgment on members. Fed. R. Civ. P. 23(c)(2)(B).

This Settlement provides for a Notice Plan that will include direct mail notice to Settlement Class Members whose cellular telephone numbers were called by Defendants during the Class Period. Edelsberg Decl., ¶11. In addition, Settlement Administrator Epiq will maintain a Settlement Website with a Long-Form Notice, detailed information about the Settlement, and a toll-free number that anyone may call to obtain information. The Notice Plan fulfills the requirements of adequate notice for due process purposes and should be preliminarily approved. *Torrisi v. Tucson Elec. Power Co*., 8 F.3d 1370, 1374-75 (9th Cir. Ariz. 1993); *Malta*, 2013 U.S. Dist LEXIS 15731 at *29-30; Rule 23(c)(2); Manual, 3d. 30.21.

All of the notices, attached as Exhibits 1 and 2 to the Settlement Agreement, are drafted in plain English, so they will be easy to understand. They include key information about the Settlement, including the deadline to file a claim, the deadline to request exclusion

or object to the Settlement, and the date of the Final Approval Hearing (and that the hearing date may change without further notice). The notices state the amount of the fee and cost award Class Counsel will request, the amount of the Incentive Award Plaintiffs will request, and the maximum Administrative Expenses. The notices disclose that, by participating in the Settlement, Settlement Class Members give up the right to file their own lawsuit. They direct Settlement Class Members to the Settlement Website for further information where copies of the notices and the Settlement Agreement. The manner and content of the proposed Notice Plan complies with Rule 23 and due process. Similar notice plans are commonly used in class actions like this one and constitute the best notice practicable under the circumstances. *See, e.g., Spann v. J.C. Penney Corp.*, 314 F.R.D. 312, 330 (C.D. Cal. 2016) (approving a settlement notice program of emails and postcards to class members with known addresses as well as publication in magazines and on the internet); *In re Cathode Ray Tube (Crt) Antitrust Litig.*, No. C-07-05944 JST, 2015 WL 6871439, at *1-2 (N.D. Cal. Nov. 9, 2015) (approving notice plan of mailing to class members identified by defendants, publication in two newspapers, and posting on the internet); *see also,* Newberg on Class Actions § 8:29 (5th ed. June 2018) ("While notice by mail is generally preferred for class members who have been identified, notice by publication has traditionally served an important supplemental role.").

## V.    Proposed Schedule of Events

In connection with Preliminary Approval of the Settlement, the Court should also set a date and time for the Final Approval Hearing. Other deadlines in the Settlement approval process, including the deadlines for requesting exclusion from the Settlement Class or objecting to the Settlement, will be determined based on the date of the Final Approval Hearing or the date on which the Preliminary Approval Order is entered. Class Counsel propose the following schedule:

| **Event** | **Timeline** |
|---|---|
| Deadline for Completion of Notice | 60 days after entry of the Preliminary Approval Order; no later than 90 days before the Final Approval Hearing |
| Deadline for filing Motion for Final Approval of the Settlement and Class Counsel's Fee Application and expenses, and for the Service Awards | No later than 45 days before the Final Approval Hearing |
| Deadline for opting-out of the Settlement and for submission of Objections | 60 days from mailing of the Notice; no later than 30 days before the Final Approval Hearing |
| Deadline for Responses to Objections | 15 days before the Final Approval Hearing |
| Final Approval hearing | At least 120 days after Preliminary Approval |

## VI.    Conclusion

Based on the foregoing, Plaintiff and Class Counsel respectfully request that the Court: (1) grant Preliminary Approval to the Settlement; (2) conditionally certify for settlement purposes the proposed Settlement Class, pursuant to Rule 23(b)(3) and (e) of the Federal Rules of Civil Procedure; (3) approve the Notice program set forth in the Agreement and approve the form and content of the Notices, attached to the Settlement Agreement; (4) approve and order the opt-out and objection procedures set forth in the Agreement; (5) appoint Plaintiff as Settlement Class Representatives; (6) appoint as Class Counsel the law firms and attorneys listed in the Agreement; and (7) schedule a Final Approval Hearing. A Proposed Preliminary Approval Order is attached hereto as **Exhibit D**.

Dated: February 22, 2021

Respectfully submitted,

*/s/ Scott Edelsberg*
Scott Edelsberg, Esq.
California Bar No. 330990
scott@edelsberglaw.com
**EDELSBERG LAW, PA**
20900 NE 30th Ave., Suite 417
Aventura, FL 33180
Office: (305) 975-3320

**IJH LAW**
Ignacio J. Hiraldo, Esq. (pro hac vice) 1200 Brickell Ave Suite 1950
Miami, FL 33131
Email: ijhiraldo@ijhlaw.com
Telephone: 786.496.4469

**HIRALDO PA**
Manuel S. Hiraldo (pro hac vice)
401 E. Las Olas Boulevard
Suite 1400
Ft. Lauderdale, Florida 33301
Email: mhiraldo@hiraldolaw.com Telephone: 954-400-4713

**SHAMIS & GENTILE, PA**
Andrew J. Shamis (*pro hac vice*)
14 NE 1st Avenue, Suite 400
Miami, Florida 33132
Telephone: 305-479-2299
ashamis@shamisgentile.com


Attorneys for Plaintiff Jamal Johnson

## **CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on this 22nd day of February, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF. I also certify that the foregoing document is being served this day on all counsel of record via transmission of Notice of Electronic Filing generated by CM/ECF.

Respectfully submitted,

*/s/ Scott Edelsberg*