1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

JAMAL JOHNSON, individually and on
behalf of all others similarly situated,

               Plaintiff,

      v.

MOSS BROS. AUTO GROUP, INC., <u>et
al.</u>,

               Defendant.

)
)
)
)
)
)
)
)
)
)
)
)
)

Case No. ED CV 19-2456 FMO (SPx)

**ORDER RE: MOTION FOR PRELIMINARY
APPROVAL OF CLASS ACTION
SETTLEMENT**

Having reviewed and considered all the briefing filed with respect to plaintiff's Amended
Motion for Preliminary Approval (Dkt. 123, "Motion"), and the oral argument presented at the
hearing on January 20, 2021, the court concludes as follows.

**<u>BACKGROUND</u>**

On December 20, 2019, Jamal Johnson ("Johnson" or "plaintiff") filed this action on behalf
of himself and all others similarly situated against Moss Bros. Auto Group, Inc. ("Moss Bros."),
asserting claims for violations of the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. §
227.  (<u>See</u> Dkt. 1, Complaint at ¶¶ 65-69).  On August 24, 2020, Johnson filed the operative
Second Amended Complaint ("SAC") alleging that Moss Bros. and Susan Anderson ("Anderson")
(collectively, "defendants"), negligently and willfully violated the TCPA by sending plaintiff, and
others similarly situated, "prerecorded telemarketing messages" to their cell phones, (Dkt. 84, SAC
at ¶¶ 27-29), without their express written consent.  (<u>Id.</u> at ¶ 32).  Plaintiff seeks statutory

damages, injunctive relief, attorney's fees and costs, and "[s]uch further and other relief as the Court deems necessary."  (See id. at ¶ 5 & Prayer for Relief).

After extensive motion practice, (see Dkt. 123, Motion at 2-3, 10), and "engaging in discovery, extensive arm's-length negotiations, two private mediation sessions, and confirmatory discovery[,]" (id. at 2, 10), the parties reached a settlement in October 2020.  (Dkt. 123-1, Class-Wide Settlement Agreement and Release ("Settlement Agreement") at 2-3.  The parties have defined the settlement class as:

> All persons within the United States who, within the four years prior to the filing of this action (i.e., since December 20, 2015), were sent a prerecorded message from Defendants, auto dealerships managed by Defendants (the 'Dealerships'), or anyone acting on behalf of any Defendant or Dealership (including employees, agents, third-party contractors, and sub-contractors), to said person's telephone number, for the purpose of advertising and/or promoting any dealership that is held, operated, owned, managed, serviced and/or controlled by, and/or is a subsidiary of, Defendant Moss Bros Auto Group, Inc.[1]

(Id. at ¶ 34).

Pursuant to the settlement, Moss Bros. will pay a gross settlement amount of $2.5 million dollars, (Dkt. 123-1, Settlement Agreement at ¶¶ 30, 37), which will be used to pay class members, the class representative's service payment, settlement administration costs, taxes,[2] and attorney's fees and costs.  (Id. at ¶¶ 61, 63).  The settlement provides for up to $625,700 (25% of the gross settlement amount) in attorney's fees, (id. at ¶ 71); costs not to exceed $75,000, (id.); and an incentive payment of $5,000 for Johnson.  (Id. at ¶ 73).  Also, the proposed settlement administrator, Epiq Class Action & Claims Solutions, Inc. ("Epiq"), shall be paid no more than

---

[1] The "Settlement Class Period" is defined as "the period from December 20, 2015 . . . through the date of Preliminary Approval."  (Dkt. 123-1, Settlement Agreement at ¶ 6).

[2] The payment of taxes includes "taxes owed as a result of accrued interest on the Escrow Account[.]"  (Dkt. 123-1, Settlement Agreement at ¶ 61(d)).

$125,000 from the gross settlement amount.  (Id. at ¶¶ 2, 42).  Each class member who does not opt out will automatically be mailed a settlement check.  The amount will be determined by dividing the net settlement amount by the total number of unique telephone numbers that received a message.  (Dkt. 123-1, Settlement Agreement at ¶ 62).  In addition to monetary relief, the settlement provides prospective nonmonetary relief by requiring defendants and the Dealerships to "adopt policies and procedures regarding compliance with the TCPA and the National Do Not Call Registry."  (Id. at ¶ 38).

In his Motion, plaintiff seeks an order (1) preliminarily approving the proposed settlement; (2) certifying the proposed settlement class; (3) appointing plaintiff as class representative; (4) appointing Edelsberg Law, P.A.; Shamis & Gentile, P.A..; Hiraldo, P.A.; Eisenband Law, PA; and IJH Law as class counsel; (5) appointing Epiq as settlement administrator; (6) approving and ordering dissemination of the proposed class notice and forms; and (7) scheduling a final approval hearing.  (See Dkt. 123, Motion at 1-2).

## **LEGAL STANDARD**

I.    CLASS CERTIFICATION.

At the preliminary approval stage, the court "may make either a preliminary determination that the proposed class action satisfies the criteria set out in Rule 23 . . . or render a final decision as to the appropriateness of class certification."[3] Smith v. Wm. Wrigley Jr. Co., 2010 WL 2401149, *3 (S.D. Fla. 2010) (citation and footnote omitted); see also Sandoval v. Roadlink USA Pac., Inc., 2011 WL 5443777, *2 (C.D. Cal. 2011) (citing Amchem Prods., Inc. v. Windsor, 521 U.S. 591, 620, 117 S.Ct. 2231, 2248 (1997)) ("Parties seeking class certification for settlement purposes must satisfy the requirements of Federal Rule of Civil Procedure 23[.]").  In the settlement context, a court must pay "undiluted, even heightened, attention" to class certification requirements.  See Amchem, 521 U.S. at 620, 117 S.Ct. at 2248; In re Volkswagen "Clean Diesel" Mktg., Sales Pracs., & Prods. Liab. Litig., 895 F.3d 597, 606 (9th Cir. 2018) (same).  "Such attention is of vital importance, for a court asked to certify a settlement class will lack the opportunity, present when

---

[3] All "Rule" references are to the Federal Rules of Civil Procedure.

a case is litigated, to adjust the class, informed by the proceedings as they unfold." <u>Amchem</u>, 521 U.S. at 620, 117 S.Ct. at 2248.

