**HIRALDO P.A.**
Manuel S. Hiraldo, Esq.
(*pro hac vice*)
401 E Las Olas Blvd., Ste. 1400
Fort Lauderdale, FL 33301
mhiraldo@hiraldolaw.com
954-400-4713
*Attorneys for Plaintiff*

## IN THE UNITED STATES DISTRICT COURT
## FOR THE CENTRAL DISTRICT OF CALIFORNIA

JAMAL JOHNSON, individually and on behalf of all others similarly situated,

     Plaintiff,

v.

**MOSS BROS. AUTO GROUP. INC. and SUSAN ANDERSON,**
     Defendants.

Case No. 5:19-CV-02456

**PLAINTIFF'S NOTICE OF MOTION AND UNOPPOSED MOTION FOR AWARD OF ATTORNEYS' FEES AND COSTS AND CLASS REPRESENTATIVE SERVICE AWARD AT FINAL APPROVAL OF CLASS ACTION SETTLEMENT; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF**

**Date: December 16, 2021**
**Time: 10:00 AM**
**Ctrm: 6D**
**Judge: Hon. Fernando M. Olguin**

## NOTICE OF MOTION AND MOTION

**TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:**

    **PLEASE TAKE NOTICE,** on December 16, 2021, at 10:00 a.m., in Courtroom 6D of the above caption Court, located at 350 W. 1st Street, 6th Floor, Los Angeles, California 90012, Plaintiff will and hereby does move for an order to grant attorneys' fees, costs and a class representative service award. This motion is based on this Notice of Motion and Motion and the Memorandum of Points and Authorities, and upon such other written or oral argument as may be presented to the Court at the hearing.

This Motion is made following the conference of counsel pursuant to L.R. 7-3, and subject to a settlement agreement.

DATED: October 1, 2021

**HIRALDO P.A.**

_/s/ Manuel S. Hiraldo_
Manuel S. Hiraldo, Esq.
(_pro hac vice_)
401 E Las Olas Blvd., Ste. 1400
Fort Lauderdale, FL 33301
mhiraldo@hiraldolaw.com
954-400-4713
_Attorneys for Plaintiff_

# TABLE OF CONTENTS

I.     INTRODUCTION ...................................................................... 1

II.    BACKGROUND ....................................................................... 2

     a.    Procedural History and Settlement Approval Proceedings ................... 2

     b.    Extensive Discovery Conducted ................................................. 3

     c.    Major Law and Motion Practice ................................................. 3

     d.    Mediation and Settlement ........................................................ 4

III.   SUMMARY OF THE SETTLEMENT TERMS .................................... 5

IV.   THE REQUESTED FEE AWARD IS WARRANTED UNDER THE COMMON FUND DOCTRINE ................................................................................. 6

     a.    The Legal Standard for Attorneys' Fees Awards ............................. 6

     b.    The Equitable Common Fund Doctrine Applies .............................. 6

     c.    Fees Should be Calculated as a Percentage of the Common Fund ......... 7

     d.    The Requested Fees Are Consistent with Ninth Circuit Authority ........ 8

     e.    A Common Fund Fee Award of 25% of the Gross Settlement Amount is Within the Range of Fees Awarded in This Circuit ................................... 9

     f.    The Common Fund Fee Award Satisfies Heightened Scrutiny Under the *Bluetooth* Analysis .......................................................................... 9

V.     RELEVANT FACTORS SUPPORT THE REQUESTED FEE AWARD ................... 10

     a.    The Results Achieved Are Significant and Favorable ....................... 11

     b.    The Litigation Presented Significant Risks ................................... 11

     c.    This Action Required a High Degree of Skill and Work Quality ......... 12

     d.    Contingent Nature of the Requested Fees .................................... 13

     e.    Awards in Similar Cases Support Approval Here ........................... 13

     f.    A Lodestar Analysis Supports the Requested Fees .......................... 14

VI.   REIMBURSEMENT OF REASONABLE CLASS COUNSEL COSTS ................ 16

VII.   CLASS REPRESENTATIVE SERVICE AWARD REQUESTED ..................... 17

iii

**VIII. CONCLUSION** ........................................................................................... 198

<u>**TABLE OF AUTHORITIES**</u>

<u>**Cases**</u>

*Bellinghausen v. Tractor Supply Co.* 306 F.R.D. 245, 264 (N.D. Cal. 2014) ............................ 15

*Bihun v. AT&T Information System*, 13 Cal. App. 4th 976, 997 (1993) ..................................... 14

*Blum v. Stenson*, 465 U.S. 886, 900 n.16 (1984) ............................................................................. 7

*Boeing Co. v. Van Gemert*, 444 U.S. 472, 478 (1980) ..................................................................... 7

*Bonoan v. Adobe, Inc.*, Case No. 3:19-cv-01068-RS, 2021 U.S. Dist. LEXIS 45821, at *10-11

(N.D. Cal. Mar. 10, 2021) ............................................................................................... 18

*Briseño v. Henderson*, 998 F.3d 1014, 1023 (9th Cir. 2021) ...................................................... 10

*Cabiness v. Educ. Fin. Sols., LLC*, No. 16-cv-01109-JST, 2019 U.S. Dist. LEXIS 50817, at *13,

21 (N.D. Cal. Mar. 26, 2019) ........................................................................................... 18

*Caldera v. Am. Med. Collection Agency*, 320 F.R.D. 513 (C.D. Cal. June 27, 2017) ................ 12

*Chavez v. Netflix, Inc.*, 162 Cal. App. 4th 43, 66, n.11 (2008) ...................................................... 8

*Chem. Bank v. Jaffe & Schlesinger, P.A.*, 19 F.3d 1306, 1308 (9th Cir. 1994) ............................ 6

*Connelly v. Hilton Grand Vacations Co., LLC*, 294 F.R.D. 574, 579 (S.D. Cal. Oct. 29, 2013) 12

*Contreras v. Worldwide Freight Services, Inc.*, 2020 WL 2083017 (E.D. Cal. 2020) ................. 9

*Cook v. Niedert*, 142 F.3d 1004, 1016 (7th Cir. 1998) ................................................................. 17

*Cundiff v. Verizon California*, 167 Cal. App. 4th 718 (2008) ...................................................... 14

*Di Giacomo v. Plains All Am. Pipeline, Nos.* 99–4137 & 99–4212, 2001 WL 34633373, at *10–

11 (S.D. Fla. Dec. 19, 2001) ............................................................................................ 16

*Elliott v. Rolling Frito-Lay Sales, LP*, No. 11 Civ. 01730, 2014 WL 2761316, at *9 (C.D. Cal.

