**EDELSBERG LAW, P.A.**
Scott Edelsberg
(California Bar No. 330990)
scott@edelsberglaw.com
20900 NE 30th Ave., Suite 417
Aventura, Florida 33180
Telephone: (305) 975-3320

*Attorney for Plaintiff*

## IN THE UNITED STATES DISTRICT COURT
## FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| **JAMAL JOHNSON,** individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>**MOSS BROS. AUTO GROUP. INC. and SUSAN ANDERSON,**<br><br>Defendants. | Case No. 5:19-CV-02456<br><br>**PLAINTIFF'S UNOPPOSED MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT**<br><br>**Date: March 24, 2022**<br>**Time: 10:00 AM**<br>**Ctrm: 6D**<br>**Judge: Hon. Fernando M. Olguin** |

## NOTICE OF MOTION AND MOTION

**TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:**

**PLEASE TAKE NOTICE,** on March 24, 2022, at 10:00 a.m., in Courtroom 6D of the above caption Court, located at 350 W. 1st Street, 6th Floor, Los Angeles, California 90012, Plaintiff will and hereby does move for an order to grant final approval of the class action settlement. This motion is based on this Notice of Motion and Motion, and upon such other written or oral argument as may be presented to the Court at the hearing.

This Motion is made following the conference of counsel pursuant to L.R. 7-3, and subject to a settlement agreement.

1

2

3

4 DATED: February 17, 2022

5 */s/ Scott Edelsberg*

6 Scott Edelsberg, Esq.
California Bar No. 330990

7 scott@edelsberglaw.com

8 **EDELSBERG LAW, PA**
20900 NE 30th Ave., Suite 417

9 Aventura, FL 33180
Office: (305) 975-3320

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

2

## **TABLE OF CONTENTS**

I.   **BACKGROUND** ...................................................................................1

II.  **SUMMARY OF THE SETTLEMENT TERMS** ...............................3

    a.   The Settlement Class ...............................................................3

    b.   Settlement Consideration .........................................................3

    c.   The Notice Program .................................................................4

    d.   No Claims Process ....................................................................5

    e.   Allocation of the Settlement Fund Payments...........................6

    f.   Class Counsel Fees and Expenses and Plaintiff's Service
        Award ........................................................................................8

III. **THE SETTLEMENT SATISFIES ALL REQUIREMENTS
     AND MERITS APPROVAL** .............................................................8

    a)   The Strengths of Plaintiff's Case and the Risks Inherent in
        Continued Litigation against Defendants and maintaining
        Class Certification Favor Final Approval ................................9

    b)   The $2,500,000.00 Fund Provides a Fair and Substantial
        Class Benefit............................................................................10

    c)   The Lack of a Government Participant Supports Final
        Approval of the Settlement ....................................................11

    d)   The Posture of The Case and Experience and View Of
        Counsel and well as the Reaction of Settlement Class
        Members Favor Final Approval ..............................................12

    e)   The Settlement Also Meets the Requirements of Rule
        23(e)(2) Which Also Favors Final Approval .........................12

IV.  **CONCLUSION** ................................................................................15

**TABLE OF AUTHORITIES**

**CASES**

*Adams v. AllianceOne Receivables Mgmt., Inc.*, No. 3:08-cv-00248-
     JAH-WVG, Dkt. No. 137 (S.D. Cal. Sept. 28, 2012)................................13, 15

*Arnold v. Ariz. Depot. Of Pub Safety*, No. CV-01-1463-PHX-LOA,
     2006 WL 2168637, at *10 (D. Ariz. July 31, 2006).........................................14

*Arthur v. Sallie Mae, Inc.*, 10-cv-0198-JLR (W.D. Wash.)...................................13

*Berkey Photo, Inc. v. Eastman Kodak Co.*, 603 F.2d 263 (2d Cir. 1979) ............11

*Boyd v. Bechtel Corp.*, 485 F. Supp. 610, 622 (N.D. Cal. 1979)..........................14

*Estrada v. iYogi, Inc.,* No. 2:13–01989 WBS CKD, 2015 WL 5895942,
     at *7 (E.D. Cal. Oct. 6, 2015) ..............................................................13

*Fox v. Asset Acceptance, LLC*, No. 2:14-cv-00734-GW-FFM (C.D.
     Cal. June 20, 2016) ..............................................................................13

*Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1026 (9th Cir. 1998). .......10, 11, 12, 13

*In re Bluetooth Headset Products Liab. Litig.*, 654 F.3d 935, 947 (9th
     Cir. 2011) ............................................................................................15

