

JS-6

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

JAMAL JOHNSON, individually and on
behalf of all others similarly situated,

               Plaintiff,

      v.

MOSS BROS. AUTO GROUP, INC., <u>et
al.</u>,

               Defendant.

Case No. ED CV 19-2456 FMO (SPx)

**ORDER RE: FINAL APPROVAL OF CLASS
ACTION SETTLEMENT**

      Having reviewed and considered plaintiff's Unopposed Motion for Final Approval of Class Action Settlement (Dkt. 137, "Motion") and Motion for Award of Attorneys' Fees and Costs and Class Representative Service Award [] (Dkt. 136, "Fees Motion"), and the oral argument presented during the final fairness hearings held on December 16, 2021, and March 24, 2022, the court concludes as follows.

## BACKGROUND

      On December 20, 2019, Jamal Johnson ("Johnson" or "plaintiff") filed this action on behalf of himself and all others similarly situated against Moss Bros. Auto Group, Inc. ("Moss Bros."), asserting claims for violations of the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227.  (See Dkt. 1, Complaint at ¶¶ 65-69).  On August 24, 2020, Johnson filed the operative Second Amended Complaint ("SAC") alleging that Moss Bros. and Susan Anderson ("Anderson")

1   (collectively, "defendants"), negligently and willfully violated the TCPA by sending plaintiff, and

2   others similarly situated, "prerecorded telemarketing messages" to their cell phones, (Dkt. 84,

3   SAC at ¶¶ 27-29), without their express written consent.  (Id. at ¶ 32).  Plaintiff seeks statutory

4   damages, injunctive relief, attorney's fees and costs, and "[s]uch further and other relief as the

5   Court deems necessary."  (See id. at ¶ 5 & Prayer for Relief).

6         After extensive motion practice, and "engaging in discovery, extensive arm's-length

7   negotiations, two private mediation sessions, and confirmatory discovery[,]" the parties reached

8   a settlement in October 2020.  (Dkt. 125, Court's Order of June 25, 2021 ("Preliminary Approval

9   Order" or "PAO") at 2).  The parties have defined the settlement class as:

10              All persons within the United States who, within the four years prior to the

11              filing of this action (i.e., since December 20, 2015), were sent a prerecorded

12              message from Defendants, auto dealerships managed by Defendants (the

13              'Dealerships'), or anyone acting on behalf of any Defendant or Dealership

14              (including employees, agents, third-party contractors, and sub-contractors),

15              to said person's telephone number, for the purpose of advertising and/or

16              promoting any dealership that is held, operated, owned, managed, serviced

17              and/or controlled by, and/or is a subsidiary of, Defendant Moss Bros Auto

18              Group, Inc.[1]

19   (Dkt. 123-1, Class-Wide Settlement Agreement and Release ("Settlement Agreement") at ¶ 34).

20         Pursuant to the settlement, Moss Bros. will pay a gross settlement amount of $2.5 million,

21   (Dkt. 123-1, Settlement Agreement at ¶¶ 30, 37), which will be used to pay class members, the

22   class representative's service payment, settlement administration costs, taxes,[2] and attorney's

23   fees and costs.  (Id. at ¶¶ 61, 63).  The settlement provides for up to $625,700 (25% of the gross

24   settlement amount) in attorney's fees, (id. at ¶ 71); costs not to exceed $12,588.03, (Dkt. 137-2,

25   _____

26   [1]  The "Settlement Class Period" is defined as "the period from December 20, 2015 . . . through
     the date of Preliminary Approval."  (Dkt. 123-1, Settlement Agreement at ¶ 6).

27

28   [2]  The payment of taxes includes "taxes owed as a result of accrued interest on the Escrow
     Account[.]"  (Dkt. 123-1, Settlement Agreement at ¶ 61(d)).