A party seeking class certification must first demonstrate that: "(1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class."  Fed. R. Civ. P. 23(a).

"Second, the proposed class must satisfy at least one of the three requirements listed in Rule 23(b)."  <u>Wal-Mart Stores, Inc. v. Dukes</u>, 564 U.S. 338, 345, 131 S.Ct. 2541, 2548 (2011) ("<u>Dukes</u>").  Rule 23(b) is satisfied if:

> (1) prosecuting separate actions by or against individual class members would create a risk of:
>
> > (A) inconsistent or varying adjudications with respect to individual class members that would establish incompatible standards of conduct for the party opposing the class; or
> >
> > (B) adjudications with respect to individual class members that, as a practical matter, would be dispositive of the interests of the other members not parties to the individual adjudications or would substantially impair or impede their ability to protect their interests;
>
> (2) the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole; or
>
> (3) the court finds that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy. The matters pertinent to these findings include:
>
> > (A) the class members' interests in individually controlling the prosecution or defense of separate actions;

1            (B) the extent and nature of any litigation concerning the controversy

2            already begun by or against class members;

3            (C) the desirability or undesirability of concentrating the litigation of the

4            claims in the particular forum; and

5            (D) the likely difficulties in managing a class action.

6 Fed. R. Civ. P. 23(b)(1)-(3).

7        The party seeking class certification bears the burden of demonstrating that the proposed

8 class meets the requirements of Rule 23. See Dukes, 564 U.S. at 350, 131 S.Ct. at 2551 ("A party

9 seeking class certification must affirmatively demonstrate his compliance with the Rule – that is,

10 he must be prepared to prove that there are in fact sufficiently numerous parties, common

11 questions of law or fact, etc.").  However, courts need not consider the Rule 23(b)(3) issues

12 regarding manageability of the class action, as settlement obviates the need for a manageable

13 trial.  See In re Hyundai and Kia Fuel Econ. Litig., 926 F.3d 539, 556-57 (9th Cir. 2019) (en banc)

14 ("The criteria for class certification are applied differently in litigation classes and settlement

15 classes.  In deciding whether to certify a litigation class, a district court must be concerned with

16 manageability at trial.  However, such manageability is not a concern in certifying a settlement

17 class where, by definition, there will be no trial.").

18 II.     FAIRNESS OF CLASS ACTION SETTLEMENT.

19        Rule 23 provides that "[t]he claims, issues, or defenses of a certified class – or a class

20 proposed to be certified for purposes of settlement – may be settled . . . only with the court's

21 approval."  Fed. R. Civ. P. 23(e).  "The primary concern of [Rule 23(e)] is the protection of th[e]

22 class members, including the named plaintiffs, whose rights may not have been given due regard

23 by the negotiating parties."  Officers for Just. v. Civ. Serv. Comm'n of the City & Cty. of S.F., 688

24 F.2d 615, 624 (9th Cir. 1982).  Whether to approve a class action settlement is "committed to the

25 sound discretion of the trial judge."  Class Plaintiffs v. City of Seattle, 955 F.2d 1268, 1276 (9th

26 Cir. 1992) (internal quotation marks omitted).

27        "If the [settlement] proposal would bind class members, the court may approve it only after

28 a hearing and only on finding that it is fair, reasonable, and adequate[.]"  Fed. R. Civ. P. 23(e)(2).

1    Approval of a class action settlement requires a two-step process – preliminary approval and the

2    dissemination of notice to the class, followed by a later final approval.  Spann v. J.C. Penney

3    Corp., 314 F.R.D. 312, 319 (C.D. Cal. 2016).  Although "[c]loser scrutiny is reserved for the final

4    approval hearing[,]" Harris v. Vector Mktg. Corp., 2011 WL 1627973, *7 (N.D. Cal. 2011), "the

5    showing at the preliminary approval stage – given the amount of time, money, and resources

6    involved in, for example, sending out . . . class notice[] – should be good enough for final

7    approval."  Spann, 314 F.R.D. at 319; see 4 Newberg on Class Actions, § 13:10 (5th ed.)

8    ("[S]ending notice to the class costs money and triggers the need for class members to consider

9    the settlement, actions which are wasteful if the proposed settlement [is] obviously deficient from

10   the outset."); see, e.g., Fed. R. Civ. P. 23(e)(1)(A) ("The parties must provide the court with

11   information sufficient to enable it to determine whether to give notice of the proposal to the

12   class.").  In determining whether a settlement is fair, reasonable, and adequate, the newly revised

13   Rule 23(e)(2) standard requires the court to evaluate whether:  "(A) the class representatives and

14   class counsel have adequately represented the class; (B) the proposal was negotiated at arm's

15   length; (C) the relief provided for the class is adequate, taking into account: (i) the costs, risks, and

16   delay of trial and appeal; (ii) the effectiveness of any proposed method of distributing relief to the

17   class, including the method of processing class-member claims; (iii) the terms of any proposed

18   award of attorney's fees, including timing of payment; and (iv) any agreement required to be

19   identified under Rule 23(e)(3); and (D) the proposal treats class members equitably relative to

20   each other."[4]  Fed. R. Civ. P. 23(e)(2).