June 12, 2014) .................................................................................................................... 8

*Felix v. N. Am. Asset Servs., LLC*, No. CV 12-3718-JFW (ANx), 2012 U.S. Dist. LEXIS

191548, at *7 (C.D. Cal. Sep. 5, 2012) ........................................................................... 12

iv

*Fields v. Mobile Messengers Am., Inc.*, No. 12-cv-05160-WHA, 2013 U.S. Dist. LEXIS 163950 (N.D. Cal. Nov. 18, 2013) ........................................................................................... 12

*Gergetz v. Telenav, Inc.*, No. 16-cv-04261-BLF, 2018 U.S. Dist. LEXIS 167206, at *21 (N.D. Cal. Sep. 27, 2018) ...................................................................................................... 14, 18

*Greer v. Dick's Sporting Goods, Inc.*, 2020 WL 5535399 (E.D. Cal. 2020) ............................. 10

*Hanlon v. Chrysler Corp.,* 150 F.3d 1011, 1029 (1998) ............................................................. 9

*Harris v. Marhoefer*, 24 F.3d 16, 19 (9th Cir. 1994) ................................................................. 17

*Hensley v. Eckerhart*, 461 U.S. 424, 436 (1983) ....................................................................... 11

*Hopkins v. Stryker Sales Corp.*, No. 11-CV-02786- LHK, 2013 WL 496358, at *5 (N.D. Cal. Feb. 6, 2013) ......................................................................................................................... 16

*Horton v. Cavalry Portfolio Servs., LLC*, Case No. 13cv307-JAH-WVG, 2020 U.S. Dist. LEXIS 189489, at *9 (S.D. Cal. Oct. 13, 2020) ................................................................. 18

*Howell v. Advantage RN, LLC*, 2020 WL 5847565 (S.D. Cal. 2020) ........................................ 10

*In re Activision Sec. Litig.*, 723 F. Supp. 1373, 1375-76 (N.D. Cal. 1989) ............................... 8

*In re Aremissoft Corp. Sec. Litig.*, 210 F.R.D. 109, 134–35 (D.N.J. 2002) ............................. 16

*In re Omnivision Techs., Inc.*, 559 F. Supp. 2d 1036, 1046 (N.D. Cal. 2008) ..................... 11, 13

*In re Washington Public Power Supply Sys. Sec. Litig.*, 19 F.3d 1291, 1300 (9th Cir. 1994) ..... 15

*Izor v. Abacus Data Sys.*, Case No. 19-cv-01057-HSG, 2020 U.S. Dist. LEXIS 239999, at *27 (N.D. Cal. Dec. 21, 2020) ................................................................................................... 14

*Knight v. Red Door Salons, Inc.*, 2009 WL 248367 (N.D. Cal. 2009) .......................................... 9

*Larson v. Harman-Management Corp.,* Case No. 1:16-cv-00219-DAD-SKO, 2020 U.S. Dist. LEXIS 107938, at *24-25 (E.D. Cal. June 18, 2020) ................................................. 14, 18

*Lealao v. Beneficial California, Inc.*, 82 Cal. App. 4th 19, 46 (2000) ........................................ 14

*Linney v. Cellular Alaska P'ship*, 151 F.3d 1234, 1242 (9th Cir. 1998) ................................... 12

*Makaron v. Enagic USA, Inc.,* 324 F.R.D. 228 (C.D. Cal. Mar. 13, 2018) ................................ 12

*Maley v. Del Global Techs. Corp.*, 186 F. Supp. 2d 358, 369 (S.D.N.Y. 2002) ........................ 16

*Paul, Johnson, Alston & Hunt v. Graulty*, 886 F.2d 268, 272 (9th Cir. 1989) ...................... 7, 8

*Powers v. Eichen*, 229 F.3d 1249, 1256 (9th Cir. 2000) ............................................................. 9

v

*Rodriguez v. W. Publ'g Corp.*, 563 F.3d948, 958 (9th Cir. 2009) ................................ 17

*Serrano v. Priest*, 20 Cal. 3d 25, 48 (1977)................................................................ 14

*Six Mexican Workers v. Arizona Citrus Growers*, 904 F.2d 1301, 1311 (9th Cir. 1990) ......... 7, 8

*Staton v. Boeing Co.*, 327 F.3d 938, 963 (9th Cir. 2003) (quoting Fed. R. Civ. P. 23(e)) (internal

    quotation marks omitted). ................................................................ 6, 9, 16, 17

*Stern v. DoCircle, Inc.*, No. SACV 12-2005 AG (JPRx), 2014 U.S. Dist. LEXIS 17949 (C.D.

    Cal. Jan. 29, 2014).................................................................... 12

*Swedish Hosp. Corp. v. Shalala*, 1 F.3d 1261, 1269 (D.C. Cir. 1993).......................... 7

*Vendervort v. Balboa Capital Corp.*, 8 F. Supp. 3d 1200, 1210 (C.D. Cal. 2014) .................... 14

*Vincent v. Hughes Air West., Inc.*, 557 F.2d 759, 769 (9th Cir. 1977)............................ 6

*Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1050 (9th Cir. 2002) ...................... passim

*West v. Cal. Serv. Bureau, Inc.*, Case No. 4:16-cv-03124-YGR, Dkt. No. 128 (N.D. Cal. Jan. 23,

    2019)................................................................................ 14

## **Statutes**

47 U.S.C. §§ 227 ............................................................................. 2

## **Treatises**

NEWBERG, §14.03 at 14 ................................................................ 15

## PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES

### I.   INTRODUCTION

Plaintiff Jamal Johnson ("Plaintiff") and Plaintiff's Counsel ("Class Counsel") have dedicated significant time, energy and resources litigating this case against Defendants Moss Bros. Auto Group, Inc. ("Defendant Moss Bros.") and Susan Anderson ("Defendant Anderson") (collectively "Defendants"). Through their efforts, they successfully negotiated a settlement set forth in the Settlement Agreement (the "Agreement")[1], which provides for a non-reversionary Gross Settlement Fund of $2,500,000 for 53,423 class members in compromise of disputed violations of the TCPA. Plaintiff negotiated an excellent result for the Settlement Class.