*In re Capital One Tel. Consumer Prot. Act Litig. (In re Capital One)*,
     80 F. Supp. 3d 781, 787 (N.D. Ill. 2015)...........................................13

*In re Omnivision Tech., Inc.*, 559 F. Supp. 2d 1036 (N.D. Cal. Jan. 9,
     2008) ....................................................................................................12

*Kirkorian v. Borelli*, 695 F. Supp. 446 (N.D. Cal.1988) .......................................14

*Kramer v. Autobytel, Inc., et al.*, No. 10-cv-2722, Dkt. 148 (N.D. Cal.
     2012) ....................................................................................................13

*Linney v. Cellular Alaska P'ship*, 151 F.3d 1234, 1238 (9th Cir. 1998)..............10

*ACTIVE 63026041*

*National Rural Telecommunications Cooperative v. DIRECTV, Inc.*,
    221 F.R.D. 523, 527 (C.D. Cal. 2004)................................................................15

*Rodriguez v. W. Publishing*, 563 F.3d 948, 965 (9th Cir. 2009) ...........................15

*Rose v. Bank of Am. Corp.*, 2014 WL 4273358, at *10 (N.D. Cal.,
    2014) ..................................................................................................................13

*Sherman v. Kaiser Foundation Health Plan, Inc.*, 13-cv-00981-JAH-
    JMS (S.D. Cal.)...................................................................................................13

*Steinfeld v. Discover Fin. Servs.*, No. C 12-01118, Dkt. No. 96 at ¶ 6
    (N.D. Cal. Mar. 10, 2014)..............................................................................12, 15

*West Virginia v. Chas. Pfizer & Co.*, 314 F. Supp. 710, 743-44
    (S.D.N.Y. 1970)..................................................................................................11

*Wood v. Ionatron, Inc.*, No. CV-06-354-TUC-CKJ, 2009 WL
    10673479, at *5 (D. Ariz. Sept. 28, 2009).........................................................14

**STATUTES**

47 U.S.C. § 227 .........................................................................................................5

ACTIVE 63026041

## PLAINTIFF'S UNOPPOSED MOTION FOR FINAL APPROVAL
## OF CLASS ACTION SETTLEMENT

Plaintiff, Jamal Johnson ("Plaintiff") on behalf of himself and a class of similarly situated persons hereby respectfully requests that the Court grant Final Approval of the Settlement in this matter. Defendants Moss Bros. Auto Group, Inc., and Susan Anderson ("Defendants") do not oppose Plaintiff's motion.

## I.      BACKGROUND

The Telephone Consumer Protection Act, 47 U.S.C. § 227 ("TCPA"), and its implementing regulations were enacted by Congress and the Federal Communications Commission to "offer consumers greater protection from intrusive telemarketing calls…."[1] Plaintiff alleges that Defendants coordinated prerecorded telephone call campaigns on behalf of the various car dealerships they manage in which prerecorded messages were sent to Plaintiff and approximately 54,314 unique cell phone numbers. Plaintiff alleged that these campaigns violated the TCPA because the prerecorded messages were sent without Defendants first obtaining express written consent. Defendants deny any wrongdoing and have articulated various challenges to class certification and the merits of Plaintiff's claim. Defendants also have sought to enforce a class-action waiver and arbitration agreement. Plaintiff has opposed those efforts, and the arbitration motions remain submitted to the Court.

Defendants deny all claims, liability, damages, losses, penalties, interest, fees, restitution and all other forms of relief that were or could have been sought in this lawsuit, as well as all class allegations.  Defendants continue to dispute their liability for the claims alleged in the lawsuit, and maintain that they complied, at all times, with the TCPA and all other applicable laws and regulations. After vigorously contested litigation and as the result of extensive arm's length negotiations following

---

[1]  Federal Communications Commission, Small Entity Compliance Guide for the TCPA (dated May 13, 2013), https://apps.fcc.gov/edocs_public/attachmatch/DA-13-1086A1.pdf.

1

two mediation sessions before Ted Banstra and Jill Sperber, the Parties reached an agreement to resolve this class action. In short, the Settlement Agreement ("Settlement Agreement," "Agreement," or "Agr.") includes the establishment of a $2,500,000.00 Settlement Fund available for the benefit of Settlement Class Members. The amount of each Settlement Fund Payment shall be determined by the following formula: Net Settlement Fund[2] divided by total number of unique telephone numbers that received a Message = Settlement Fund Payment. As discussed further below, uncashed funds may be redistributed to Settlement Class Members.

Notice and administrative costs, Class Counsel fees, and a Service Payment to the Plaintiff/Class Representative will be paid from the Settlement Fund.