Amendment to the Class-Wide Settlement Agreement and Release ("Amendment") at ¶ 71); and an incentive payment of $5,000 for Johnson.  (Dkt. 123-1, Settlement Agreement at ¶ 73).  Also, the settlement administrator, Epiq Class Action & Claims Solutions, Inc. ("Epiq"), shall be paid no more than $125,000.  (Id. at ¶¶ 2, 42).  Each class member who does not opt out will automatically be mailed a settlement check.  The amount will be determined by dividing the net settlement amount by the total number of unique telephone numbers that received a message.  (Dkt. 137-2, Amendment at ¶ 62).  The settlement also provides prospective nonmonetary relief by requiring defendants and the Dealerships to "adopt policies and procedures regarding compliance with the TCPA and the National Do Not Call Registry."  (Dkt. 123-1, Settlement Agreement at ¶ 38).

On June 25, 2021, the court granted preliminary approval of the settlement, appointed Epiq as the settlement administrator, and directed Epiq to provide notice to class members.  (See Dkt. 125, PAO at 20-21).  Thereafter, Epiq implemented the notice program approved by the court, (see Dkt. 137-3, Declaration of Cameron R. Azari, Esq. Regarding Implementation and Adequacy of Settlement Notice Program ("Azari Decl.") at ¶¶ 15-23 & Exhs. 3-4 (Class Notices)); (Dkt. 125, PAO at 18-21) (approving notice program), and sent Notice packets to 51,818 class members.[3] (See Dkt. 137-4, Second Supplemental Declaration of Cameron R. Azari [] ("Azari Supp. Decl.") at ¶ 11).  As of November 11, 2021, Epiq had received four requests for exclusion and no objections.  (See id. at 137-3, Azari Decl. at ¶ 24).  Also, no objections were filed with the court.  (See, generally, Dkt.).

Plaintiff now seeks:  (1) final approval of the settlement; (2) attorney's fees and costs; and (3) an incentive payment for plaintiff.  (See Dkt. 137, Motion); (Dkt. 136, Fees Motion).

### **LEGAL STANDARD**

Federal Rule of Civil Procedure 23[4] provides that "[t]he claims, issues, or defenses of a

---

[3] As of February 14, 2022, 1,441 class notices remained undeliverable.  (See Dkt. 137-4, Azari Supp. Decl. at ¶ 10).

[4] All further "Rule" references are to the Federal Rules of Civil Procedure.

certified class . . . may be settled . . . only with the court's approval."  Fed. R. Civ. P. 23(e).  "Courts reviewing class action settlements must ensure that unnamed class members are protected from unjust or unfair settlements affecting their rights, while also accounting for the strong judicial policy that favors settlements, particularly where complex class action litigation is concerned."  Campbell v. Facebook, Inc., 951 F.3d 1106, 1121 (9th Cir. 2020) (internal quotation and alteration marks omitted).  A "district court has a fiduciary duty to look after the interests of . . . absent class members[,]" Allen v. Bedolla, 787 F.3d 1218, 1223 (9th Cir. 2015), and must examine the settlement for "overall fairness[.]"  In re Hyundai and Kia Fuel Econ. Litig., 926 F.3d 539, 569 (9th Cir. 2019) (en banc).  The court may not "delete, modify or substitute certain provisions."  Id. (internal quotation marks omitted).  "[T]he settlement must stand or fall as a whole."  Officers for Justice v. Civil Serv. Comm'n of City & Cty. of S.F., 688 F.2d 615, 630 (9th Cir. 1982).

Approval of a class action settlement requires the court to conduct a two-step inquiry.[5]  First, the court must determine whether the notice requirements of Rule 23(c)(2)(B) have been satisfied.  Second, it must conduct a hearing to determine whether the settlement agreement is "fair, reasonable, and adequate[.]"  Fed. R. Civ. P. 23(e)(2).  In determining whether a settlement is fair, reasonable, and adequate, the court must consider whether:

> (A) the class representatives and class counsel have adequately represented the class; (B) the proposal was negotiated at arm's length; (C) the relief provided for the class is adequate, taking into account: (i) the costs, risks, and delay of trial and appeal; (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims; (iii) the terms of any proposed award of attorney's fees, including timing of payment; and (iv) any agreement required to be

---

[5] If the class action is governed by the Class Action Fairness Act ("CAFA"), the court must also assess whether CAFA's notice requirements have been met.  See 28 U.S.C. § 1715(d).  Here, CAFA notice was provided to all 50 state attorneys general and the United States Attorney General on December 23, 2020.  (See Dkt. 137-3, Declaration of Stephanie J. Fiereck, Esq. [ ] ("Fiereck Decl.") at ¶ 7).