21          "At this stage, the court may grant preliminary approval of a settlement and direct notice

22   to the class if the settlement:  (1) appears to be the product of serious, informed, non-collusive

23   _____

24   [4] Settlement approval requires the court to scrutinize all settlements, whether negotiated prior
     to or after class certification, for conflicts of interest or signs of collusion, including "(1) when
25   counsel receive a disproportionate distribution of the settlement, or when the class receives no
     monetary distribution but class counsel are amply rewarded[;]" "(2) when the parties negotiate a
26   'clear sailing' arrangement[;]" and "(3) when the parties arrange for fees not awarded to revert to
     defendants rather than be added to the class fund[.]"  In re Bluetooth Headset Prods. Liab. Litig.,
27   654 F.3d 935, 947 (9th Cir. 2011) (internal quotation marks omitted); see Fed. R. Civ. P. 23(e)(2).
     The court assesses these factors in connection with final approval.
28

negotiations; (2) has no obvious deficiencies; (3) does not improperly grant preferential treatment to class representatives or segments of the class; and (4) falls within the range of possible approval." Spann, 314 F.3d at 319 (internal quotation marks omitted); see Bronson v. Samsung Elecs. Am., Inc., 2019 WL 5684526, *7 (N.D. Cal. 2019) ("Preliminary approval is appropriate if the proposed settlement appears to be the product of serious, informed, non-collusive negotiations, has no obvious deficiencies, does not improperly grant preferential treatment to class representatives or segments of the class, and falls within the range of possible approval.") (internal quotation marks omitted); see also 2018 Adv. Comm. Notes to Amendments to Rule 23 (stating that "[t]he goal of t[he Rule 23(e)] amendment [wa]s not to displace any factor" that courts considered prior to the amendment, "but rather to focus . . . on the core concerns of procedure and substance that should guide the decision whether to approve the proposal"); 4 Newberg on Class Actions, § 13:10 (5th ed.) ("In 2018, Congress codified this approach into Rule 23.").

### DISCUSSION

I.      CLASS CERTIFICATION.

    A.      Rule 23(a) Requirements.

        1.      **Numerosity**.

        The first prerequisite of class certification requires that the class be "so numerous that joinder of all members is impracticable[.]"   Fed. R. Civ. P. 23(a)(1).   "A class satisfies the prerequisite of numerosity if it is so large that joinder of all class members is impracticable." Ahlman v. Barnes, 445 F.Supp.3d 671, 684 (C.D. Cal. 2020).   "The Ninth Circuit has required at least fifteen members to certify a class, and classes of at least forty members are usually found to have satisfied the numerosity requirement."   Makaron v. Enagic USA, Inc., 324 F.R.D. 228, 232 (C.D. Cal. 2018).

        Here, the class is so numerous that joinder is impracticable.   The settlement class includes approximately "54,134 unique individuals," (see Dkt. 123, Motion at 18), which easily exceeds the minimum threshold for numerosity.

1          2.     **Commonality**.

2          The commonality requirement is satisfied if "there are questions of law or fact common to

3   the class[.]"  Fed. R. Civ. P. 23(a)(2).  Commonality requires plaintiffs to demonstrate that their

4   claims "depend upon a common contention . . . . [whose] truth or falsity will resolve an issue that

5   is central to the validity of each one of the claims in one stroke."  Dukes, 564 U.S. at 350, 131

6   S.Ct. at 2551; see Wolin v. Jaguar Land Rover N. Am., LLC, 617 F.3d 1168, 1172 (9th Cir. 2010)

7   (The commonality requirement demands that "class members' situations share a common issue

8   of law or fact, and are sufficiently parallel to insure a vigorous and full presentation of all claims

9   for relief.") (internal quotation marks omitted).   "The plaintiff must demonstrate the capacity of

10  classwide proceedings to generate common answers to common questions of law or fact that are

11  apt to drive the resolution of the litigation."  Mazza v. Am. Honda Motor Co., Inc., 666 F.3d 581,

12  588 (9th Cir. 2012) (internal quotation marks omitted).   "This does not, however, mean that every

13  question of law or fact must be common to the class; all that Rule 23(a)(2) requires is a single

14  significant question of law or fact."  Abdullah v.  U.S. Sec. Assocs., Inc., 731 F.3d 952, 957 (9th

15  Cir. 2013) (emphasis and internal quotation marks omitted); see Mazza, 666 F.3d at 589

16  (characterizing commonality as a "limited burden[,]" stating that it "only requires a single significant

17  question of law or fact").  Proof of commonality under Rule 23(a) is "less rigorous" than the related

18  preponderance standard under Rule 23(b)(3). See Hanlon v. Chrysler Corp., 150 F.3d 1011, 1019

19  (9th Cir. 1998), overruled on other grounds as recognized by Castillo v. Bank of Am., NA, 980 F.3d

20  723 (9th Cir. 2020); Mazza, 666 F.3d at 589.  "The existence of shared legal issues with divergent

21  factual predicates is sufficient, as is a common core of salient facts coupled with disparate legal

22  remedies within the class."  Hanlon, 150 F.3d at 1019.

23          This case involves common class-wide questions that are apt to drive the resolution of

24  plaintiff's claims.  Here, common questions include:  (1) whether defendants were agents of the

25  dealerships; (2) whether defendants called "cellular" numbers using a prerecorded voice; and (3)

26  whether defendants had prior express consent.  (See Dkt. 123, Motion at 18).   Under the

27  circumstances, the court finds that plaintiff has satisfied the commonality requirement.  See, e.g.,

28  Malta v. Fed. Home Loan Mortg. Corp., 2013 WL 444619, *2 (S.D. Cal. 2013) ("There are . . .

several common questions of law, including: (1) whether [defendant] negligently violated the TCPA; (2) whether [defendant] willfully or knowingly violated the TCPA; and (3) whether [defendant] had 'prior express consent' for the calls."); Grant v. Cap. Mgmt. Servs., L.P., 2013 WL 6499698, *3 (S.D. Cal. 2013) ("[Q]uestions of law or fact common to all the class members include:  (1) whether the class member received a telephone call to the class member's cellular telephone from Defendant; (2) whether Defendant used an automated telephone dialing system in violation of the TCPA; (3) whether Defendant utilized a prerecorded or artificial device; and (4) whether Defendant had express consent to call the class member's cellular telephone.").