Plaintiff's complaint alleges that Defendant coordinated prerecorded telephone call campaigns on behalf of the various car dealerships they manage in which prerecorded messages were sent to Plaintiff and approximately 53,423 unique cell phone numbers. Plaintiff alleged that these campaigns violated the TCPA because the prerecorded messages were sent without Defendants first obtaining express written consent. Defendants deny any wrongdoing.

After extensive discovery, multiple motions to compel arbitration, motions by a non-party intervenor, discovery motions, two amended complaints and their answers, the parties agreed to try and settle the case. The parties exchanged further data and were able to settle this matter with the aid of mediators Ted Bandstra and Jill Sperber. The parties reached a proposed class action settlement valued at $2,500,000, and this Court preliminarily approved that settlement on June 25, 2021. The Parties believe the settlement to be fair and reasonable, to adequately reflect the potential liability, and the result of thorough factual and legal analyses and arm's-length negotiations.

---

[1] The Agreement is attached as **Exhibit A**.

Through this Motion, Plaintiff requests an award of attorneys' fees and costs to Class Counsel and a service award to Plaintiff. Plaintiff's request for Class Counsel fees of 25% of the Gross Settlement Fund is fair. On a percentage or a lodestar basis, the fee award sought by this Motion is within the range of reasonableness. The costs incurred were only those costs necessary to successfully resolve this matter. Class counsel's and Plaintiff's requests are reasonable, justified, and in line with awards approved in analogous TCPA class actions.

## II.  BACKGROUND

### a.  Procedural History and Settlement Approval Proceedings

On December 20, 2021 Plaintiff filed a putative class action complaint against Defendant in the United States District Court for the Central District of California, entitled *Jamal Johnson, individually and on behalf of all others similarly situated, v. Moss Bros. Auto Group, Inc., a California Corporation*. (ECF No. 1). The Complaint alleged violations of the Telephone Consumer Protection Act, 47 U.S.C. §§ 227, et seq. ("TCPA"). The TCPA, and its implementing regulations were enacted by Congress and the Federal Communications Commission to "offer consumers greater protection from intrusive telemarketing calls…." Defendants coordinated prerecorded telephone call campaigns on behalf of the various car dealerships they manage in which prerecorded messages were sent to Plaintiff and approximately 53,423 unique cell phone numbers. Plaintiff alleged that these campaigns violated the TCPA because the prerecorded messages were sent without Defendants first obtaining express written consent.

On March 2, 2020, Plaintiff filed his First Amended Complaint (ECF No. 17). On March 18, 2020, Defendant Moss Bros. filed its Answer. (ECF No. 26).

On August 24, 2020, Plaintiff filed the operative Second Amended Complaint, adding Defendant Susan Anderson. (ECF No. 84). On September 9, 2020, Defendants filed their Answer. (ECF No. 93).

Defendants deny any wrongdoing and have articulated various challenges to class certification and the merits of Plaintiff's claims. Defendants also have sought to enforce a class-action waiver and arbitration agreement. Plaintiff has opposed those efforts, and the arbitration matters remain submitted to the Court.

On February 22, 2021, Plaintiff filed his Unopposed Motion for Preliminary Approval of the Class Settlement. (ECF No. 123.).

On June 25, 2021, the Court issued an Order Re Motion for Preliminary Approval of Class Action Settlement granting approval of the settlement. (ECF No. 125).

On August 18, 2021, the Settlement Administrator mailed the Class Notice, via U.S. First Class Mail to 53,423 Class Members.  To date there have been 2 opt-outs and no objections.  The deadline to object or opt out of the Settlement has not yet passed.

### b. Extensive Discovery Conducted

Plaintiff and Defendant both served and responded to several sets of written discovery responses and engaged in multiple rounds of the meet and confer process. The parties engaged in extensive exchanges of documents and information, including data regarding putative class members, as well as formal discovery in the lawsuit.

### c. Major Law and Motion Practice

The parties engaged in extensive law and motion practice, which allowed the parties to gain a strong understanding of the allegations and defenses in this case.

On March 16, 2020, Defendant filed a Motion to Stay the case pending arbitration. (ECF No. 19). On March 26, 2020, Plaintiff filed its opposition the Motion to Stay. (ECF No. 28). Defendant filed its reply on April 2, 2020. (ECF No. 34). On May 18, 2020, the Court denied the Motion to Stay. (ECF No. 52).

On July 2, 2020, non-party Moss Bros. CJD, Inc. filed a Motion to Intervene, a Motion to Compel Arbitration, and a Motion for Joinder in the Amended Complaint. (ECF Nos. 56, 57, 58). Plaintiff filed his opposition to all three motions on July 9, 2020. (ECF Nos. 59, 60, 61). Moss Bros. CJD, Inc. and Defendant Moss Bros. filed replies to all three

motions on July 16, 2020. (ECF Nos. 64, 65, 66). On January 19, 2020, the Court vacated the motions given the filing of a proposed settlement. (ECF No. 118).

Based on information gathered in connection with document production, initial disclosures, and meet and confers, Plaintiff moved for leave to file a Second Amended Complaint adding Defendant Susan Anderson on July 27, 2020. (ECF No. 67). Defendant filed its opposition on August 6, 2020. (ECF No. 73). Plaintiff filed his reply in support on August 10, 2020. (ECF No. 75). On August 24, 2020, the Court granted Plaintiff leave to file a Second Amended Complaint. (ECF No. 83).

On September 10, 2020, Defendant Susan Anderson and Defendant Moss Bros. each filed a Motion to Compel Arbitration, as well as a joint Motion to Stay pending a decision on their respective motions to compel arbitration. (ECF Nos. 97, 98, 99). Plaintiff filed his oppositions on September 17, 2020. (ECF Nos. 103, 104). Defendants filed their replies in support on September 24, 2020. (ECF Nos. 106, 107). On January 19, 2020, the Court vacated the motions given the filing of a proposed settlement. (ECF No. 118).

Plaintiff filed three notices of supplemental authority at various stages of this action. (ECF Nos. 42, 71, 76).