On June 25, 2021, this Court preliminarily approved the settlement and authorized the distribution of notice to potential Settlement Class Members. [ECF No. 125].

Not a single Settlement Class Member objected to the terms of the Settlement Agreement and only four have opted-out of the Settlement Agreement.

On December 16, 2021, this Court held a final approval hearing and identified issues that precluded final approval and suggested some options the parties could address those concerns by amending the Settlement Agreement. [ECF No. 132]. Consistent with the Court's guidance, the Parties amended paragraphs 62, 64, 65, and 71 of the Settlement Agreement.

Plaintiff now requests request that the Court: (1) grant Final Approval to the Settlement; (2) certify for settlement purposes the Settlement Class, pursuant to Rule 23(b)(3) and (e) of the Federal Rules of Civil Procedure; (3) appoint Plaintiff as Class Representative; (4) appoint as Class Counsel William Litvak, Andrew J. Shamis,

---

[2] "Net Settlement Fund" means the Settlement Fund minus Settlement Costs. Agr. at ¶15. "Settlement Costs" means attorneys' fees, costs, incentive award, and administration/notice costs that are ultimately approved by this Court. *Id*. at ¶29.

2

Scott A. Edelsberg, Manuel S. Hiraldo, Ignacio J. Hiraldo, and Michael Eisenband; and (5) enter Final Judgment dismissing the Action with prejudice.[3]

## II.   SUMMARY OF THE SETTLEMENT TERMS

The Settlement terms are detailed in the Agreement filed on December 14, 2020, [DE #123-1], and attached hereto as **Exhibit A** ("Agr."). The Amended settlement terms are attached hereto as **Exhibit B** ("Amd. Agr."). The following is a summary of the material terms.

### a.  The Settlement Class

The proposed Settlement establishes a Settlement Class as follows:

**All persons within the United States who, within the four years prior to the filing of this action (i.e., since December 20, 2015), were sent a prerecorded message from Defendants, auto dealerships managed by Defendants (the "Dealerships"), or anyone acting on behalf of any Defendant or Dealership (including employees, agents, third-party contractors, and sub-contractors), to said person's telephone number, for the purpose of advertising and/or promoting any dealership that is held, operated, owned, managed, serviced and/or controlled by, and/or is a subsidiary of, Defendant Moss Bros Auto Group, Inc.**

Agr. ¶ 34.

The following are excluded from the Settlement Class: (a) any trial or magistrate judge presiding over the Action; (b) Defendants, as well as any parent, subsidiary, affiliate or control person of Defendants, and the officers, directors, agents, servants or employees of Defendants; (c) any of the Released Parties; (d) the immediate family of any such person(s); (e) any Settlement Class Member who has timely and properly opted out of this Settlement; and (f) Plaintiff's Counsel and their employees. Agr. ¶ 35.

### b.  Settlement Consideration

---

[3] Concurrently with this Motion, Plaintiff has filed a Motion for Attorneys' Fees, Costs, Expenses, and an Incentive Award.

Pursuant to the Settlement, Defendants have agreed to create a cash common fund of $2,500,000.00, available for the benefit of Settlement Class Members ("Settlement Fund"). Agr. at ¶ 37.

### c.  The Notice Program

The Notice Program was designed to provide the best notice practicable and was tailored to take advantage of the information Defendants had available about Settlement Class members including their mailing address. The Administrator, Epiq Class Action & Claims Solutions, Inc. ("Epiq") delivered notice to the Settlement Class Members in accordance with the Settlement Agreement and this Court's preliminary approval order. *See generally* Decl. of Cameron Azari, attached as **Exhibit C**.

The amendments to the Settlement Agreement, which were agreed to and executed after the Notice program was complete, do not require additional notice to the Settlement Class. Specifically, amended Paragraph 65 dictates that Settlement Fund Payments that are not cashed within 180 days will be, to the extent it's economically feasible, redistributed on a pro rata basis to those Settlement Class Members who cashed the first round of Settlement Fund Payments. Amd. Agr. at ¶65. As such, unlike original Paragraph 65, which called for a single round of payments with uncashed checks reverting to Defendant, the only change for Settlement Class Members that cash the first round of Settlement Fund Payments is that they might receive additional payments. Here, if the Court approves Plaintiff's request for 25% of the Settlement Fund and reimbursement of costs, incentive award, and notice and administration costs, Plaintiff's counsel estimates that the first round of Settlement Fund Payments will be for $34.18 to each Class Member, assuming the Court grants Plaintiff's request for attorneys' fees and costs, service award, and notice and administration costs.