1    identified under Rule 23(e)(3); and (D) the proposal treats class members

2    equitably relative to each other.

3    Id.; McKinney-Drobnis v. Oreshack, 16 F.4th 594, 607 (9th Cir. 2021) ("In 2018, Congress

4    amended Rule 23(e)(2) to provide specific factors for a district court to consider in determining

5    whether a settlement is 'fair, reasonable, and adequate.'").

6        Whether the settlement agreement is negotiated prior to or after class certification, the

7    court must apply a "higher level of scrutiny for evidence of collusion or other conflicts of interest[.]"

8    In re Bluetooth Headset Prod. Liab. Litig., 654 F.3d 935, 946 (9th Cir. 2011); see McKinney-

9    Drobnis, 16 F.4th at 608 (same); Briseño v. Henderson, 998 F.3d 1014, 1022 (9th Cir. 2021)

10   ("Under the newly revised Rule 23(e)(2), courts should apply the Bluetooth factors even for post-

11   class certification settlements.") (formatting omitted); id. at 1025 (holding that "courts must apply

12   Bluetooth's heightened scrutiny to post-class certification settlements in assessing whether the

13   division of funds between the class members and their counsel is fair and 'adequate.'") (citing Fed.

14   R. Civ. P. 23(e)(2)(C)).  Courts should look for signs of collusion, subtle or otherwise, including

15   "(1) when counsel receive a disproportionate distribution of the settlement, or when the class

16   receives no monetary distribution but class counsel are amply rewarded[;]" "(2) when the parties

17   negotiate a 'clear sailing' arrangement[;]"[6] and "(3) when the parties arrange for fees not awarded

18   to revert to defendants rather than be added to the class fund[.]"  Bluetooth, 654 F.3d at 947

19   (internal quotation marks and citations omitted); Campbell, 951 F.3d at 1125 (same).

20                                   **DISCUSSION**

21   I.    FINAL APPROVAL OF CLASS SETTLEMENT.

22         A.    Class Certification.

23         In its order granting preliminary approval, the court certified the class pursuant to Rule

24   _____

25      [6]  The Ninth Circuit defines a "clear sailing" agreement as one "providing for the payment of
26   attorneys' fees separate and apart from class funds," Bluetooth, 654 F.3d at 947, and also as one
     where "the defendant agrees not to oppose a petition for a fee award up to a specified maximum
27   value."  Id. at 940 n. 6; Roes, 1-2 v. SFBSC Management, LLC, 944 F.3d 1035, 1049 (9th Cir.
     2019) (defining a clear sailing agreement as "an arrangement where defendant will not object to
28   a certain fee request by class counsel").

23(b)(3). (<u>See</u> Dkt. 125, PAO at 7-14, 21). Because circumstances have not changed, the court hereby affirms its order certifying the class for settlement purposes under Rule 23(e). <u>See</u>, <u>e.g.</u>, <u>Gonzalez v. BMC West, LLC</u>, 2018 WL 6318832, *5 (C.D. Cal. 2018) ("In its Preliminary Approval Minute Order, the Court certified the Settlement Class in this matter under Rules 23(a) and 23(b)(3). Accordingly, the Court need not find anew that the settlement class meets the certification requirements of Rule 23(a) and (b).") (internal quotation marks and citation omitted).

B. <u>Rule 23(c) Notice Requirements</u>.

Class actions brought under Rule 23(b)(3) must satisfy the notice provisions of Rule 23(c)(2), which requires the "best notice that is practicable under the circumstances, including individual notice" of particular information. <u>See</u> Fed. R. Civ. P. 23(c)(2)(B) (enumerating notice requirements for classes certified under Rule 23(b)(3)).