### 3.  **Typicality**.

"Typicality refers to the nature of the claim or defense of the class representative, and not to the specific facts from which it arose or the relief sought."  Ellis v. Costco Wholesale Corp., 657 F.3d 970, 984 (9th Cir. 2011) (internal quotation marks omitted).  To demonstrate typicality, plaintiff's claims must be "reasonably co-extensive with those of absent class members[,]" although "they need not be substantially identical."  Hanlon, 150 F.3d at 1020; see Ellis, 657 F.3d at 984 ("Plaintiffs must show that the named parties' claims are typical of the class.").  "The test of typicality is whether other members have the same or similar injury, whether the action is based on conduct which is not unique to the named plaintiff[], and whether other class members have been injured by the same course of conduct."  Ellis, 657 F.3d at 984 (internal quotation marks omitted).

Here, the claims of the named plaintiff are typical of the claims of the class.  Plaintiff's claims arise from the same nucleus of facts as those of the class – i.e., whether defendants caused prerecorded marketing calls to be sent to plaintiff's and the class members' cell phones without first obtaining proper consent – and are based on the same legal theory, i.e., the calls allegedly violated the TCPA.  (See Dkt. 123, Motion at 19); see, e.g., Malta, 2013 WL 444619, at *3 (finding plaintiffs' claims typical of the class in part because their claims were "based on the same legal theory as that applicable to the class:  that the calls violated the TCPA").  In short, plaintiff has satisfied the typicality requirement.

4.   **Adequacy of Representation**.

"The named Plaintiffs must fairly and adequately protect the interests of the class."  Ellis, 657 F.3d at 985 (citing Fed. R. Civ. P. 23(a)(4)).  "To determine whether [the] named plaintiffs will adequately represent a class, courts must resolve two questions:  (1) do the named plaintiffs and their counsel have any conflicts of interest with other class members and (2) will the named plaintiffs and their counsel prosecute the action vigorously on behalf of the class?"  Id. (internal quotation marks omitted).  "Adequate representation depends on, among other factors, an absence of antagonism between representatives and absentees, and a sharing of interest between representatives and absentees."  Id.

Here, the proposed class representative, who has no individual claims separate from the class claims, (see, generally, Dkt. 84, SAC at ¶¶ 46-57), does not appear to have any conflicts of interest with the absent class members.  (See Dkt. 123, Motion at 19-20); (Dkt. 123-3, Declaration of Jamal Johnson ("Johnson Decl.") at ¶ 15); see, e.g., Barbosa v. Cargill Meat Sols. Corp, 297 F.R.D. 431, 442 (E.D. Cal. 2013) ("[T]here is no apparent conflict of interest between the named Plaintiffs' claims and those of the other Class Members' – particularly because the named Plaintiffs have no separate and individual claims apart from the Class.").  Moreover, Johnson states that he has "and will adequately, represent the interests of the settlement class members[.]" (Dkt. 123-3, Johnson Decl. at ¶ 8).  In short, "[t]he adequacy-of-representation requirement is met here because Plaintiff[] ha[s] the same interests as the absent Class Members[.]" Barbosa, 297 F.R.D. at 442.

Finally, as noted earlier, adequacy "also factors in competency and conflicts of class counsel."  Amchem, 521 U.S. at 626 n. 20, 117 S.Ct. at 2251 n. 20.  Here, the Settlement Agreement provides that the court appoint Edelsberg Law, P.A.; Shamis & Gentile, P.A..; Hiraldo, P.A.; Eisenband Law, PA; and IJH Law as class counsel.  (See Dkt. 123-1, Settlement Agreement at ¶ 5) (defining class counsel).  Having reviewed the declaration of proposed class counsel, (see Dkt. 123-2, Declaration in Support of Unopposed Motion for Preliminary Approval of Class Settlement and Certification of Settlement Class ("Edelsberg Decl.") at ¶¶ 8, 10); (id., Exh. 1 (Resumes of Class Counsel)), the court finds that plaintiff's counsel are competent, and there are

no issues as to the adequacy of representation.  See Barbosa, 297 F.R.D. at 443 ("There is no challenge to the competency of the Class Counsel, and the Court finds that Plaintiffs are represented by experienced and competent counsel who have litigated numerous class action cases.").

B.     Rule 23(b) Requirements.

Certification under Rule 23(b)(3) is proper "whenever the actual interests of the parties can be served best by settling their differences in a single action."  Hanlon, 150 F.3d at 1022 (internal quotation marks omitted).  The rule requires two different inquiries, specifically a determination as to whether:  (1) "questions of law or fact common to class members predominate over any questions affecting only individual members[;]" and (2) "a class action is superior to other available methods for fairly and efficiently adjudicating the controversy."  Fed. R. Civ. P. 23(b)(3); see Spann, 314 F.R.D. at 321-22.

1.     **Predominance**.

"[T]he predominance analysis under Rule 23(b)(3) focuses on the relationship between the common and individual issues in the case, and tests whether the proposed class is sufficiently cohesive to warrant adjudication by representation."  Abdullah, 731 F.3d at 964 (internal quotation marks omitted); see Amchem, 521 U.S. at 623, 117 S.Ct. at 2249 ("The Rule 23(b)(3) predominance inquiry tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation.");  In re Wells Fargo Home Mortg. Overtime Pay Litig., 571 F.3d 953, 959 (9th Cir. 2009) ("[T]he main concern in the predominance inquiry . . . [is] the balance between individual and common issues.").  "When common questions present a significant aspect of the case and they can be resolved for all members of the class in a single adjudication, there is clear justification for handling the dispute on a representative rather than on an individual basis."  Hanlon, 150 F.3d at 1022 (internal quotation marks omitted); Abdullah, 731 F.3d at 964 ("Rule 23(b)(3) requires [only] a showing that questions common to the class predominate, not that those questions will be answered, on the merits, in favor of the class.") (internal quotation marks omitted).  Additionally, the class damages must be sufficiently traceable to plaintiff's liability case. See Comcast Corp. v. Behrend, 569 U.S. 27, 35, 133 S.Ct. 1426, 1433 (2013).