### d. **Mediation and Settlement**

During the course of the litigation, Defendant produced data and documents which were reviewed in relation to the prosecution and possible resolution of the case. The parties prepared detailed briefs in preparation for mediation. *See* Declaration of Scott Edelsberg ("Edelsberg Dec.") attached as **Exhibit B** at ⁋ 4.

The parties engaged in extensive arm's-length negotiations, including two private mediation sessions facilitated by experienced mediators Ted Bandstra and Jill Sperber, respectively. *Id*. Following confirmatory discovery, the parties ultimately agreed to the Agreement now before this Court. *Id*. At all times, the parties' negotiations were adversarial, non-collusive and at arm's length. *Id*.

Plaintiff and Class Counsel concluded, after taking into account the sharply disputed factual and legal issues involved in this Litigation, the risks attending further prosecution, the discovery and investigation conducted to date, and the substantial benefits received and to be received pursuant to the compromise and settlement of the Litigation, that settlement on the terms discussed herein is in the best interests of Plaintiff and the Class. Edelsberg Dec. at ⁋5. Plaintiff and Class Counsel are mindful of the potential risks they face, many of which were discussed during the mediation. As such, Class Counsel believes that the Settlement reached is fair to the Class and confers substantial benefits on the Class, providing all Class Members with recoveries in the near term. Based on their evaluation, Class Counsel determined that the settlement set forth in the Agreement is in the best interest of the Class. Edelsberg Dec. at ⁋6. The Agreement, if approved by the Court, will resolve the claims of the settlement Class. The Class Representative also agreed to a general release of all claims.

## III.   SUMMARY OF THE SETTLEMENT TERMS

The details of the Settlement terms are addressed and summarized by Class Counsel in Plaintiff's Unopposed Motion for Final Approval of Class Action Settlement filed concurrently.

The Parties settled the underlying claims for a Gross Settlement Amount of $2,500,000 for approximately 53,423 Class Members. The settlement provides for up to $625,700 (25% of the gross settlement amount) in attorney's fees, costs not to exceed $75,000, and an incentive payment of $5,000 for Johnson. Also, the proposed settlement administrator shall be paid no more than $125,000 from the gross settlement amount.

Plaintiff submits this number is fair and reasonable in light of the risk of no recovery following protracted litigation and for all the reasons addressed in the Motion and supporting documents. The Court has preliminarily approved the Settlement after reviewing Plaintiff's methodology and potential estimated liability calculations. (ECF No. 125).

## IV.   THE REQUESTED FEE AWARD IS WARRANTED UNDER THE COMMON FUND DOCTRINE

### a.   The Legal Standard for Attorneys' Fees Awards

Under the Federal Rules of Civil Procedure, "[i]n a certified class action, the court may award reasonable attorney [] fees and nontaxable costs that are authorized by law or by the parties' agreement." Fed. R. Civ. P. 23(h). "Where a settlement produces a common fund for the benefit of the entire class, courts have discretion to employ either the lodestar method or the percentage-of-recovery method." *In re Bluetooth Headset Prod. Liab. Litig.*, 654 F.3d 935, 942 (9th Cir. 2011). But this "discretion must be exercised so as to achieve a reasonable result." *Id*. Courts generally first calculate a fee award using the percentage method, and then use the lodestar method as a "check" on that amount. *See, e.g., Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1050 (9th Cir. 2002).

"[A] private plaintiff, or his attorney, whose efforts create, discover, increase or preserve a fund to which others also have a claim is entitled to recover from the fund the costs of his litigation, including attorneys' fees." *Vincent v. Hughes Air West., Inc.*, 557 F.2d 759, 769 (9th Cir. 1977); *see also, Chem. Bank v. Jaffe & Schlesinger, P.A.*, 19 F.3d 1306, 1308 (9th Cir. 1994). "Attorneys' fees provisions included in proposed class action agreements are, like every other aspect of such agreements, subject to the determination whether the settlement is fundamentally fair, adequate and reasonable." *Staton v. Boeing Co.*, 327 F.3d 938, 963 (9th Cir. 2003) (quoting Fed. R. Civ. P. 23(e)) (internal quotation marks omitted).

### b.   The Equitable Common Fund Doctrine Applies

Federal and state courts recognize that when counsel's efforts result in the creation of a common fund that benefits plaintiffs and unnamed class members, counsel have an equitable right to be compensated from that fund as a whole for their successful efforts in creating it. *See, e.g., Boeing Co. v. Van Gemert*, 444 U.S. 472, 478 (1980) (observing that the United States Supreme Court "has recognized consistently that a litigant or a lawyer

who recovers a common fund . . . is entitled to a reasonable attorney's fee from the fund as a whole"). The common fund doctrine rests on the understanding that attorneys should normally be paid by their clients. *Id*. at 478. Where the attorneys' unnamed class member clients have no express retainer agreement, those who benefit from the fund without contributing to it would be unjustly enriched if attorneys' fees were not paid out of the common fund. *Id*. Here, Class Counsel have helped generate a $2,500,000.00 settlement for the participating Class Members, none of whom have paid any fees or costs. Equity requires them to pay a reasonable fee, based on what the market would traditionally require, no less than if they had hired private counsel to litigate their cases individually. *Boeing*, 444 U.S. at 479-81.

### c.  Fees Should be Calculated as a Percentage of the Common Fund

The fairest and most efficient way to calculate a reasonable fee when contingency litigation produces a common fund is to award counsel a percentage of the total fund. *See, e.g., Blum v. Stenson*, 465 U.S. 886, 900 n.16 (1984); *Six Mexican Workers v. Arizona Citrus Growers*, 904 F.2d 1301, 1311 (9th Cir. 1990) (common fund fee generally "calculated as a percentage of the recovery"); *Paul, Johnson, Alston & Hunt v. Graulty*, 886 F.2d 268, 272 (9th Cir. 1989).