The Notice, which received no objections and is not affected by the amendment, does not mention the possibility that some settlement funds may revert

to Defendant, nor does it indicate that there would never be additional payments made to members of the Settlement Class. As such, the Notice does not contradict any of the proposed amendments to the Settlement Agreement and will result (if there is enough money) in Settlement Class Members receiving more than one Settlement Fund Payment—an outcome that will only serve to benefit Settlement Class Members. Accordingly, additional notice is not necessary and the Notice program here "fairly and adequately informed the class members of the nature of the action, the terms of the proposed settlement, the effect of the action and release of claims, the class members' right to exclude themselves from the action, and their right to object to the proposed settlement." *Gonzalez-Tzita v. City of Los Angeles*, C.D.Cal. No. CV 16-0194 FMO (Ex), 2020 U.S. Dist. LEXIS 156069, at *8 (Aug. 25, 2020).

And as previously noted during the first Final Approval Hearing, the Notice program successfully reached 94.4% members of the Settlement Class. The Second Supplemental Declaration of Cameron R. Azari, attached as **Exhibit D**, clarifies that data produced reflected 54,887 records for potential class members with a total of 110,491 prerecorded messages sent to 54,314[4] unique telephone numbers. Mr. Azari further clarifies that after preforming a reverse look-up and removing duplicate records, 1,628 records remained without a mailable address. *See* **Exhibit D** at ¶¶ 7-8. As such, Notice was sent to 53,259[5] (54,887 – 1,628 = 53,259) Class Members. Of the 53,259 that were sent notice, 51,818 were successfully delivered. Accordingly, notice reached approximately 94.4% of the Settlement Class Members (51,818 x 100 ÷ 54,887 = 94.4%) *See* **Exhibit D** at ¶11.

### d. **Automatic Participation Without Claims Process**

Any Settlement Class member who does not timely and validly request to opt-

---

[5] Mr. Azari clarifies that in his initial Declaration, **Exhibit C**, he correctly reported that 53,259 members of the Settlement Class were sent notice but accidentally reported, at paragraph 15, line 11, that 53,423 members of the Settlement Class were sent notice. The 53,423 number was a typo.

out shall remain in the Settlement Class, be bound by the terms of the Settlement Agreement, automatically be mailed a Settlement Fund Payment, and release their claims against Defendants.

### e. Allocation of the Settlement Fund Payments

Each Settlement Class member who does not opt out of the Settlement shall automatically be mailed an initial Settlement Fund Payment payable by check. Amd. Agr. at ¶¶ 62, 64. The amount of each Settlement Fund Payment shall be determined by the following formula: Net Settlement Fund divided by total number of unique telephone numbers[6] that received a Message = Settlement Fund Payment. *Id.* at ¶62. If the Parties and the Settlement Administrator deem it to be financially feasible, uncashed checks shall be redistributed on a pro rata basis to those Settlement Class Members who cashed the first round of Settlement Fund Payments. Amd. Agr. at ¶65. If a second round of payments is deemed infeasible or if 180 days has lapsed since the second round of payments have been issued, the Settlement Administrator shall stop payment on all outstanding checks and pay the amount of uncashed checks and any other remaining balance of the Settlement Amount, pending approval from the Court, to the Loma Linda University Children's Hospital. *Id.* If the Court does not approve of Loma Linda University Children's Hospital the uncashed checks and any other remaining balance of the Settlement Amount shall be sent to the National Consumer Law Center. *Id.*

Courts may approve *cy pres* distributions if there is "a driving nexus between the plaintiff class and the *cy pres* beneficiaries." *Dennis v. Kellogg Co.*, 697 F.3d 858, 865 (9th Cir. 2012). A *cy pres* award must be guided by (1) the objectives of the underlying statute(s) and (2) the interests of the silent class members and must

---

[6] The total number of unique telephone numbers that received a Message (54,314) is less than the total number of unique records in Defendants possession (54,887) because the Administrator determined that some of the unique records were duplicative, incomplete, or did not contain "call data" confirming that a Message was received. *See* **Exhibit D** at ¶¶ 7.

not benefit a group too remote from the plaintiff class. *Spann v. J.C. Penney Corp.*, 211 F. Supp. 3d 1244, 1261 (C.D. Cal. 2016) (internal citations omitted).

The Parties first suggest *cy pres* recipient, Loma Linda University Children's Hospital ("LLUCH"), is the "sole children's hospital for 1.2 million kids"[7] in the Riverside California area and relies heavily on donors "to realize our vision and provide lifesaving care for kids." Amd. Agr. at ¶65. LLUCH is relevant to the members of the Settlement Class because Defendants' marketing efforts described in the Complaint were targeted towards consumers in the Riverside, California area because those consumers were the most likely to buy vehicles from Defendants' dealerships. The Parties have no ownership or financial interest in LLUCH. As such, the Parties believe LLUCH is a suitable *cy pres* recipient that will benefit Settlement Class Members and their local community.