Here, after undertaking the required examination, the court approved the form of the proposed class notice. (<u>See</u> Dkt. 125, PAO at 18-21). As discussed above, the notice program was implemented by Epiq. (Dkt. 137-3, Azari Decl. at ¶¶ 15-23 & Exhs. 3-4 (Class Notice)). Accordingly, based on the record and its prior findings, the court finds that the class notice and the notice process fairly and adequately informed the class members of the nature of the action, the terms of the proposed settlement, the effect of the action and release of claims, the class members' right to exclude themselves from the action, and their right to object to the proposed settlement. (<u>See</u> <u>id.</u> at Exhs. 3-4 (Class Notice)).

1          C.      Whether the Class Settlement is Fair, Adequate and Reasonable.[7]

2                  1.      **Adequate Representation and Arm's-Length Negotiations**.

3          Rule 23(e)(2) requires the court to consider whether "the class representatives and class

4   counsel have adequately represented the class" and whether the settlement "was negotiated at

5   arm's length[.]" Fed. R. Civ. P. 23(e)(2)(A)-(B); see McKinney-Drobnis, 16 F.4th at 607.  The court

6   previously addressed these factors during the preliminary approval process.  (See Dkt. 125, PAO

7   at 10-11) (finding that plaintiff and class counsel were adequate); (id. at 14-15) (considering

8   whether the settlement was the product of arm's-length negotiations).  Prior to settling the case,

9   the parties actively litigated this action and had several pending motions. (Id. at 14).  With respect

10  to the negotiations, the court noted that the parties participated in two private mediation sessions

11  before two experienced mediators.  (Id.).    The court determined, based on the evidence and

12  record, that the "parties thoroughly investigated and considered their own and the opposing

13  parties' positions" and "had a sound basis for measuring the terms of the settlement[.]" (Id. at 15).

14  Based on the record before the court and the court's previous findings, the court finds these

15  factors weigh in favor of granting final approval.

16                 2.      **Relief.**

17         In evaluating whether the relief provided to the class is adequate, the court considers (i)

18

19         [7] Prior to the 2018 amendment to Rule 23(e), courts applied the "Churchill" factors to assess
20  whether a class settlement was fair, adequate, and reasonable:  "(1) the strength of the plaintiffs'
    case; (2) the risk, expense, complexity, and likely duration of further litigation; (3) the risk of
21  maintaining class action status throughout the trial; (4) the amount offered in settlement; (5) the
    extent of discovery completed and the stage of the proceedings; (6) the experience and views of
22  counsel; (7) the presence of a governmental participant; and (8) the reaction of the class
23  members of the proposed settlement."  Churchill Vill., L.L.C. v. Gen. Elec., 361 F.3d 566, 575 (9th
    Cir. 2004); McKinney-Drobnis, 16 F.4th at 609 (noting that prior to the 2018 amendment to Rule
24  23(e), the Ninth Circuit instructed courts to consider the Churchill factors).  Because the Ninth
    Circuit has noted that "it is still appropriate for district courts to consider the[ Churchill] factors in
25  their holistic assessment of settlement fairness[,]" McKinney-Drobnis, 16 F.4th at 609 n. 4; see
    2018 Adv. Comm. Notes to Amendments to Rule 23 ("The goal of th[e] amendment [wa]s not to
26  displace any factor" courts considered prior to the amendment, "but rather to focus . . . on the core
27  concerns of procedure and substance that should guide the decision whether to approve the
    proposal."), the court will take into account the Churchill factors in applying the Rule 23(e)(2)
28  factors.

1   "the costs, risks, and delay of trial and appeal; (ii) the effectiveness of any proposed method of

2   distributing relief to the class, including the method of processing class-member claims; (iii) the

3   terms of any proposed award of attorney's fees, including timing of payment; and (iv) any

4   agreement required to be identified under Rule 23(e)(3)."  Fed. R. Civ. P. 23(e)(2)(C).

5        As an initial matter, in granting preliminary approval, the court carefully scrutinized the

6   settlement and determined that it was the product of arms-length negotiations, (see Dkt. 125, PAO

7   at 14-15), and that there was "no evidence that the settlement was 'the product of fraud or

8   overreaching by, or collusion between, the negotiating parties[.]'" (Id.) (quoting Rodriguez v. W.