Here, plaintiff has shown that there are questions common to the class that predominate this case, such as whether defendants violated the TCPA by making artificial or prerecorded calls, and whether defendants obtained proper express written consent. (See Dkt. 123, Motion at 20-21); see, e.g., Robinson v. Paramount Equity Mortg., LLC, 2017 WL 117941, *6 (E.D. Cal. 2017) ("[T]he common questions discussed in conjunction with Rule 23(a)(2) also predominate over any individual issues."); Malta, 2013 WL 444619, at *4 ("The central inquiry is whether [defendant] violated the TCPA by making calls to the class members. Accordingly, the predominance requirement is met."). The determination of those questions will establish defendants' liability on a class-wide basis. In other words, "despite the existence of minor factual differences between the potential class members," the answers to these questions would drive the resolution of the litigation, "as the common issues predominate over varying factual predicates[.]" See Clesceri v. Beach City Investigations & Protective Servs., Inc., 2011 WL 320998, *7 (C.D. Cal. 2011) (internal quotation marks omitted); Tyson Foods, Inc. v. Bouaphakeo, 577 U.S. 443, 453-54, 136 S.Ct. 1036, 1045 (2016) ("When one or more of the central issues in the action are common to the class and can be said to predominate, the action may be considered proper under Rule 23(b)(3) even though other important matters will have to be tried separately, such as damages or some affirmative defenses peculiar to some individual class members.") (internal quotation marks omitted). Finally, the relief sought applies to all class members and is traceable to plaintiff's liability case. See Comcast, 569 U.S. at 35, 133 S.Ct. at 1433. In short, the court is persuaded that "[a] common nucleus of facts and potential legal remedies dominates this litigation." Hanlon, 150 F.3d at 1022.

    2.  **Superiority**.

"The superiority inquiry under Rule 23(b)(3) requires determination of whether the objectives of the particular class action procedure will be achieved in the particular case" and "necessarily involves a comparative evaluation of alternative mechanisms of dispute resolution." Hanlon, 150 F.3d at 1023. Rule 23(b)(3) provides a list of four non-exhaustive factors relevant to superiority. See Fed. R. Civ. P. 23(b)(3)(A)-(D).

The first factor considers "the class members' interests in individually controlling the prosecution or defense of separate actions."  Fed. R. Civ. P. 23(b)(3)(A).  "This factor weighs against class certification where each class member has suffered sizeable damages or has an emotional stake in the litigation."  Barbosa, 297 F.R.D. at 444.  Here, plaintiff does not assert claims for emotional distress, nor is there any indication that the amount of damages any individual class member could recover is significant or substantially greater than the potential recovery of any other class member.  (See, generally, Dkt. 84, SAC).  The alternative method of resolution – pursuing individual claims for a relatively modest amount of damages – would likely never be brought, as "litigation costs would dwarf potential recovery."  Hanlon, 150 F.3d at 1023; see Leyva v. Medline Indus., Inc., 716 F.3d 510, 515 (9th Cir. 2013) ("In light of the small size of the putative class members' potential individual monetary recovery, class certification may be the only feasible means for them to adjudicate their claims.  Thus, class certification is also the superior method of adjudication."); Bruno v. Quten Research Inst., LLC, 280 F.R.D. 524, 537 (C.D. Cal. 2011) ("Given the small size of each class member's claim, class treatment is not merely the superior, but the only manner in which to ensure fair and efficient adjudication of the present action.").  In short, "there is no evidence that Class members have any interest in controlling prosecution of their claims separately nor would they likely have the resources to do so."  Munoz v. PHH Corp., 2013 WL 2146925, *26 (E.D. Cal. 2013).

The second factor is "the extent and nature of any litigation concerning the controversy already begun by or against class members[.]"  Fed. R. Civ. P. 23(b)(3)(B).  While any class member who wishes to control his or her own case may opt out of the class, see Fed. R. Civ. P. 23(c)(2)(B)(v), "other pending litigation is evidence that individuals have an interest in controlling their own litigation[.]"  2 Newberg on Class Actions, § 4:70 (5th ed.) (emphasis omitted).  Here, there is no indication that any class member is involved in any other litigation concerning the claims in this case.  (See, generally, Dkt. 123, Motion).  The third factor is "the desirability or undesirability of concentrating the litigation of the claims in the particular forum[,]" and the fourth factor is "the likely difficulties in managing a class action."  Fed. R. Civ. P. 23(b)(3)(C)-(D).  As noted above, "[i]n the context of settlement . . . the third and fourth factors are rendered moot and

are irrelevant." Barbosa, 297 F.R.D. at 444;  see Amchem, 521 U.S. at 620, 117 S.Ct. at 2248 ("Confronted with a request for settlement-only class certification, a district court need not inquire whether the case, if tried, would present intractable management problems, . . . for the proposal is that there be no trial.") (citation omitted); In re Hyundai, 926 F.3d at 556-57 ("The criteria for class certification are applied differently in litigation classes and settlement classes.  In deciding whether to certify a litigation class, a district court must be concerned with manageability at trial. However, such manageability is not a concern in certifying a settlement class where, by definition, there will be no trial.").

The only factors in play here weigh in favor of class treatment.  Further, the filing of separate suits by thousands of other class members "would create an unnecessary burden on judicial resources."  Barbosa, 297 F.R.D. at 445.  Under the circumstances, the court finds that the superiority requirement is satisfied.