The percentage of the fund method can be appropriate for several reasons. The percentage method comports with the legal marketplace, where plaintiffs' counsel's success is frequently measured in terms of the results they have achieved. *See Swedish Hosp. Corp. v. Shalala*, 1 F.3d 1261, 1269 (D.C. Cir. 1993) (in common fund cases, "the monetary amount of the victory is often the true measure of [counsel's] success"). By assessing the amount of the fee in terms of the amount of the benefit conferred on the class, the percentage method "more accurately reflects the economics of litigation practice" which, "given the uncertainties and hazards of litigation, must necessarily be result-oriented." *Id*. (internal quotations and citations omitted); see also *Elliott v. Rolling Frito-Lay Sales, LP*, No. 11 Civ. 01730, 2014 WL 2761316, at *9 (C.D. Cal. June 12, 2014) (highlighting significant benefits

of percentage approach and its consistency with contingency fee calculations in the private market). Moreover, the percentage approach aligns the incentives of the class members and their counsel, so that time is spent efficiently and the class's recovery – rather than lodestar hours – is maximized. *In re Activision Sec. Litig.*, 723 F. Supp. 1373, 1375-76 (N.D. Cal. 1989).

### d.  The Requested Fees Are Consistent with Ninth Circuit Authority

The Ninth Circuit has directed that, to determine what constitutes a fair and reasonable percentage of the settlement for purposes of calculating common fund attorneys' fees, the courts should use a "benchmark" percentage of 25% of the total fund. *Paul*, 886 F.2d at 272; *Vizcaino*, 290 F.3d at 1047; *Six Mexican Workers*, 904 F.2d at 1311. The percentage can be adjusted upwards where the risks overcome, the benefits obtained and the work necessary to achieve those results supports such an adjustment of the benchmark. In fact, while the Ninth Circuit identified twenty-five percent as a fee percentage that is presumptively reasonable, the custom and practice in class actions is to award approximately one-third of a fund as a fee award. *See Chavez v. Netflix, Inc.*, 162 Cal. App. 4th 43, 66, n.11 (2008) ("Empirical studies show that, regardless whether the percentage method or the lodestar method is used, fee awards in class actions average around one-third of the recovery."). Class Members have had the opportunity to object to the proposed award of fees and costs, and as of this date none have done so.

The compensation sought for Class Counsel is also fair and reasonable. Here, the Gross Settlement Fund obtained through the efforts of Class Counsel is $2,500,000. Class Counsel has agreed to request no more than $625,700 in fees from the gross settlement fund, or 25% of the gross settlement fund. As such, Plaintiff's requests are consistent with the approach of this Circuit.

### e.   A Common Fund Fee Award of 25% of the Gross Settlement Amount is Within the Range of Fees Awarded in This Circuit

The typical range of acceptable attorneys' fees in the Ninth Circuit is 20% to 33.33% of the total settlement value, with 25% considered the benchmark. *Powers v. Eichen*, 229 F.3d 1249, 1256 (9th Cir. 2000); *Hanlon v. Chrysler Corp.,* 150 F.3d 1011, 1029 (1998); *Staton*, 327 F.3d at 952. However, the exact percentage varies depending on the facts of the case, and in "most common fund cases, the award exceeds that benchmark." *Knight v. Red Door Salons, Inc.*, 2009 WL 248367 (N.D. Cal. 2009).

A survey of orders from the past year shows that courts within this Circuit routinely award attorneys' fees at or above the percentage requested by Class Counsel in this matter. *See Contreras v. Worldwide Freight Services, Inc.*, 2020 WL 2083017 (E.D. Cal. 2020) (approving fee award request of 33.33% of total settlement amount, noting that the average per class member recovery of $221.01 weighed in favor of an increase over the Ninth Circuit benchmark and that awards made in similar cases supported the requested award); *Howell v. Advantage RN, LLC*, 2020 WL 5847565 (S.D. Cal. 2020) (approving fee award of 33.33% and lodestar multiplier of 1.0904); *Greer v. Dick's Sporting Goods, Inc.*, 2020 WL 5535399 (E.D. Cal. 2020) (approving fee award of 33% and lodestar multiplier of 1.24).

In this case, Class Counsel seeks 25% of the common fund generated for the benefit of the Class. Given the circumstances surrounding Plaintiff's claims and the resilience of Defendants' defenses, Class Counsel understood it faced significant hurdles in certifying and prevailing at trial on behalf of the Class. Additionally, the total amount recovered in settlement provided a significant recovery for the Class. As such, this Court should find 25% of the Settlement fits within the range of fees awarded within this Circuit.

### f.   The Common Fund Fee Award Satisfies Heightened Scrutiny Under *Bluetooth*

District courts in the Ninth Circuit assessing fee awards in class action litigation are required to "scrutinize agreements for 'subtle signs that class counsel have allowed pursuit

of their own self-interests . . . to infect the negotiations.' *Briseño v. Henderson*, 998 F.3d 1014, 1023 (9th Cir. 2021) (citing *In Re Bluetooth*, 254 F.3d at 947). The three "red-flags" raised as concerns in *Bluetooth* and *Briseño* are: "(1) when counsel receive[s] a disproportionate distribution of the settlement; (2) when the parties negotiate a "clear sailing arrangement," under which the defendant agrees not to challenge a request for an agreed-upon attorney's fee; and (3) when the agreement contains a "kicker" or "reverter" clause that returns unawarded fees to the defendant, rather than the class." *Id.*

None of the *Bluetooth* "red-flags" exist as part of the present Settlement. First, as noted throughout this motion, Class Counsel seeks a reasonable and fair 25% of the common fund generated for the benefit of the Class which is not disproportionate. Second, there is no "clear sailing" provision in the Settlement Agreement and third, there is no reverter clause as the Settlement Fund is non-reversionary.

As Class Counsel will be paid from the same Settlement Fund as the settlement Class Members, Class Counsel was incentivized to negotiate the largest fund possible to the benefit of the Class. These efforts, resulted in a $2.5 million Settlement Fund of which Class Counsel seeks no more than 25%. Plaintiff's request is within the range of fees awarded in this Circuit and is most importantly consistent with the Ninth Circuit's "benchmark" fee awards. Accordingly, Class Counsel's award is a proportionate distribution of the settlement that satisfies heightened scrutiny under *Bluetooth* and *Briseño*.

## V.     RELEVANT FACTORS SUPPORT THE REQUESTED FEE AWARD

In assessing a request for attorney fees, courts consider several factors, including: (1) the results achieved; (2) the risk of litigation; (3) the skill required and the quality of work; (4) the contingent nature of the fee and the financial burden carried by the plaintiffs; (5) awards made in similar cases; and (6) a comparison of the percentage and lodestar methods. *See Vizcaino*, 290 F.3d at 1048–1050; *see also In re Omnivision Techs., Inc.*, 559 F. Supp. 2d 1036, 1046 (N.D. Cal. 2008).