In the event the Court does not approve LLUCH as a *cy pres* recipient, the Parties have identified the National Consumer Law Center ("NCLC") as a backup. Amd. Agr. at ¶65. This Court recognized that "NCLC is a frequent recipient of *cy pres* awards, because its work promotes justice at both the national and state levels regarding consumer protection, unfair and deceptive acts and practices." *Estakhrian v. Obenstine*, C.D.Cal. No. CV 11-3480 FMO (CWx), 2016 U.S. Dist. LEXIS 147105, at *23 (C.D. Cal. Oct. 24, 2016). Other courts also recognize that the NCLC is specifically tied to the TCPA and a suitable *cy pres* recipient: "The National Consumer Law Center advocates against automated calls and will further the goals of the absent class members. (*See* NCLC, *Robocalls & Telemarketing*, https://www.nclc.org/issues/robocalls-andtelemarketing. html (last visited Sept. 21, 2018).)." *Lee v. Glob. Tel*Link Corp.*, No. 2:15-cv-02495-ODW (PLA), 2018 U.S. Dist. LEXIS 163410, at *25 (C.D. Cal. Sep. 24, 2018).

To maximize the likelihood of Settlement Class Members cashing Settlement

---

[7] *See https://lluch.org/about-us* (last visited February 14, 2022).

7

Fund Payments and minimize the potential for fraud, the outside of the envelope or package containing the Settlement Fund Payment checks shall now include the words "TCPA – Moss Bros Settlement," "IMPORTANT," and "expires in 180 days," but shall not mention the enclosure of a payment or check. Amd. Agr. at ¶ 62.

### f. <u>Class Counsel Fees and Expenses and Plaintiff's Service Award</u>

Class Counsel shall request from the Court a reasonable amount for attorneys' fees and shall request from the Court a reimbursement of Class Counsel's costs and expenses. Agr. at ¶69. Plaintiff's counsel may seek up to 25% of the Settlement for attorneys' fees and reimbursement of exactly $12,588.03 for costs and expenses. Amd. Agr. at ¶71. Defendants retain the right to challenge the Plaintiff's fee request as unreasonable. *Id.*

## III.   <u>THE SETTLEMENT SATISFIES ALL REQUIREMENTS AND MERITS APPROVAL</u>

A class action may not be dismissed, compromised, or settled without the approval of the Court. Fed. R. Civ. Proc. 23(e). The decision to approve or reject a proposed settlement "is committed to the sound discretion of the trial judge[.]" *See Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1026 (9th Cir. 1998). This discretion is to be exercised "in light of the strong judicial policy that favors settlements, particularly where complex class action litigation is concerned," which minimizes substantial litigation expenses for both sides and conserves judicial resources. *See Linney v. Cellular Alaska P'ship*, 151 F.3d 1234, 1238 (9th Cir. 1998) (quotations omitted).

The Ninth Circuit Court of Appeals has articulated several factors relevant to the evaluation of the fairness of a class action settlement: (1) the strength of the plaintiffs' case; (2) the risk, expense, complexity, and likely duration of further litigation; (3) the risk of maintaining class action status throughout the trial; (4) the consideration offered in settlement; (5) the extent of discovery completed, the stage of the proceedings; (6) the experience and views of counsel; and (7) the reaction of the class to the proposed settlement. *Hanlon*, 150 F.3d at 1026.

*ACTIVE 63026041*

In addition, Rule 23(e)(2) requires parties to provide courts with sufficient information to determine that it will likely be able to approve the settlement as fair, reasonable, and adequate. The considerations are whether (a) the class representatives and class counsel have adequately represented the class; (b) the proposal was negotiated at arm's length; (c) the relief provided by the settlement is adequate, taking into account: (i) the costs, risks, and delay of trial and appeal; (ii) the effectiveness of any proposed method of distributing relief including the method of processing class-member claims, if required; (iii) the terms of any proposed award of attorneys' fees, including timing of payment; and (iv) any agreement required to be identified under Rule 23(e)(3) made in connection with the proposed settlement; and (d) the proposal treats class members equitably relative to each other.

Under both standards, which include overlapping factors, the proposed Settlement is fair, reasonable, and adequate, and should be preliminarily approved.