9   Publ'g Corp, 563 F.3d 948, 965 (9th Cir. 2009)).  The court found that the settlement amount was

10   "fair, reasonable, and adequate[.]" (Dkt. 125, PAO at 16).  Nothing has changed since preliminary

11   approval to undermine that finding.

12                    a.    *Costs, Risks, and Delay*.

13        In granting preliminary approval, the court found that the class recovery was adequate,

14   "particularly when taking into account the costs, risks, and delay of trial and appeal." (Dkt. 125,

15   PAO at 16).  The court recognized that the "costs and risks of continued litigation [were]

16   significant" and when "[w]eighed against those costs and risks" and the "delays associated with

17   continued litigation," the "relief provided to the class [was] adequate[.]" (See id.); Linney v.

18   Cellular Alaska P'ship, 151 F.3d 1234, 1242 (9th Cir. 1998) ("The fact that a proposed settlement

19   may only amount to a fraction of the potential recovery does not, in and of itself, mean that the

20   proposed settlement is grossly inadequate and should be disapproved.") (internal quotation marks

21   omitted).  The settlement affords class members immediate monetary benefits in the face of

22   various defenses to plaintiff's claims, including the risks associated with class members being

23   compelled to arbitration.  (See Dkt. 125, PAO at 15) (noting that at the time of settlement,

24   defendants had two pending motions to compel arbitration and sought to enforce a class-action

25   waiver); (Dkt. 137, Motion at 9-10).  Under the circumstances, the court finds it significant that the

26   class members will receive "immediate recovery by way of the compromise to the mere possibility

27   of relief in the future, after protracted and expensive litigation."  Nat'l Rural Telecomms. Coop. v.

28   DIRECTV, Inc., 221 F.R.D. 523, 526 (C.D. Cal. 2004) (internal quotation marks omitted).  In short,

1  the court finds that these factors support approval of the settlement.

2                    b.   *Method of Distribution*.

3        Rule 23(e) directs the court to consider the "effectiveness of any proposed method of

4  distributing relief to the class[.]"  Fed. R. Civ. P. 23(e)(2)(C)(ii).  "[T]he goal of any distribution

5  method is to get as much of the available damages remedy to class members as possible and in

6  as simple and expedient a manner as possible."  4 Newberg on Class Actions, § 13:53 (5th ed.).

7  Here, the settlement does not include a claims-made procedure.  (Dkt. 137-2, Amendment at ¶

8  64).  Instead, each class member that did not exclude him or herself will be mailed a settlement

9  check.[8]  (Id.) ("Each Settlement Class member who does not opt out of the Settlement shall

10 automatically be mailed a Settlement Fund Payment[.]"); (id. at ¶ 62).

11                   c.   *Attorney's Fees*.

12       Rule 23(e) requires the court to  consider "the terms of any proposed award of attorney's

13 fees, including timing of payment" in determining whether the settlement relief is adequate.  Fed.

14 R. Civ. P. 23(e)(2)(C)(iii).  The Ninth Circuit has interpreted this factor "as imposing an obligation

15 on district courts to examine whether the attorneys' fees arrangement shortchanges the class."

16 McKinney-Drobnis, 16 F.4th at 607 (internal quotation marks omitted).  In doing so, courts "must

17 balance the proposed award of attorney's fees' vis-a-vis the relief provided for the class[.]"  Id.