II.    FAIRNESS,   REASONABLENESS,   AND   ADEQUACY   OF   THE   PROPOSED SETTLEMENT.

A.    The Settlement Is the Product of Arm's-Length Negotiations.

Pursuant to Rule 23(e)(2)(B), the court must evaluate whether the settlement was negotiated at arm's length.  However, "the court's intrusion upon what is otherwise a private consensual agreement negotiated between the parties to a lawsuit must be limited to the extent necessary to reach a reasoned judgment that the agreement is not the product of fraud or overreaching by, or collusion between, the negotiating parties, and that the settlement, taken as a whole, is fair, reasonable and adequate to all concerned."  Rodriguez v. W. Publ'g Corp., 563 F.3d 948, 965 (9th Cir. 2009) (internal quotation marks omitted).

Here, the parties "actively litigated [this] action" and prior to settling, had several pending motions, including motions to compel arbitration and motions to intervene. (See Dkt. 123, Motion at 10); (Dkts. 56-58, 97-99).  The parties conducted discovery and litigated a discovery motion. (See Dkt. 123, Motion at 2, 10); (Dkt. 102, Court's Order of September 14, 2020).  The parties also engaged in "extensive arm's-length negotiations, two private mediation sessions [before two experienced mediators], and confirmatory discovery."  (Dkt. 123, Motion at 2, 10).  Finally,

1  plaintiff's counsel, based on their review of the record, have concluded that the settlement is "fair,

2  reasonable and adequate and in the best interests of the Class Members." (Dkt. 123-2, Edelsberg

3  Decl. at ¶ 9).

4      Based on the evidence and record before the court, the court is persuaded that the parties

5  thoroughly investigated and considered their own and the opposing parties' positions.  The parties

6  had a sound basis for measuring the terms of the settlement against the risks of continued

7  litigation, and there is no evidence that the settlement was "the product of fraud or overreaching

8  by, or collusion between, the negotiating parties[.]" Rodriguez, 563 F.3d at 965 (internal quotation

9  marks omitted).

10      B.      The Amount Offered in Settlement Falls Within a Range of Possible Judicial

11              Approval and Is a Fair and Reasonable Outcome for Class Members.

12          1.      **Recovery for Class Members.**

13      As described above, class members will share in a gross settlement amount of $2,500,000.[5]

14  (Dkt. 123-1, Settlement Agreement at ¶¶ 30, 37).  Plaintiff's counsel estimate that the individual

15  class member award will be "approximately $46, less attorneys' fees and costs and notice and

16  administration costs."[6]  (Dkt. 123-2, Edelsberg Decl. at ¶ 6); (Dkt. 123, Motion at 13).  Plaintiff

17  contends that the settlement amount is fair and reasonable given the substantial litigation risks,

18  including risks associated with arbitrability.  (See Dkt. 123, Motion at 12).  Specifically, at the time

19  of settlement, defendants had two pending motions to compel arbitration and sought to enforce

20  a class-action waiver.  (See id.).  Moreover, plaintiff risked not prevailing on a motion for class

21  certification, particularly in light of defendants' contentions regarding consent.  (See id.).  Plaintiff

22

23      [5]  The Settlement Agreement provides that "[a]ny Settlement Fund Payments that (i) remain
uncashed after 180 days from issuance, or (ii) are returned as undeliverable, shall be cancelled

24  and remitted to Defendants.  Such funds shall be returned to and retained by Defendants, and not
otherwise distributed as part of the Settlement." (Dkt. 123-1, Settlement Agreement at ¶ 65). The

25  court will more fully assess this provision and the Bluetooth factors in connection with the motion
for final approval.

26

27      [6]  Assuming all the requested fees and costs are awarded, $625,700 in attorney's fees;
$75,000 in costs; $5,000 incentive award; and $125,000 for notice costs and administration, (see

28  Dkt. 123-1, Settlement Agreement at ¶¶ 42, 71, 73), the court estimates that each class member
will receive approximately $31.

adds that, even if he prevailed at class certification and trial, risks to the class would remain because a judgment on behalf of approximately 54,134 class members "would total nearly $27 million, which could then be subject to trebling up to $81 million[,]" which posed a substantial risk that it "would never be paid."  (Id. at 13).

Under the circumstances, the court is persuaded that the settlement relief is fair, reasonable, and adequate, particularly when taking into account the costs, risks, and delay of trial and appeal.  See Fed. R. Civ. P. 23(e)(2)(C)(i).  The costs and risks of continued litigation are significant in this case.  Weighed against those costs and risks, and coupled with the delays associated with continued litigation, the court is persuaded that the relief provided to the class is adequate and falls within the range of reasonableness.  See, e.g., In re Mego Fin. Corp. Sec. Litig., 213 F.3d 454, 459 (9th Cir. 2000) (ruling that "the Settlement amount of almost $2 million was roughly one-sixth of the potential recovery, which, given the difficulties in proving the case, [was] fair and adequate"); In re Uber FCRA Litig., 2017 WL 2806698, *7 (N.D. Cal. 2017) (granting preliminary approval of settlement that was worth "7.5% or less" of the expected value); see also Linney v. Cellular Alaska P'ship, 151 F.3d 1234, 1242 (9th Cir. 1998) ("The fact that a proposed settlement may only amount to a fraction of the potential recovery does not, in and of itself, mean that the proposed settlement is grossly inadequate and should be disapproved.") (internal quotation marks omitted).

2.   **Release of Claims**.