10

These *Vizcaino* factors support Class Counsel's compensation in this case, where the financial burden of investigating, developing, and prosecuting the case, the risk and complexity of adequately proving uniform policies and practices that functioned in concert to violate Class Members' rights, and the skill and diligence required to maintain the case in the face of forceful opposition were substantial.

### a.  The Results Achieved Are Significant and Favorable

"[T]he most critical factor" in assessing a request for fees "is the degree of success obtained." *Hensley v. Eckerhart*, 461 U.S. 424, 436 (1983). Here, Class Counsel negotiated a sizable settlement fund of $2,500,000 that represents substantial and real recovery for Class Members who do not exclude themselves. The Class Members will receive a substantial amount in settlement funds, approximately $46 each, and these results were achieved efficiently and only after substantial discovery and multiple mediations had taken place. This factor weighs in favor of granting the fees and costs as requested.

### b.  The Litigation Presented Significant Risks

Plaintiff faces serious risks due to the uncertainty of trial. Settlements are a way to bypass those risks. *See Linney v. Cellular Alaska P'ship*, 151 F.3d 1234, 1242 (9th Cir. 1998) ("[I]t is the very uncertainty of outcome in litigation and avoidance of wasteful and expensive litigation that induce consensual settlements." (internal quotation marks omitted).) The risks were high here.

Continued litigation presents the Class Members with a risk of denial of class certification or decertification and loss on the merits, so this factor weighs in favor of granting fees. Defendant has vigorously contested liability, arguing that individualized issues precluded Rule 23 certification. Courts within this Circuit have reached different conclusions on whether to certify TCPA class actions. *Compare Felix v. N. Am. Asset Servs., LLC*, No. CV 12-3718-JFW (ANx), 2012 U.S. Dist. LEXIS 191548, at *7 (C.D. Cal. Sep. 5, 2012) (denying class certification), *Connelly v. Hilton Grand Vacations Co., LLC*, 294 F.R.D. 574, 579 (S.D. Cal. Oct. 29, 2013) (same), and *Fields v. Mobile Messengers Am.,*

*Inc.*, No. 12-cv-05160-WHA, 2013 U.S. Dist. LEXIS 163950 (N.D. Cal. Nov. 18, 2013) (same), with *Stern v. DoCircle, Inc.*, No. SACV 12-2005 AG (JPRx), 2014 U.S. Dist. LEXIS 17949 (C.D. Cal. Jan. 29, 2014) (certifying TCPA class), *Caldera v. Am. Med. Collection Agency*, 320 F.R.D. 513 (C.D. Cal. June 27, 2017) (same), and *Makaron v. Enagic USA, Inc.,* 324 F.R.D. 228 (C.D. Cal. Mar. 13, 2018) (same).

In addition, Class Counsel acknowledges the risks posed by Defendants' motions to compel Plaintiff's claims to arbitration and enforce a class-action waiver contained in the sales agreement he signed when he purchased a vehicle from the Moss Bros. Moreno Valley dealership, which has sought to intervene in this action.

These complex issues meant that Plaintiff could lose on the merits, class certification, trial, or appeal, which created substantial risk that Plaintiff and Class Members would recover nothing in this litigation. In short, Plaintiff was by no means assured of success, and Class Counsel was not assured of any fees or cost reimbursement.

Additionally, this litigation is a complex class case, which increased the risk of non-recovery. When this case was taken on a contingent-fee basis by Class Counsel, with the firm advancing all litigation costs, the ultimate result was far from certain. Defendant defended this action vigorously, and there was always the possibility that the class might not prevail, and then all the work Class Counsel had done would have gone uncompensated. Edelsberg Dec. at ⁋7.

### c. **This Action Required a High Degree of Skill and Work Quality**

Class Counsel are highly experienced in TCPA class actions. Edelsberg Dec. at ⁋8. Overall, Class Counsel displayed adequate skills and quality of work in moving this complex TCPA class action along efficiently and negotiating a settlement in the face of strong opposition, uncertainty, and great risk. This factor therefore weighs in favor of granting fees.

1

### d.  <u>Contingent Nature of the Requested Fees</u>

Contingent-fee arraignments assure "adequate representation for plaintiffs who could not otherwise afford competent attorneys," but present acute litigation risks. *See In re Omnivision*, 559 F. Supp. 2d at 1047. Class Counsel has devoted over 400 hours to this litigation, resulting in a lodestar of over $280,000, which is expected to rise through the Final Approval Hearing. Edelsberg Dec. at ¶9. Class Counsel's lodestar will continue to increase on a weekly basis, as Class Counsel continues to pursue final approval, implement the settlement, respond to class member inquiries, etc., continuing months beyond final approval. Class counsel accepted this case on a pure contingency basis and have received no compensation for their time or expenses to date. Edelsberg Dec. at ¶10.

### e.  <u>Awards in Similar Cases Support Approval Here</u>

Although 25% of the total recovery is the benchmark for attorney fees in the Ninth Circuit, numerous courts have awarded a higher percentage in similar circumstances. *See, e.g., Larson v. Harman-Management Corp.,* Case No. 1:16-cv-00219-DAD-SKO, 2020 U.S. Dist. LEXIS 107938, at *24-25 (E.D. Cal. June 18, 2020) (awarding 25% of the common fund in a TCPA action); *West v. Cal. Serv. Bureau, Inc.,* Case No. 4:16-cv-03124-YGR, Dkt. No. 128 (N.D. Cal. Jan. 23, 2019) (Rogers, J.) (awarding 33.33% of the common fund); *Vendervort v. Balboa Capital Corp.*, 8 F. Supp. 3d 1200, 1210 (C.D. Cal. 2014) (awarding 33% of common fund); *Izor v. Abacus Data Sys.*, Case No. 19-cv-01057-HSG, 2020 U.S. Dist. LEXIS 239999, at *27 (N.D. Cal. Dec. 21, 2020) (grating an award of 30% of the total settlement in a TCPA action); *Gergetz v. Telenav, Inc.*, No. 16-cv-04261-BLF, 2018 U.S. Dist. LEXIS 167206, at *21 (N.D. Cal. Sep. 27, 2018) (approving fees of 30% of the settlement fund in a TCPA case which settled after briefing of and prior to ruling on defendant's motion to dismiss and motion to stay).