**a)** **The Strengths of Plaintiff's Case and the Risks Inherent in Continued Litigation Against Defendants and Maintaining Class Certification Favor Final Approval**

The first, second, and third *Hanlon* factors support final approval. Every class action involves uncertainty, both on the merits and on the appropriateness of class certification and this case was no different. There was no guarantee that Plaintiff would be able to verify a class and maintain certification through trial or that this Court would find in Plaintiff's favor as to liability. Prior to Settlement, the Parties actively litigated the action. The litigation involved a large amount of discovery, including serving and responding to several sets of written discovery responses and engaging in multiple rounds of the meet and confer process. The parties engaged in extensive exchanges of documents and information, including data regarding putative class members, as well as formal discovery in the lawsuit.

While Plaintiff strongly believes in the merits of his case, there was substantial risk to continuing to litigate his position. For example, whether Plaintiff would have

9

1   prevailed on his motion for class certification is uncertain given Defendants'

2   opposition. Further, at the time of Settlement, Defendants still had valid defenses.

3       Moreover, even if Plaintiff were to prevail at class certification, risks would

4   have remained regarding the merits of the TCPA claim. *See West Virginia v. Chas.*

5   *Pfizer & Co.*, 314 F. Supp. 710, 743-44 (S.D.N.Y. 1970) ("[i]t is known from past

6   experience that no matter how confident one may be of the outcome of litigation,

7   such confidence is often misplaced"), aff'd, 440 F.2d 1079 (2d Cir. 1971); *Berkey*

8   *Photo, Inc. v. Eastman Kodak Co.*, 603 F.2d 263 (2d Cir. 1979) (reversing $87 million

9   judgment after trial).

10      Securing a $2,500,000.00 settlement now with certainty of payment will

11  provide meaningful relief to Settlement Class Members. Plaintiff and his counsel

12  carefully balanced the risks of continuing to engage in protracted and contentious

13  litigation against the benefits to the Settlement Class, including the amount of the

14  Settlement Fund. Thus, the Settlement presents a fair and reasonable alternative to

15  continued litigation.

16      **b) The $2,500,000.00 Fund Provides a Fair and Substantial Class**

17      **Benefit**

18      The fourth *Hanlon* factor – the amount offered in the settlement – also favors

19  approval. Defendants have agreed to provide a $2,500,000.00 Settlement Fund,

20  which will be used to pay all claiming Settlement Class Members and all settlement

21  costs. Class Counsel estimates that the initial Settlement Class Payment will be

22  approximately $34.18 assuming the Court grants Plaintiff's request for attorneys'

23  fees and costs, service award, and notice and administration costs. Although this

24  amount is less than the TCPA's statutory damages of $500, it is well-settled that a

25  proposed settlement need not provide class members with the type of recovery they

26  could obtain following a total win at trial. *See National Rural Tele. Coop. v.*

27  *DIRECTV, Inc.*, 221 F.R.D. 523, 527 (C.D. Cal. 2004) ("well settled law that a

28  proposed settlement may be acceptable even though it amounts to only a fraction of

the potential recovery"); *In re Omnivision Tech., Inc*., 559 F. Supp. 2d 1036 (N.D. Cal. Jan. 9, 2008) (court-approved settlement amount that was just over 9% of the maximum potential recovery).

Here, the settlement award that each Settlement Class Member will likely receive is fair, appropriate, and reasonable in light of the risk, expense, and uncertainty of continued litigation within the TCPA's changing landscape. This is clearly explained to Settlement Class Members in the Notice so they understand what they are giving up by participating in the settlement. Indeed, the estimated initial award of $34.18 is in line with payments in other TCPA settlements approved across the country. *Steinfeld v. Discover Fin. Servs.*, No. C 12-01118, [DE 96] at ¶ 6 (N.D. Cal. Mar. 10, 2014) (claimants received $46.98); *Adams v. AllianceOne Receivables Mgmt., Inc.*, No. 3:08-cv-00248-JAH-WVG, Dkt. No. 137 (S.D. Cal. Sept. 28, 2012) (claimants received $40); *Kramer v. Autobytel, Inc., et al.*, No. 10-cv-2722, Dkt. 148 (N.D. Cal. 2012) (cash payment of $100 to each class member); *Estrada v. Yogi, Inc.,* No. 2:13–01989 WBS CKD, 2015 WL 5895942, at *7 (E.D. Cal. Oct. 6, 2015) (granting preliminary approval to TCPA settlement where class members estimated to receive $40); *Rose v. Bank of Am. Corp.*, 2014 WL 4273358, at *10 (N.D. Cal., 2014) (claimants estimated to receive $20 to $40). As the current settlement provides superior results to many other approved TCPA settlement, the fourth *Hanlon* factor strongly favors final approval.