18 (internal quotation marks omitted).  The court evaluates the request for fees by considering the

19 Bluetooth factors.  See McKinney-Drobnis, 16 F.4th at 608 ("If we conclude that the district court

20 did not adequately consider the Bluetooth factors, and therefore did not adequately consider signs

21 that the parties had negotiated an unreasonable amount of attorneys' fees in assessing settlement

22 fairness in the first instance, then we must vacate and remand the Approval Order [in addition to

23 the attorneys' fee award], so that the court may appropriately factor this into its Rule 23(e)

24

25      [8]  With respect to any checks that are not negotiated within 180 days, the parties and the

26 settlement administrator will confer regarding the disposition of the uncashed payments.  (Dkt.
   137-2, Amendment at ¶ 65).  The settlement administrator will either redistribute the funds on a

27 pro rata basis to those class members who cashed their initial checks, or if a redistribution is not
   feasible given the amount remaining after the initial distribution, then the uncashed amount shall

28 be paid to the National Consumer Law Center ("NCLC") as a cy pres distribution.  (Id.).

analysis.") (internal quotation marks omitted).

Here, consideration of the <u>Bluetooth</u> factors does not undermine the fairness of the settlement.  First, the settlement agreement provides that class counsel may request up to 25% of the gross settlement amount in attorney's fees.  (<u>See</u> Dkt. 137-2, Amendment at ¶ 71).  Thus, class counsel would not be receiving a disproportionate share of the settlement.  <u>See</u> <u>Bluetooth</u>, 654 F.3d at 942 ("[C]ourts typically calculate 25% of the fund as the 'benchmark' for a reasonable fee award[.]").  Second, the Settlement Agreement does not include a clear sailing provision, and defendants "retain the right to [] challenge the fee request as unreasonable."  (<u>See</u> Dkt. 137-2, Amendment at ¶ 71).  Finally, there is no provision in the Settlement Agreement that permits any fees not awarded to revert to defendants.  (<u>See</u>, <u>generally</u>, Dkt. 123-1, Settlement Agreement); (Dkt. 137-2, Amendment).

> d.    *Additional Agreements*.

This factor considers any "agreement required to be identified under Rule 23(e)(3)[.]"[9] Fed. R. Civ. P. 23(e)(2)(C)(iv).  The parties confirmed at the final fairness hearing that no such agreements are at issue in this case.

> 3.    **Equitable Treatment of Class Members**.[10]

Rule 23(e)(2) requires the court to consider whether the settlement "treats class members equitably relative to each other."  Fed. R. Civ. P. 23(e)(2)(D).  "A distribution of relief that favors some class members at the expense of others may be a red flag that class counsel have sold out some of the class members at the expense of others, or for their own benefit."  4 <u>Newberg on Class Actions</u>, § 13:48 (5th ed.).

Here, the Settlement Agreement does not favor any particular group of class members. (<u>See</u>, <u>generally</u>, Dkt. 123-1, Settlement Agreement).  Each class member will receive "one first round Settlement Fund Payment for each unique cellular telephone number that received a

---

[9]  Rule 23(e)(3) provides that "[t]he parties seeking approval [of a settlement] must file a statement identifying any agreement made in connection with the proposal."

[10]  The court will address plaintiff's request for an incentive payment below.

1  Message[.]" (Dkt. 137-2, Amendment at ¶ 64).  Moreover, all class members are subject to the

2  same release provisions.  (Dkt. 123-1, Settlement Agreement at ¶¶ 66-70).  Accordingly, this

3  factor also weighs in favor of final approval.

4                      4.    **The Reaction of Class Members to the Proposed Settlement**.

5          The reaction of the class members to the proposed settlement has been very positive.

6  Significantly, there were no objections and there were only four requests for exclusion.  (See Dkt.

7  137-3, Azari Decl. at ¶ 24).  The lack of objections and limited requests for exclusion further

8  support approval of the settlement.  See, e.g., Franco v. Ruiz Food Prods., Inc., 2012 WL

9  5941801, *14 (E.D. Cal. 2012) (finding this factor weighed in favor of approval where only two out

10  of 2,055 class members – less than one percent – opted out, and there were no objections to the

11  settlement); Gong-Chun v. Aetna Inc., 2012 WL 2872788, *16 (E.D. Cal. 2012) (settlement

12  approved when less than two percent of the class members opted out and no objections were

13  received); Barcia v. Contain-A-Way, Inc., 2009 WL 587844, *4 (S.D. Cal. 2009) (finding this factor

14  weighed in favor of approval of settlement when there were only 56 opt-outs out of the 2,385 class

15  members and there were no objections).