The court must also consider whether a class action settlement contains an overly broad release of liability.  See 4 Newberg on Class Actions § 13:15 (5th ed.) ("Beyond the value of the settlement, courts [have] rejected preliminary approval when the proposed settlement contains obvious substantive defects such as . . . overly broad releases of liability."); see, e.g., Fraser v. Asus Comput. Int'l, 2012 WL 6680142, *3 (N.D. Cal. 2012) (denying preliminary approval of proposed settlement that provided defendant a "nationwide blanket release" in exchange for payment "only on a claims-made basis[,]" without the establishment of a settlement fund or any other benefit to the class).  Here, class members who do not exclude themselves from the settlement will release:

[A]ny and all liabilities, rights, claims, actions, causes of action, demands, damages, costs, attorneys' fees, losses, and remedies of every nature and description, whether known or unknown, existing or potential, suspected or unsuspected, liquidated or unliquidated, legal, statutory, or equitable, that may exist as of the date of the Preliminary Approval Order and result from, arise out of, are based upon, or relate in any way to the factual allegations and/or legal assertions made in the operative Second Amended Complaint, . . . during the Settlement Class Period, including all claims under the [TCPA] and all claims under any other statute, regulatory or administrative promulgation, common law, or case law that arise out of or relate to any marketing, advertising, promotional activities, text messages, phone calls, voicemails, communications from automatic telephone dialing systems, artificial or prerecorded voice messages, or Messages directed to Settlement Class Members by or on behalf of any Defendant, Dealership, or other Released Party.

(Dkt. 123-1, Settlement Agreement at ¶ 66).  The Release also contains a limited waiver of rights under California Civil Code § 1542 and similar statutes; it is "expressly limited to claims that relate to the factual allegations and/or legal assertions made in the operative Second Amended Complaint." (Id. at ¶¶ 67-68).

     With the understanding that, under the Release, the settlement class members are not giving up claims unrelated to those asserted in this action, the court finds that the Release adequately balances fairness to absent class members and recovery for the class with defendants' business interest in ending this litigation with finality.  See, e.g., Fraser, 2012 WL 6680142, at *4 (recognizing defendant's "legitimate business interest in 'buying peace' and moving on to its next challenge" as well as the need to prioritize "[f]airness to absent class member[s]"); see also Hess v. Sprint Corp., 598 F.3d 581, 590 (9th Cir. 2010) ("A settlement agreement may preclude a party from bringing a related claim in the future even though the claim was not presented and might not have been presentable in the class action, but only where the released claim is based on the

1   identical factual predicate as that underlying the claims in the settled class action.") (internal
2   quotation marks omitted).

3        C.     <u>The Settlement Agreement Does Not Improperly Grant Preferential Treatment to the</u>
4        <u>Class Representative</u>.

5        Pursuant to Rule 23(e)(2)(D), the court must evaluate whether the settlement "treats class
6   members equitably relative to each other."  One of the areas the court must scrutinize carefully
7   is "[i]ncentive awards [which] are payments to class representatives for their service to the class
8   in bringing the lawsuit." <u>Radcliffe v. Experian Info. Sols. Inc.</u>, 715 F.3d 1157, 1163 (9th Cir. 2013).
9   The Ninth Circuit has instructed "district courts to scrutinize carefully the awards so that they do
10  not undermine the adequacy of the class representatives." <u>Id.</u>  The court must examine whether
11  there is a "significant disparity between the incentive awards and the payments to the rest of the
12  class members" such that it creates a conflict of interest.  <u>See id.</u> at 1165.  "In deciding whether
13  [an incentive] award is warranted, relevant factors include the actions the plaintiff has taken to
14  protect the interests of the class, the degree to which the class has benefitted from those actions,
15  and the amount of time and effort the plaintiff expended in pursuing the litigation." <u>Cook v. Niedert</u>,
16  142 F.3d 1004, 1016 (7th Cir. 1998).

17       The Settlement Agreement provides that plaintiff may apply to the court for a service award
18  of $5,000.  (<u>See</u> Dkt. 123-1, Settlement Agreement at ¶ 73).  Such an award is presumptively
19  reasonable.  <u>See</u>, <u>e.g.</u>, <u>Dyer v. Wells Fargo Bank, N.A.</u>, 303 F.R.D. 326, 335 (N.D. Cal. 2014)
20  (finding an incentive award of $5,000 presumptively reasonable).  Under the circumstances here,
21  the court tentatively finds that an incentive payment of no more than $5,000 is appropriate.  <u>See</u>
22  <u>id.</u>

23       D.     <u>Class Notice and Notification Procedures</u>.

24       Upon settlement of a certified class, "[t]he court must direct notice in a reasonable manner
25  to all class members who would be bound by the proposal[.]"  Fed. R. Civ. P. 23(e)(1)(B).  Rule
26  23(c)(2) requires the "best notice that is practicable under the circumstances, including individual
27  notice" of particular information. <u>See</u> Fed. R. Civ. P. 23(c)(2)(B) (enumerating notice requirements
28  for classes certified under Rule 23(b)(3)).

A class action settlement notice "is satisfactory if it generally describes the terms of the settlement in sufficient detail to alert those with adverse viewpoints to investigate and to come forward and be heard."  Churchill Vill., LLC v. Gen. Elec., 361 F.3d 566, 575 (9th Cir. 2004) (internal quotation marks omitted).  "The standard for the adequacy of a settlement notice in a class action under either the Due Process Clause or the Federal Rules is measured by reasonableness."  Wal-Mart Stores, Inc. v. Visa U.S.A., Inc., 396 F.3d 96, 113 (2d Cir. 2005); Low v. Trump Univ., LLC, 881 F.3d 1111, 1117 (9th Cir. 2018) ("The yardstick against which we measure the sufficiency of notices in class action proceedings is one of reasonableness.") (internal quotation marks omitted).  Settlement notices "are sufficient if they inform the class members of the nature of the pending action, the general terms of the settlement, that complete and detailed information is available from the court files, [and] that any class member may appear and be heard at the hearing[.]"  Gooch v. Life Invs. Ins. Co. of Am., 672 F.3d 402, 423 (6th Cir. 2012) (internal quotation marks omitted); see, e.g., Wershba v. Apple Comput., Inc., 91 Cal.App.4th 224, 252 (2001), disapproved of on other grounds by Hernandez v. Restoration Hardware, Inc., 4 Cal.5th 260, 269 (2018) ("As a general rule, class notice must strike a balance between thoroughness and the need to avoid unduly complicating the content of the notice and confusing class members.").  The notice should provide sufficient information to allow class members to decide whether they should accept the benefits of the settlement, opt out and pursue their own remedies, or object to the terms of the settlement but remain in the class.  See In re Integra Realty Res., Inc., 262 F.3d 1089, 1111 (10th Cir. 2001) ("The standard for the settlement notice under Rule 23(e) is that it must 'fairly apprise' the class members of the terms of the proposed settlement and of their options.") (internal quotation marks omitted).