Class Counsel's request of 25% of the total recovery, the benchmark for attorneys' fees in the Ninth Circuit, supports approval of the requested attorneys' fees. In light of the

13

excellent outcome, when compared to the risks attendant to this Action and the fees awarded in similar class actions, the request is justified, fair, and reasonable.

### f. A Lodestar Analysis Supports the Requested Fees

Despite the widely recognized limitations of the so-called "lodestar" method, California and federal courts recognize the utility of a lodestar "cross-check." *Lealao v. Beneficial California, Inc.*, 82 Cal. App. 4th 19, 46 (2000). A lodestar "cross-check" analysis typically happens in three steps. *Cundiff v. Verizon California*, 167 Cal. App. 4th 718 (2008), *accord Vizcaino*, 290 F.3d at 1047. First, a trial court must determine a baseline guide or "lodestar" figure based on the time spent and reasonable hourly compensation for each attorney involved in the case. *Serrano v. Priest*, 20 Cal. 3d 25, 48 (1977). Second, the court sets a reasonable hourly fee to apply to the time expended, with reference to the prevailing rates in the geographical area in which the action is pending. *Bihun v. AT&T Information System*, 13 Cal. App. 4th 976, 997 (1993) (18 years ago, affirming a $450 per hour rate for a Southern California litigation attorney). Finally, a "multiplier" of the base lodestar is set with reference to the factors described in detail in this brief. Courts often apply a positive multiplier to the lodestar to determine a reasonable fee. *E.g. Vizcaino supra* at 1051 (positive multiplier of 3.65.) Across all jurisdictions, multipliers of up to four are frequently awarded. NEWBERG, §14.03 at 14. Often, multipliers of greater than four are warranted.

The Ninth Circuit has recognized that the lodestar method "creates incentives for counsel to spend more hours than may be necessary on litigating a case so as to recover a reasonable fee, since the lodestar method does not reward early settlement." *Vizcaino,* 290 F.3d at 1050, n.5. As a corollary, a defendant willing to recognize a potential error and settle at an early stage would face the increased risk that an early settlement overture would be rejected. That did not happen here, in part because a percentage of the fund award encourages efficient litigation. The Ninth Circuit has thus cautioned that, while a lodestar method can be used as a cross check on the reasonableness of fees based on a percentage of

recovery method if a district court in its discretion chooses to do so, a lodestar calculation is not required, and it did "not mean to imply that class counsel should necessarily receive a lesser fee for settling a case quickly." *Id.*

Looking at the work of Class Counsel for Plaintiff in this matter, the lodestar calculation is $280,000, representing 400 of hours at a blended hourly rate of $700. Edelsberg Dec. at ¶11. Here, Plaintiff is requesting a lodestar multiplier just above 2. The figures for estimated time reflect the best estimates of Class Counsel, based on their experience and the settlement class size, and for the time that will be expended by Class Counsel between the filing of this motion and the hearing of Plaintiff's Motion for Final Approval.

Here, Class Counsel's adjusted lodestar is at $280,000 without any multiplier based on a reasonable hourly rate. As the Ninth Circuit has stated, "courts have routinely enhanced the lodestar to reflect the risk of non-payment in common fund cases." *Vizcaino*, 290 F.3d at 1051 (quoting *In re Washington Public Power Supply Sys. Sec. Litig.*, 19 F.3d 1291, 1300 (9th Cir. 1994). The multiplier range typically applied by district courts is 1.5 to 4. *See, e.g., Bellinghausen v. Tractor Supply Co.* 306 F.R.D. 245, 264 (N.D. Cal. 2014) (54 percent of lodestar multipliers fall within the 1.5 to 3.0 range, and 83 percent of multipliers fell within the 1.0 to 4.0 range); *Hopkins v. Stryker Sales Corp.*, No. 11-CV-02786- LHK, 2013 WL 496358, at *5 (N.D. Cal. Feb. 6, 2013) (multiplier of 2.86); *Di Giacomo v. Plains All Am. Pipeline, Nos.* 99–4137 & 99–4212, 2001 WL 34633373, at *10–11 (S.D. Fla. Dec. 19, 2001) (5.3 multiplier); *Maley v. Del Global Techs. Corp.,* 186 F. Supp. 2d 358, 369 (S.D.N.Y. 2002) (4.65 multiplier); *In re Aremissoft Corp. Sec. Litig.*, 210 F.R.D. 109, 134–35 (D.N.J. 2002) (4.3 multiplier).

Class Counsel obtained this settlement efficiently, affording redress to the Class Members swiftly, without forcing them to wait through protracted, and risky, litigation. Class Counsel was able to settle this case for a substantial amount under the circumstances, especially considering the difficulty of the case and Defendant's defenses. Class Counsel

includes experienced class action attorneys. Edelsberg Dec. at ¶8. They used their full abilities to achieve the successful result here. As shown above, the award requested here is fully in line with awards and multipliers employed in this Circuit. Accordingly, the lodestar cross-check affirms, with a multiplier just about 2, that the fee award does in fact fall easily within the range of reasonableness.

The percentage of recovery method "rests on the presumption that persons who obtain benefits of a lawsuit without contributing to its cost are unjustly enriched at the successful litigant's expense." *Staton*, 327 F.3d at 967. It is only fair that every class member who benefits from the opportunity to claim a share of the settlement pay his or her pro rata share of attorney's fees, and Plaintiff's request for fees here means that Class Counsel seek an amount of fees less than the amount Class Counsel would likely receive if they represented each class member individually. Typical contingent fee contracts of plaintiffs' counsel provide for attorney's fees of about 30-40% of any recovery obtained for a client. Edelsberg Dec. at ¶12. It would be unfair to compensate Class Counsel here at a substantially lesser rate because they obtained relief for thousands of class members. To the contrary, equitable considerations dictate that Class Counsel be rewarded for achieving a settlement that confers benefits among so many people, especially without protracted litigation. The result achieved by Class Counsel merits an award of attorney's fees equal to 25% of the total recovered value in this case.