### c) **The Lack of a Government Participant Supports Final Approval of the Settlement**

While no governmental agency is a party to this lawsuit, Epiq notified all pertinent government officials of the settlement as required by CAFA. *See* **Exhibit B** at ¶14. No governmental agency raised objections or concerns about the settlement and this factor therefore supports final approval. *Id.*

*ACTIVE 63026041*

**d) The Posture of The Case and Experience and View Of Counsel and well as the Reaction of Settlement Class Members Favor Final Approval**

The fifth, sixth and seventh *Hanlon* factors also support final approval of settlement. At the time the parties reached their settlement, they had completed discovery – including substantial written discovery took place and extensive law and motion practice. As a result, the Parties were thoroughly informed of the claims – and the risks associated with them – before they reached a settlement.

Class Counsel – who have substantial experience litigating TCPA class actions – strongly believe that the Settlement is fair, reasonable, adequate, and in the best interests of the Class Members. The opinion of experienced counsel supporting the settlement is entitled to considerable weight. *See e.g.*, *Kirkorian v. Borelli*, 695 F. Supp. 446 (N.D. Cal.1988) (opinion of experienced counsel carries significant weight in terms of the reasonableness of the settlement); *Boyd v. Bechtel Corp.*, 485 F. Supp. 610, 622 (N.D. Cal. 1979).

Class Member reaction to the Settlement has been very well received. As of the date of this filing, **not a single Class Member has objected and only four Class Members have opted-out of the Settlement**. The lack of objections and exclusions strongly support approval. *See Arnold v. Ariz. Depot. Of Pub Safety*, No. CV-01-1463-PHX-LOA, 2006 WL 2168637, at *10 (D. Ariz. July 31, 2006) (Anderson, M.J.) ("The absence of any objections suggests that the class members are unopposed to terms of the Settlement Agreement. The absence of objections weighs in favor of approving the Settlement Agreement.); *Wood v. Ionatron, Inc.*, No. CV-06-354-TUC-CKJ, 2009 WL 10673479, at *5 (D. Ariz. Sept. 28, 2009) (Jorgenson, J.) (same).

**e) The Settlement Also Meets the Requirements of Rule 23(e)(2) Which Also Favors Final Approval**

*ACTIVE 63026041*

As stated above, the Settlement reached is a fair and reasonable alternative to continued litigation and as such it meets the requirements of Rule 23(e)(2).

Class Members will receive a monetary award of approximately $34.18 without having to file a claim. The Ninth Circuit has identified "red flags" that may suggest that plaintiffs' counsel allowed pursuit of their own self-interest to infect settlement negotiations, including when counsel receive a disproportionate portion of the settlement, the parties agree to a "clear sailing" arrangement providing for the payment of attorneys' fees separate and apart from class funds, or the parties agree that any fees not awarded will revert to a defendant rather than be added to the class fund. *In re Bluetooth Headset Products Liab. Litig.*, 654 F.3d 935, 947 (9th Cir. 2011). None of these "red flags" are present in this settlement.

First, since Class Counsel will be paid from the same Settlement Fund as Settlement Class Members, they were incentivized to negotiate the largest fund possible.

Second, there is no "clear sailing provision" as Defendants retain the right to challenge the Plaintiff's fee request as unreasonable. *See* Amed. Agr. at ¶71. The Ninth Circuit defines a "clear sailing" agreement as one "providing for the payment of attorney's separate and apart from class funds" and also one where "the defendant agrees not to oppose a petition for a fee award up to a specified maximum value." *Jones v. GN Netcom, Inc. (In re Bluetooth Headset Prods. Liab. Litig.),* 654 F.3d 935, 947 (9th Cir. 2011). Here, the original Settlement Agreement and amendments to the Settlement Agreement do not (1) provide for the payment of attorney's fees separate and apart from class funds and (2) do not prevent Defendants from objecting to Plaintiff's fee request. Accordingly, there is no "clear sailing provision." Further, "clear sailing provisions are not prohibited," and in situations like here, where any fees not awarded to Plaintiff's counsel will be paid to Settlement Class Members, courts routinely accept clear sailing provisions. *See Russell v. Kohl's Dep't Stores, Inc.,* 755 F. App'x 605, 608 (9th Cir. 2018) (concluding that existence of clear

13

sailing provision did not undermine settlement in part because class counsel's fees "would come from a common fund" and "fees not awarded to counsel . . . would not revert" to defendant).

Third, the Settlement was also not conditioned on any specific amount of a service award for Plaintiff. Based on the favorable terms of the Settlement Agreement obtained for the Class, both Plaintiff and Class Counsel have adequately represented the Class's interests as required by Rule 23(e)(2)(A).