16          In short, the court finds that the settlement is fair, reasonable, and adequate, and not the

17  product of collusion.

18  II.    ATTORNEY'S FEES, COSTS, AND SERVICE AWARD.

19          A.    Attorney's Fees.

20          Rule 23(h) provides that, "[i]n a certified class action, the court may award reasonable

21  attorney's fees . . . that are authorized by law or by the parties' agreement."  Fed. R. Civ. P. 23(h).

22  Attorney's fees in class actions are determined "using either the lodestar method or the

23  percentage-of-recovery method."  In re Hyundai, 926 F.3d at 570.  The court's discretion in

24  choosing between these two methods "must be exercised so as to achieve a reasonable result."

25  Bluetooth, 654 F.3d at 942; In re Hyundai, 926 F.3d at 570.  The lodestar method is typically

26  utilized when the relief obtained is "not easily monetized," such as when injunctive relief is part

27  of the settlement.  See Bluetooth, 654 F.3d at 941.  The percentage-of-recovery method is

28  typically used when a common fund is created.  See id. at 942.

Under the lodestar method, the court multiplies the number of reasonable hours expended by a reasonable hourly rate.  See In re Hyundai, 926 F.3d at 570.  Once the lodestar has been calculated, the court may "adjust the resulting figure upward or downward to account for various factors, including the quality of the representation, the benefit obtained for the class, the complexity and novelty of the issues presented, and the risk of nonpayment[.]"  Id. (internal citation omitted).  However, "adjustments [to the lodestar calculation] are the exception rather than the rule."  Fischel v. Equitable Life Assurance Society of U.S., 307 F.3d 997, 1007 (9th Cir. 2002) (internal quotation marks omitted); Johnson v. MGM Holdings, Inc., 794 F.Appx. 584, 586 (9th Cir. 2019) (same).

Under the "percentage-of-the-fund" or "percentage-of-recovery" method, the "court simply awards the attorneys a percentage of the fund sufficient to provide class counsel with a reasonable fee, using 25% as a benchmark."  In re Hyundai, 926 F.3d at 570 (internal quotation marks omitted).  The 25% benchmark "can be adjusted upward or downward, depending on the circumstances."  In re Hyundai, 926 F.3d at 570; Bluetooth, 654 F.3d at 942 ("[C]ourts typically calculate 25% of the fund as the 'benchmark' for a reasonable fee award, providing adequate explanation in the record for any 'special circumstances' justifying a departure."); Six (6) Mexican Workers v. Ariz. Citrus Growers, 904 F.2d 1301, 1311 (9th Cir. 1990) ("The benchmark percentage should be adjusted, or replaced by a lodestar calculation, when special circumstances indicate that the percentage recovery would be either too small or too large in light of the hours devoted to the case or other relevant factors.").  In determining whether to depart from the 25% benchmark, courts consider "all of the circumstances of the case[,]" including:  (1) the results achieved for the class; (2) the risk of litigation; (3) the skill required and quality of work; (4) the contingent nature of the fee; and (5) awards made in similar cases.  See Vizcaino v. Microsoft Corp., 290 F.3d 1043, 1048-50 (9th Cir. 2002); Viceral v. Mistras Grp., Inc., 2017 WL 661352, *3 (N.D. Cal. 2017) (utilizing similar factors); In re Online DVD-Rental Antitrust Litig., 779 F.3d 934, 955 (9th Cir. 2015) (explaining that "there are no doubt many factors that a court could apply in assessing an attorneys' fees award" and that "Vizcaino does not purport to establish an exhaustive list").

1    The percentage of fund method is the most appropriate in this action, as it is the most likely

2  to achieve a reasonable result.  See Bluetooth, 654 F.3d at 942 ("Though courts have discretion

3  to choose which calculation method they use, their discretion must be exercised so as to achieve

4  a reasonable result.").  Here, having considered all the circumstances of this case, see Vizcaino,

5  290 F.3d at 1048-50, the court is persuaded that the 25% benchmark is a reasonable fee.  See

6  In re Hyundai, 926 F.3d at 570-71 (recognizing 25% benchmark and noting that the percentage

7  method is "a rough approximation of a reasonable fee").