Here, the parties request that Epiq be appointed as settlement administrator.  (See Dkt. 123-1, Settlement Agreement at ¶ 2).  Class members will receive individual notice by first class mail, (see id. at ¶¶ 17, 45), which will consist of the Notice of Class Action Settlement.  (See id., Exh. 1, "Notice").  Additionally, Epiq will establish a settlement website that will enable class members to access the Long-Form Notice (id., Exh. 2), relevant case documents, and contact information for class counsel.  (See id. at ¶ 47).  The Long-Form Notice describes the nature of

the action and the claims alleged.  (See id., Exh. 2, Long-Form Notice at 3); see also Fed. R. Civ. P. 23(c)(2)(B)(i) & (iii).  It provides the definition of the class, (see Dkt. 123-1, Exh. 2, Long-Form Notice at 1, 3-4); see also Fed. R. Civ. P. 23(c)(2)(B)(ii), and explains the terms of the settlement, including the settlement amount, the distribution of that amount, and the release.  (See Dkt. 123-1, Exh. 2, Long-Form Notice at 1, 4-6).  The Notice includes an explanation that lays out the class members' options under the settlement: they may remain in the class, object to the settlement but still remain in the class, or exclude themselves from the settlement and pursue their claims separately against defendant.  (See id. at 1, 4-5, 7-8); see also Fed. R. Civ. P. 23(c)(2)(B)(v) & (vi).  Finally, the Notice explains the procedures for objecting to the settlement, (see Dkt. 123-1, Exh. 2, Long-Form Notice at 7-8), and provides information about the Final Fairness Hearing. (See id. at 8).

Based on the foregoing, the court finds there is no alternative method of distribution that would be more practicable here, or any more reasonably likely manner to notify the class members.  Under the circumstances, the court finds that the procedure for providing notice and the content of the class notice constitute the best practicable notice to class members and comply with the requirements of due process.

E.    Summary.

The court's preliminary evaluation of the Settlement Agreement does not disclose grounds to doubt its fairness "such as unduly preferential treatment of class representatives or segments of the class, inadequate compensation or harms to the classes, . . . or excessive compensation for attorneys." Manual for Complex Litigation § 21.632 at 321 (4th ed. 2004); see also Spann, 314 F.R.D. at 323.

## CONCLUSION

Based on the foregoing, IT IS ORDERED THAT:

1.   Plaintiff's Amended Motion for Preliminary Approval **(Document No. 123)** is **granted** upon the terms and conditions set forth in this Order.

2.   The court preliminarily certifies the class, as defined in ¶ 34 of the Class-Wide Settlement Agreement and Release ("Settlement Agreement") (Dkt. 123-1), for the purposes of settlement.

3.   The court preliminarily appoints plaintiff Jamal Johnson as class representative for settlement purposes.

4.  The court preliminarily appoints Edelsberg Law, P.A.; Shamis & Gentile, P.A..; Hiraldo, P.A.; Eisenband Law, PA; and IJH Law as class counsel for settlement purposes.

5.  The court preliminarily finds that the terms of the settlement are fair, reasonable, and adequate, and comply with Rule 23(e) of the Federal Rules of Civil Procedure.

6.  The court approves the form, substance, and requirements of the class Notice, (Dkt. 123-1, Exhs. 1 (Notice) & 2 (Long-Form Notice)).   The proposed manner of notice of the settlement set forth in the Settlement Agreement constitutes the best notice practicable under the circumstances and complies with the requirements of due process.

7.  Epiq shall complete dissemination of class notice, in accordance with the Settlement Agreement, no later than **September 1, 2021**.

8.  Plaintiff shall file a motion for an award of class representative incentive payment and attorney's fees and costs no later than **October 1, 2021,** and notice it for hearing for the date of the final approval hearing set forth below.[7]

9.  Any class member who wishes to:  (a) object to the settlement, including the requested attorney's fees, costs and incentive award; or (b) exclude him or herself from the settlement must file his or her objection to the settlement, or request exclusion no later than **November 1, 2021**, in accordance with the Notice and this Order.

10.   Plaintiff shall, no later than **November 15, 2021,** file and serve a motion for final approval of the settlement and a response to any objections to the settlement.  The motion shall be noticed for hearing for the date of the final approval hearing set forth below.[8]

---

[7]  If the request for attorney's fees is made under the percentage-of-the-fund method, counsel shall also make a showing under the lodestar method.

[8]  The motion shall address each Rule 23(e) requirement as well as the <u>Bluetooth</u> factors.

11.   Defendants may file and serve a memorandum in support of final approval of the Settlement Agreement and/or in response to objections no later than **November 22, 2021**.

12.   Any class member who wishes to appear at the final approval (fairness) hearing, either on his or her own behalf or through an attorney, to object to the settlement, including the requested attorney's fees, costs or incentive award, shall, no later than **November 22, 2021**, file with the court a Notice of Intent to Appear at Fairness Hearing.

13.   A final approval (fairness) hearing is hereby set for **December 16, 2021,** at **10:00 a.m.** in Courtroom 6D of the First Street Courthouse, to consider the fairness, reasonableness, and adequacy of the Settlement as well as the award of attorney's fees and costs to class counsel, and incentive award to the class representative.

14.   All proceedings in the Action, other than proceedings necessary to carry out or enforce the Settlement Agreement or this Order, are stayed pending the final fairness hearing and the court's decision whether to grant final approval of the settlement.

Dated this 25th day of June, 2021.


                                                    /s/
                                        Fernando M. Olguin
                                        United States District Judge