## VI.    REIMBURSEMENT OF REASONABLE CLASS COUNSEL COSTS

Plaintiff also requests reimbursement from the common fund for out-of-pocket expenses incurred by Class Counsel during this litigation. Rule 23(h) permits the Court to "award . . . nontaxable costs that are authorized by law or by the parties' agreement." Fed. R. Civ. P. 23(h). The Settlement permits Class Counsel to seek reimbursement of their reasonable expenses. Class Counsel has incurred $12,588.03 in costs thus far. Edelsberg Dec. at ¶13. Class Counsel is entitled to recover "those out-of-pocket expenses that would normally be charged to a fee-paying client." *Harris v. Marhoefer*, 24 F.3d 16, 19 (9th Cir.

1994). It is appropriate to reimburse Class Counsel for such expenses from the common fund.

Plaintiff's incurred costs in this matter, including filing fees, Pro Hac fees, mediation fees for two mediations, subpoenas, service fees, Westlaw charges, PACER charges, travel expenses, postage charges and attorney service charges. Thus, Plaintiff requests $12,588.03 in costs, which is less than the amount provided under the Settlement Agreement. Edelsberg Dec. at ¶13. All of the costs provided were necessary in connection with the prosecution of this litigation and were expended for the benefit of the Class. Class Counsel will submit a supplemental declaration and invoice to provide updated costs if needed.

## VII.   CLASS REPRESENTATIVE SERVICE AWARD REQUESTED

Plaintiff also seeks approval of a Class Representative service award of $5,000.00. "Incentive awards are fairly typical in class action cases." *Rodriguez v. W. Publ'g Corp.*, 563 F.3d948, 958 (9th Cir. 2009). The Class Representative here has assisted Class Counsel in many ways, and the Class Representative Service Award amount is reasonable and justified. "[N]amed plaintiffs . . . are eligible for reasonable incentive payments" as part of a class action settlement. *Staton*, 327 F.3d at 977. Service or incentive payments are appropriate in a class action because they provide an incentive to bring important cases that have a broad impact benefiting a class of individuals, not just the plaintiff. *Cook v. Niedert*, 142 F.3d 1004, 1016 (7th Cir. 1998). These payments also recognize the plaintiffs' time, effort, and inconvenience, as well as the risk they are exposed to in asserting their and others' rights in a particularly public manner. By bringing the litigation on behalf of others in addition to themselves, class representatives in TCPA class actions provide a valuable service to their fellow consumers. More broadly, they promote the public policy goals set forth by the legislatures that enacted the underlying substantive statutes at issue. Plaintiff did so here. Edelsberg Dec. at ¶14.

For these reasons, courts in the Ninth Circuit routinely approve the award of service payments to class representatives for their assistance to the class. *See, e.g., Cabiness v.*

*Educ. Fin. Sols., LLC*, No. 16-cv-01109-JST, 2019 U.S. Dist. LEXIS 50817, at *13, 21 (N.D. Cal. Mar. 26, 2019) (awarding $5,000 incentive award in TCPA action, where "because class members will not have to opt in, the majority of the class will receive compensation" of $33.36); *Gergetz*, 2018 U.S. Dist. LEXIS 167206, at *15, 22 (granting $5,000 incentive award in TCPA case); *Bonoan v. Adobe, Inc.*, Case No. 3:19-cv-01068-RS, 2021 U.S. Dist. LEXIS 45821, at *10-11 (N.D. Cal. Mar. 10, 2021) (same); *Horton v. Cavalry Portfolio Servs., LLC*, Case No. 13cv307-JAH-WVG, 2020 U.S. Dist. LEXIS 189489, at *9 (S.D. Cal. Oct. 13, 2020) ($10,000 service award to each of two class representatives in TCPA action); *Larson*, 2020 U.S. Dist. LEXIS 107938, at *28 (granting $10,000 service award in TCPA action); *Cabiness*, 2019 U.S. Dist. LEXIS 50817, at *22 (agreeing with other courts in the Ninth Circuit finding that a $5,000 service award is presumptively reasonable, and awarding a $5,000 service award to the plaintiff in a TCPA action with a $1.1 million settlement fund).

Obtaining the result at bar was no small feat. Plaintiff devoted considerable time and energy to this case over approximately two years, which included approving three iterations of his class action complaint, participating in many strategy conferences with class counsel, responding to written discovery requests directed to him and staying available by phone for mediation. Edelsberg Dec. at ¶15. Plaintiff also assisted class counsel in protracted settlement negotiations with Defendant for the good of the class before, during, and shortly after mediation. In short, Plaintiff was an ideal and dedicated class representative throughout this matter.

Given Plaintiff's active participation in this matter, and as recognition for the superb results he delivered to class members, a service award of $5,000 is justified. This Court should accordingly approve a service award to Plaintiff in the amount of $5,000.

## VIII.  CONCLUSION

Plaintiff respectfully requests that this Court award class counsel attorneys' fees amounting to 25% of the $2.5 million common fund, approve the reimbursement of $[amount] in litigation costs and expenses reasonably incurred by class counsel, and approve an incentive award of $5,000 for his service to the class.


Dated: October 1, 2021

Respectfully submitted,

**HIRALDO P.A.**

*/s/ Manuel S. Hiraldo*
Manuel S. Hiraldo, Esq.
(*pro hac vice*)
401 E Las Olas Blvd., Ste. 1400
Fort Lauderdale, FL 33301
mhiraldo@hiraldolaw.com
954-400-4713
*Attorneys for Plaintiff*

Scott Edelsberg, Esq.
California Bar No. 330990
scott@edelsberglaw.com
**EDELSBERG LAW, PA**
20900 NE 30th Ave., Suite 417
Aventura, FL 33180
Office: (305) 975-3320

**IJH LAW**
Ignacio J. Hiraldo, Esq. (pro hac vice) 1200 Brickell Ave Suite 1950
Miami, FL 33131
Email: ijhiraldo@ijhlaw.com
Telephone: 786.496.4469

**SHAMIS & GENTILE, PA**
Andrew J. Shamis (*pro hac vice*)
14 NE 1st Avenue, Suite 400
Miami, Florida 33132
Telephone: 305-479-2299
ashamis@shamisgentile.com

*Attorneys for Plaintiff Jamal Johnson*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 1st day of October, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF. I also certify that the foregoing document is being served this day on all counsel of record via transmission of Notice of Electronic Filing generated by CM/ECF.

Respectfully submitted,

*/s/ Manuel S. Hiraldo*
Manuel S. Hiraldo

20