As required by Rule 23(e)(2)(B), the Settlement reached was the result of arms-length negotiations with the aid of an experienced mediator. The time and effort spent on settlement negotiations, as well as the time spent in mediation with Ted Banstra and Jill Sperber, Esq., support approval of the proposed Settlement and strongly indicate there was no collusion. *See National Rural Telecommunications Cooperative v. DIRECTV, Inc.,* 221 F.R.D. 523, 527 (C.D. Cal. 2004) (settlements that follow sufficient discovery and genuine arms-length negotiation are presumed fair); *Rodriguez v. W. Publishing*, 563 F.3d 948, 965 (9th Cir. 2009) ("We put a good deal of stock in the product of an arm's length, non-collusive, negotiated resolution.").

The relief provided to the Class is adequate under Rule 23(e)(2)(C) with a payout to the Class Members of approximately $34.18 is in line with other approved TCPA settlements, especially considering that Class Members may receive more than one Settlement Fund Payment. *See e.g. Steinfeld v. Discover Fin. Servs.*, No. C 12-01118, [DE 96] at ¶ 6 (N.D. Cal. Mar. 10, 2014) (claimants received $46.98); *Adams v. AllianceOne Receivables Mgmt., Inc.*, No. 3:08-cv-00248-JAH-WVG, Dkt. No. 137 (S.D. Cal. Sept. 28, 2012) (claimants received $40).

Lastly, the proposal treats Class Members equitably and equally as required by Rule 23(e)(2)(D). Any Settlement Class member who does not timely and validly request to opt-out shall be bound by the terms of this Agreement and shall automatically be mailed an initial Settlement Fund Payment. The amount of each Settlement Fund Payment initial payment shall be determined by the following

14

formula: Net Settlement Fund divided by total number of unique telephone numbers that received a Message = Settlement Fund Payment.

## IV.    **CONCLUSION**

Plaintiff and Class Counsel respectfully request that this Court: (1) grant Final Approval to the Settlement and enter the proposed order attached as **Exhibit E**; (2) certify for settlement purposes the Settlement Class pursuant to Federal Rules of Civil Procedure 23(a), 23(b)(3), and 23(e); (3) appoint Plaintiff as Class Representative; (4) appoint as Class Counsel the law firms and attorneys listed in paragraph I of the Agreement; and (5) enter Final Judgment dismissing the Action with prejudice.

Dated:  Febuary 17, 2022

Respectfully submitted,


*/s/ Scott Edelsberg*
Scott Edelsberg, Esq.
California Bar No. 330990
scott@edelsberglaw.com
**EDELSBERG LAW, PA**
20900 NE 30th Ave., Suite 417
Aventura, FL 33180
Office: (305) 975-3320

**DAPEER ROSENBLIT AND LITVAK LLP**
William Litvak, Esq.
California Bar No. 90533
11500 West Olympic Boulevard, Suite 550
Los Angeles, CA 90064
Telephone: 310-477-5575
Fax: 310-477-7090
wlitvak@drllaw.com

**IJH LAW**
Ignacio J. Hiraldo, Esq. (*pro hac vice*)
1200 Brickell Ave Suite 1950
Miami, FL 33131
ijhiraldo@ijhlaw.com
Telephone: 786.496.4469

**HIRALDO PA**
Manuel S. Hiraldo, Esq. (*pro hac vice*)
401 E. Las Olas Boulevard, Suite 1400
Ft. Lauderdale, Florida 33301
Email: mhiraldo@hiraldolaw.com
Telephone: 954-400-4713

**SHAMIS & GENTILE, PA**
Andrew J. Shamis, Esq. (*pro hac vice*)
14 NE 1st Avenue, Suite 705
Miami, Florida 33132
Telephone: 305-479-2299
ashamis@shamisgentile.com

16

*ACTIVE 63026041*

1

2   **EISENBAND LAW P.A.**
Michael L. Eisenband, Esq. (*pro hac vice*)
3   515 East Las Olas Boulevard, Suite 120
4   Fort Lauderdale, FL 33301
Telephone: 954-533-4092
5   meisenband@eisenbandlaw.com

6
*Attorneys for Plaintiff Jamal Johnson*
7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

17

**<u>CERTIFICATE OF SERVICE</u>**

I HEREBY CERTIFY that on this 17th day of February, 2022, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF. I also certify that the foregoing document is being served this day on all counsel of record via transmission of Notice of Electronic Filing generated by CM/ECF.

Respectfully submitted,

*/s/ Scott Edelsberg*

*ACTIVE 63026041*