8    B.    Costs.

9    Class counsel seek $12,588.03 in costs.  (See Dkt.136, Fees Motion at 17-18); (Dkt. 137-2,

10  Amendment at ¶ 71).  The court finds that the costs incurred by class counsel over the course of

11  this litigation are reasonable, and therefore awards a total of $12,588.03 in costs.

12    C.    Class Representative Service Award.

13    "[N]amed plaintiffs, as opposed to designated class members who are not named plaintiffs,

14  are eligible for reasonable incentive payments."  Staton v. Boeing Co., 327 F.3d 938, 977 (9th Cir.

15  2003); see Wren v. RGIS Inventory Specialists, 2011 WL 1230826, *31 (N.D. Cal. 2011) ("It is

16  well-established in this circuit that named plaintiffs in a class action are eligible for reasonable

17  incentive payments, also known as service awards.").  Here, plaintiff requests that the court grant

18  a service award in the amount of $5,000.  (Dkt. 136, Fees Motion at 18-20).

19    In its order granting preliminary approval of the settlement, the court undertook an

20  examination of the fairness and adequacy of the service award at issue, applying the careful

21  scrutiny required in this Circuit.  (See Dkt. 125, PAO at 18); see also Radcliffe v. Experian Info.

22  Sols. Inc., 715 F.3d 1157, 1163 (9th Cir. 2013) (instructing "district courts to scrutinize carefully

23  the awards so that they do not undermine the adequacy of the class representatives").  Based on

24  its review of the record, the court determined that a service award of $5,000.00 was appropriate.

25  (See Dkt. 125, PAO at 18).  The court sees no reason to depart from its previous determination.

26    **CONCLUSION**

27    Based on the foregoing, IT IS ORDERED THAT:

28    1. Plaintiff's Unopposed Motion for Final Approval of Class Action Settlement **(Document**

**No. 137)** is **granted** as set forth herein.

2.   Plaintiff's Motion for Award of Attorneys' Fees and Costs and Class Representative Service Award [] **(Document No. 136)** is **granted** as set forth herein.

3.   The court hereby grants final approval of the parties' Class-Wide Settlement Agreement and Release ("Settlement Agreement") and Amendment (Document Nos. 123-1 & 137-2).   The court finds that the Settlement Agreement is fair, adequate, and reasonable, appears to be the product of arm's-length and informed negotiations, and treats all members of the class fairly.   The parties are ordered to perform their obligations pursuant to the terms of the Settlement Agreement and this Order.

4.   The settlement class is certified under Federal Rule of Civil Procedure 23(c) as defined in ¶ 34 of the Settlement Agreement.

5.   The form, manner, and content of the Class Notice meet the requirements of Federal Rule of Civil Procedure 23(c)(2).

6.   Plaintiff Jamal Johnson shall be paid a service payment of $5,000.00 in accordance with the terms of the Settlement Agreement and this Order.

7.   Class counsel shall be paid $625,700.00 in attorney's fees, and $12,588.03 in costs in accordance with the terms of the Settlement Agreement and this Order.

8.   The Claims Administrator, Epiq, shall be paid for its fees and expenses in accordance with the terms of the Settlement Agreement and this Order.

9.   All class members who did not validly and timely request exclusion from the settlement have released their claims, as set forth in the Settlement Agreement, against any of the released parties (as defined in the Settlement Agreement).

10.   Except as to any class members who have validly and timely requested exclusion, this action is dismissed with prejudice, with all parties to bear their own fees and costs except as set forth herein and in the prior orders of the court.

11.   Without affecting the finality of this Order in any way, the court hereby retains jurisdiction over the parties, including class members, for the purpose of construing, enforcing, and administering the Order and Judgment, as well as the Settlement Agreement itself.

1      12.  Judgment shall be entered accordingly.

2  Dated this 24th day of June, 2022.

3

4                                                    /s/
                                              _____
5                                              Fernando M. Olguin
                                              United States District Judge
6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28